**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
————————————————————x

**JEAN JEAN, and KATHLEEN COMACK**

                              Plaintiffs          DOCKET NO.


         -against-                                **COMPLAINT**
                                                  *Jury Trial Demanded*

**THE DEPARTMENT OF EDUCATION OF**
**THE CITY OF NEW YORK,**

                              Defendant
————————————————————x


PLAINTIFFs Jean Jean and Kathleen Comack ("Plaintiffs") proceeding Pro Se, as and for their

Summons and Complaint filed to protect Constitutional rights against the above-captioned THE

DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK (henceforth "Defendant")

allege upon knowledge as to their own facts and upon information and belief as to all other

matters:

### PRELIMINARY STATEMENT

1.      This is a civil action seeking injunctive relief, monetary relief, including past and on-

going economic loss, compensatory and equitable damages for the discrimination and hostile

work environment imposed on them solely due to their religious beliefs and medical conditions

which prohibited them from getting the COVID vaccine. Both were stellar teachers, Plaintiff

Jean for 17 years and Plaintiff Comack for 34 years, and they both had tenure. Defendant refused

to recognize Plaintiffs' protected religious beliefs and medical issues and punished Plaintiffs for

"misconduct/insubordination" by remaining unvaccinated. Plaintiffs were removed from their

salaries, threatened with immediate termination, harassed and subjected to a hostile atmosphere in their workplaces while suddenly placed into the "Problem Code" database.

2.      Plaintiffs bring this action under 42 U.S.C. § 1983 and §1981; Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§2000 et seq.,citing discrimination; violation of ADA/504 Rehabilitation Act; Stigma Plus pursuant to the flag placed on Plaintiffs' fingerprints ("Problem code"); First, Fifth and Fourteenth Amendments of the United States Constitution; Education Law §3020 and §3020-a; Human Rights Law both City and State, and those parts of the New York State Constitution which similarly apply with like language and together with this Court's pendent jurisdiction over causes of action arising under New York State laws, both common and statutory, including breach of the UFT-DOE contract ("CBA"); NYSHRL,NYCHRL and N.Y.C. Admin. Code §8-107(3)(a), State laws governing employment, seeking monetary and declaratory relief against Defendant for committing acts with the intent and for the purpose of depriving Plaintiffs of Constitutionally protected property and liberty rights pursuant to their tenured status, without procedural and substantive due process and for refusing to or neglecting to prevent such deprivations and denials to Plaintiffs.

3.      Plaintiffs, both senior tenured teachers, were deliberately and intentionally discriminated against, harassed and forced to resign/retire from their jobs solely because of their being unable to get the vaccine due to sincerely-held religious beliefs (Plaintiff Jean) and medically disabling conditions that prohibited the injection with the COVID Vaccine (Plaintiff Comack). As a result, Plaintiffs were forced to resign/retire after they could not withstand the discrimination and harassment from co-workers and others.

4.      Neither Jean nor Comack received any accommodation from Defendant and neither were given a §3020-a due process arbitration on the validity and/or details of their

"misconduct/insubordination" for which they were placed into the Problem Code database. New York State Education Law §§3020 and 3020-a and the United Federation of Teachers'/Department of Education Collective Bargaining Agreement ("CBA"), Article 21G, mandates a full and fair arbitration hearing before any reduction of salary. This was ignored by Defendant.

4.    Plaintiffs completed all the necessary actions and appeals available to them, including filing an appeal of the denials of their requests and appeals for religious exemption and medical accommodation. However, the Defendant never gave any meaningful reason for the denials. Both filed Notices of Claim which have not been resolved by Defendant.

5.    Defendant secretly charged Plaintiffs with misconduct/insubordination, changing their terms of employment by placing their fingerprints into the "Problem Code" database without their knowledge or consent, and never gave them a hearing where they could clarify and particularize their reasons for not getting the COVID vaccination.

6.    Defendant claimed "undue burden" while simultaneously omitting information of their long-term policy re-assigning employees to "rubber rooms", some of which held about 2000+ employees from 2002 until 2010. After 2010 Defendant scattered the re-assigned employees who could not be near children to rooms throughout New York City. The re-assigned employees not only were not told what they were guilty of, but were awaiting charges of incompetency or misconduct for some act that never happened. A problem code was put on these re-assigned employees when they were removed from their classrooms and school. Some remained reassigned to the rubber room for more than 7-15 years. All reassigned personnel received their full salary and benefits while they waited for a hearing unless they were removed from salary at a probable cause hearing. During the pandemic, the re-assigned employees awaited their §3020-a

3

hearings at home. Defendant could have given all the so-called "miscreants" similarly unvaccinated as Plaintiffs, a reassignment to home or a rubber room. Defendant chose to claim that no accommodation was available and any accommodation was an "undue burden".

7.      But for the approval of the denial of protected rights by the Defendant, Plaintiffs were maliciously and in bad faith harassed into leaving their jobs and stigmatized permanently by being placed on the Ineligible/Inquiry or "no hire" Problem Code List.

8.      Defendant's deliberate targets were employees similarly situated as the Plaintiffs here, who had high salaries and – worst of all – tenure. Tenure is public policy in New York State and gives, by law, Constitutionally protected property and liberty rights to continued employment. Defendant never liked this policy. Defendant wanted – and succeeded – in fraudulently harassing and discriminating against  Plaintiffs to get them out of their positions quickly, without due process.

9.      Plaintiffs request (1) backpay and all benefits and pension steps due after Defendant's violations of law, public policy and rights removed them from their salaries under color of law and deprived them of Constitutionally protected due process;  (2) reinstatement to their former positions with a salary that reflects 2 ½ years of missing time and wages, with pension steps and raises included; (3) judgment against Defendant for refusing to or neglecting to prevent such deprivations and denials to Plaintiffs.

**PARTIES**

10.      Plaintiff Jean Jean was an employee for the Department of Education of the City of New York in good standing as a special education teacher for more than 17 years. She was a stellar part of the special education team, and had an impeccable reputation. Jean had a Masters +30 credits and worked remotely through the pandemic until ordered by Defendant to return to her

classroom in September 2021. She was harassed into resigning against her will on October 18, 2021. Jean filed a Notice of Claim after finding out that she was still on the Problem Code in February 2023.

11.     While a tenured teacher, Jean had Constitutional rights, including protected liberty and property rights, to her position. She also worked with children who received Federal funds for their special services. At all times relevant herein, Plaintiff was a public employee of Defendant within the meaning of New York State Civil Service Law § 75- b(1)(b).

12.     Plaintiff Kathleen Comack started work at the NYC Department of Education in September 1987. She was a highly effective math teacher beloved by all, until she was harassed and discriminated against in September 2021 for not getting the COVID vaccine, and was forced to retire from her job under duress against her will under fraudulent circumstances. Comack filed a Notice of Claim against the Department in February 2023, after she became aware that she remained on the problem code.

13.     While a tenured teacher, Comack had Constitutional rights, including protected liberty and property rights, to her position. At all times relevant herein, Plaintiff was a public employee of Defendant within the meaning of New York State Civil Service Law § 75- b(1)(b).

14.     At all relevant times, Defendant have overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be recipients of substantial federal funds, and as such, subject to the mandates under Title VII of the Civil Rights Act of 1964, the Education Law, and the First, Fifth and Fourteenth Amendments to the United States Constitution, which prohibit any diminution of tenure rights without Just Cause.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction pursuant to NYCHRL, NYSHRL, Civil Rights Act of 1964 and §1605.2 Reasonable Accommodation,  42 U.S.C. 2000e(f)(3) et Seq. ("Title VII"), 504 Rehabilitation Act, and Education Law §§3020 and 3020-a.

16.    This Court has additional jurisdiction over the subject matter of this action pursuant to 28 U.S.C.§1331, and 28 U.S.C 1343(2)(4); and 42 U.S.C. §1981, et seq. for claims arising federal questions under 42 U.S.C. 1983, in particular the protections given by the Free Exercise Clause, Equal Protection, First, Fifth and Fourteenth Amendments to the Constitution.

17.    Defendant's actions cited herein were pursued intentionally in violation of Federal Statutes under color of state law, including discrimination, fraudulent misrepresentation of the nature and consequences of the COVID Vaccine Mandate ("CVM") and retaliation.

18.    This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as state law pursuant to claims codified in the New York City Human Rights Law ("NYCHRL") as Administrative Code §8-107, in that such claims are so related to Plaintiffs' claims within the original jurisdiction of this Court that they form part of the same case or controversy.

19.    This Court has pendent and supplemental jurisdiction over Plaintiffs' state law and city law claims, as the facts that form the basis of the state and city law claims are substantially similar to the facts that form the basis of the federal law claims. Defendant was at all times acting under color of law in breaching their covenant of good will and fair dealing with the Plaintiffs as well as committing fraud in the inducement.

20.    This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street, Brooklyn, N.Y.

## STATEMENT OF RELEVANT FACTS

### Plaintiff Jean Jean

21.     Plaintiff, a stellar tenured special education teacher in charge of programs and services funded by the Federal government through Defendant her employer, was unlawfully deprived of freedom from abuse of process and malicious prosecution, stigma plus character defamation and diminution of her tenure rights due to her religious beliefs that prohibited her from getting the COVID vaccine.

22.     Plaintiff Jean had an impeccable reputation, with a Masters Degree + 30 credits. She worked remotely during the pandemic and she was highly effective at all times, for more than 17 years starting in 1999.

23.     On September 15, 2021 the Commissioner of the Department of Health, Dr. Dave A. Chokshi, issued a COVID mandate for DOE employees which did not give any exemption for religious beliefs nor accommodations for medical conditions but did give this notice which Defendant ignored:

*"Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."*   (¶6)

(EXHIBIT A)

Jean suffered extreme emotional trauma knowing that she would have to choose between her career or her religion. In fact, beginning in August 2021, the Commissioner, working together with the Mayor's office, issued over a hundred "emergency" orders that collectively functioned to mandate the COVID vaccine ("CVM") for nearly every working person in the City. But not everyone was required to take it. At the behest of his top donors, in Executive Order 62 (EXHIBIT B) Mayor Adams carved out exemptions for professional athletes, performers, and

their entourages, election workers, school bus drivers and delivery personnel, as well as most of the private sector. All got unilateral exemptions.

24.   On September 10, 2021, Martin Scheinman, issued an Award after he was asked to be a mediator in negotiations on the CVM with the United Federation of Teachers (UFT) and the Defendant. He was then appointed arbitrator to decide on the process for all appeals of unvaccinated employees who worked for the Department of Education. He created very specific criteria for religious exemptions or medical accommodations that made no one happy and revealed his – and Defendant's – real motive: remove as many senior educators from the public schools of New York City. Scheinman gave his own Company, Scheinman Arbitration and Mediation Service, Inc ("SAMS") the business to decide appeals of religious exemptions and/or medical accommodations which had already been denied by the Defendant. No exemptions or accommodations were granted. His criteria were obviously discriminatory. EXHIBIT C. For example, medical accommodation would be given to:

- "medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school." (p. 7)
- "Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)- with contraindications   delineated   in CDC   clinical considerations for COVID-19 vaccination. Note that a prior allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist."
- "Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:
  *Within the isolation period after a COVID-19 infection;
  *Within ninety  (90) days of monoclonal antibody treatment of COVID-19;
  *Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the inunnunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of

time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;
*Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination." (p. 8)

25.    For religious exemptions the criteria were also very limited:

- "Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy) . Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations. (e.g. Christian Scientists) (p. 9)

26.    The specific details for the granting of religious exemptions and medical accommodations that were cited in the Award of Martin Scheinman were considered the "challenged criteria" and "constitutionally unsound" by the Court of Appeals in the case Kane/Keil v The City of New York (21-cv-2678) on November 28, 2021. A merits panel later re-labelled the Citywide Reasonable Accommodation Panel was set up in place of SAMS.(EXHIBIT D) The Court of Appeals merit panel concluded "It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." It also reaffirmed that a fresh consideration of people's request for religious accommodation was required.. They wrote, "In addition to the First Amendment such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law." Unfortunately, simply ordering an action does not get it implemented.

27.     Neither Commissioner Chokshi, Arbitrator Scheinman, nor Mayor Adams had a legal

right to change the terms of employment of the Defendants in terms of leave, salary, and/or

vaccinations, First, vaccinations are not mentioned in the CBA. Second, Article 16 in the CBA

says that the employee may ask for a leave without pay. There is no mention of the Employer

forcing a leave/suspension without pay unless the employee is given a probable cause hearing for

serious crimes such as bringing heroin into a school building or having sex with a child in the

classroom. Plaintiff's 'crime' of not getting vaccinated was made up and legally null and void.

28.     Scheinman apologized for destroying the due process rights of tenured Department

employees in a second Award issued on June 27, 2022. He wrote that he had created the LWOP

to satisfy the circumstances at the time:

> "... While the Department claims its action is unconnected with the Award, it is the
> Award itself that created a new leave without pay. Absent the Award, the Department
> was without the authority to remove these employees from the payroll without providing
> a due process hearing.
>
> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for
> employees whose requests for a medical or religious exemption were denied. This is
> because such employees intentionally decided to disregard the mandate they be
> vaccinated by September 27, 2021, the date established by Commissioner Chokshi and
> Mayor de Blasio."

Graff adds:

> "First, Scheinman's words establish that but-for the Award, the NYCDOE could not have
> placed the Plaintiffs on leave without pay....Scheinman's words are additional evidence
> that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42
> U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.
> Second, it was Scheinman who "created a new leave without pay" by issuing the Award.
> Scheinman establishes, by his own words, that he actively participated in the violation of
> the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy.
> Scheinman ...actively created new policy that, as Scheinman admits, but-for his Award,
> "the Department was without the authority to remove these employees from the payroll
> without providing a due process hearing..... admitting that his actions caused the
> Plaintiffs to "suffer[] a denial of [their] federal statutory rights, or [their] constitutional
> rights or privileges." Annis v. County of Westchester, 136 F.3d 239,245 (2d Cir. 1998)."

Scheinman had no authority to alter the terms of the Plaintiffs employment. See Attorney Austin Graff's letter, EXHIBIT E, and the Scheinman Award June 27, 2022 EXHIBIT F.

28.     As it turned out, the Citywide Panel was no better at providing due process than the Scheinman Group. The process for determining religious exemptions and medical accommodations became clouded in mystery. No one knew who was on the Panel or what the criteria was to get the relief requested. The Department gave unsubstantiated statements that 163 unvaccinated applicants out of more than 600 who applied were given approval, but then no one really went back to work. Defendant used the "undue hardship" card. What they meant by undue hardship no one knew then or now, because there was no interactive dialogue, and no facts supporting these words.

29.     Plaintiff Jean, after receiving daily emails about the vaccine from the DOE urging her to get vaccinated, and harassing statements and visits from the administrators at her school, sent in to HR's SOLAS website a request for a religious exemption from the vaccine in September 2021. She received her denial of her appeal from Martin Scheinman on 9/24/21. Scheinman sent her his answer: "Denied" (EXHIBIT G) without any explanation…just an "X" in the small box next to "Denied". Jean appealed the decision, but was denied on or about October 7, 2021.

30.  On October 4, 2021 Jean was removed from salary and put on leave without pay or "LWOP" as the lingo goes. See EXHIBIT H. This leave is unique, as the terms of Plaintiff Jean's employment was trashed, in favor of her being left without anything…no job, no health coverage, no salary steps. Nothing.

30.     Also on October 4, 2021 Jean's fingerprints were given a flag/code known as a "Problem Code" and placed onto Defendant's Galaxy (budget) database used by the FBI and the Department of Labor Unemployment Board (UIAB). Anyone with the flag or Code on their

fingerprints cannot get paid by the Defendant or any of the thousands of vendors working in the City of New York. This scarlet letter is extremely damaging to Jean's career and character. See the following post on Parentadvocates.org:

"**The New York City Department of Education's "Problem Code" is an Unlawful Flag on an Employee's Fingerprints"**
https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8884

The Code is accessible by government agencies and principals, and UFT Representatives, among others. The label means that the individual has committed misconduct, and that Scheinman gave false information in his September 10 Award when he wrote that LWOP was not disciplinary. It was, and he knew it. He wrote and negotiated the CBA for the UFT.

31.    On October 18, 2021, after Plaintiff Jean was denied her religious exemption appeals, removed from her salary, told by her AP that she could not work on LWOP, harassed and ridiculed at work as if she had the Plague or AIDS, she resigned from her position at the Department after doing absolutely nothing wrong except believing in a God who would protect her from the unproven experimental vaccine. This United States of America stands on religious freedom, but not for Plaintiff Jean, and not in New York City in October 2021.

**Plaintiff Kathleen Comack**

32.    Plaintiff Comack started her stellar career with the Department of Education in 1987. She is a tenured math teacher with certain documented medical conditions that preclude her getting vaccinated with the COVID vaccine. This is a situation of Comack having to decide between her illustrious career or her life and health. On September 17, 2021 Comack submitted to the Department's HR SOLAS a vaccine medical mandate exemption letter written by her doctor Dr. Antonio Madrid, at St. Francis Heart Hospital. EXHIBIT I

33.     On September 22, 2021 her request for a medical accommodation was denied. Defendant gave the reason as "Request denied – condition not valid to defer or delay vaccine". EXHIBIT J. Comack filed an appeal on September 23, 2021with SAMS, but this was denied on October 5, 2021 by Arbitrator Carol Hoffman. Hoffman put an "X" in the box next to "Denied", just like Scheinman did in Jean's appeal. EXHIBIT K

34. On October 3, 2021 Plaintiff Comack received an email from her Principal, Peter Leddy, telling her that if she was granted her exemption the Department had administrative offices available for the unvaccinated employees given similar accommodation. EXHIBIT L. This exposes the reassignments that could have been given under the accommodations available in the Department. But the Defendant never clarified how many offices were available, and never gave any details about what they meant by "undue burden".

35.     On October 4, 2021 Comack did not submit a valid vaccination card and her personnel file was flagged with a Problem Code. She was removed from payroll under LWOP (EX. G) on October 7, 2021, and on the following day Comack submitted her retirement papers, way too soon – at the age of 59 – and against her will, under duress.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION:
### RELIGIOUS DISCRIMINATION (Plaintiff Jean Jean)

36.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 35 as if the same were fully set forth at length herein.

37.     Plaintiff has sincerely held religious beliefs which forbid her from getting vaccinated with the COVID-19 vaccine, yet Defendant flagged her personnel file with a "Problem Code", barring her from getting paid for any work by any school in the NYC public school system, and

creating a new category of misconduct in public employment: "Insubordination by unvaccinated employee".

38.     Defendant had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption requests without attempting to give any details or accommodation, and terminated her long-term, excellent employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

"The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. ..... What is most important is that "undue hardship" in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the commonsense manner that it would use in applying any such test..... Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

39.     In the new category of "insubordinate employee" and "unvaccinated", Plaintiff was not only removed unfairly and without due process from her job, but ostracized and humiliated by her peers both inside and outside of the workplace. She was discriminated against because of her religious beliefs.

40.     Defendant subjected Plaintiff to discrimination on the basis of her religion, unlawfully discriminating against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A SECOND CAUSE OF ACTION:
### PLAINTIFF JEAN WAS DEPRIVED OF HER
### FIRST AMENDMENT RIGHT TO FREE SPEECH AND RELIGION

41.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above in paragraphs 1 through 40 as if the same were fully set forth at length herein.

42.     As a result of the Defendant's actions and in actions as set forth above, Plaintiff has been, and continues to be, deprived of her Federal rights under 42 U.S.C., Section 1983 and the Fourteenth Amendment due process rights, applying the First and Fifth Amendments' rights of the U.S. Constitution.

43.     As a result of defendant's actions, Plaintiff suffered and was damaged.

44.     Defendant has deprived plaintiff of such rights under color of State Law.

45.     By reason of the foregoing, Defendant unlawfully discriminated against Plaintiff as to the terms, conditions and privileges of employment, in that Defendants did not allow her to practice her religion, which caused her to resign under duress and against her will.

46.     These acts by Defendants are in violation of Plaintiff's rights to practice her religion guaranteed under the First Amendment to the United States Constitution.

## AS AND FOR A THIRD CAUSE OF ACTION:
### FAILURE TO REASONABLY ACCOMMODATE PLAINTIFFS
(All Plaintiffs)

47.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs 1 through 46 as if the same were fully set forth at length herein.

48.     Plaintiffs have sincerely held religious beliefs and documented medical issues which forbid them from getting vaccinated with the COVID-19 vaccine.

49.     Defendant, the Plaintiffs' employer, had actual knowledge of the Plaintiffs' sincerely held religious beliefs and medical condition.

50.     Defendant had knowledge of Plaintiffs' sincerely-held religious beliefs and medical issues yet chose to ignore these beliefs, denied them their exemption requests and Appeals without any further details or reason, and forced them to remove themselves from their hostile workplace.

51.     No reasonable accommodation was offered to the Plaintiffs, despite the Department's policy of re-assigning employees sometimes up to 15 years on full salary in a "rubber room" when he/she is believed to have committed any kind of misconduct. Defendant should have, and could have, placed Plaintiffs into a re-assignment location until the CVM ended, but the Defendant did not do that.

52.     Defendant gave Plaintiffs no opportunity to give arguments in support of their sincere religious beliefs at a hearing where they could be heard for more than 10 minutes, and this is mandated by law (Education Law 3020-a). Defendant set up a timeline that deprived Plaintiffs of any possibility of complying. Thus the due process deprivation in this matter was deliberate and intentional.

53.     In conflict with the mandate guaranteeing all citizens the right to their religious beliefs, and medical accommodations Defendant did not honor this law of the land and removed Plaintiffs from their salaries without any interactive process to discover any reasonable accommodation nor any due process hearing.

54.     Based on the foregoing, the Defendant failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiffs unlawfully in the terms and conditions of their employment on the basis of her religion and medical issues, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A FOURTH CAUSE OF ACTION:
## VIOLATION OF ADA/504 REHABILITATION ACT
### (All Plaintiffs)

55. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs 1 through 54 as if the same were fully set forth at length herein.

56. The Rehabilitation Act is codified under Title 29 (29 U.S.C. § 794(a)) and 29 C.F.R. § 33.13. The Rehabilitation Act protects disabled persons from discrimination in the provision of public services. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 USC § 794(a).

57. Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794 (hereinafter referred to as "Section 504) provides that, no otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794(a).

58. Retaliation claims are analyzed under the same framework as Americans with Disabilities Act ("ADA") claims, the elements of which to prove a prima facie case being, "(I) a Plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that Plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against Plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148 (2d Cir. 2002); citing Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234

17

(2d Cir. 2000). The Plaintiff's burden at this prima facie stage is de minimis. Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

59. Once the Plaintiff establishes a prima facie case of retaliation, the burden shifts to the Defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. Thereafter, if a Defendant meets this burden, the Plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation. Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

60. Here the reasons cited by the Defendant are not rational. The Department claimed that the Plaintiff Comack engaged in employee misconduct when she could not get the COVID vaccine due to her medical issue, and then made her workplace so hostile that Plaintiff, a teacher with tenure, was forced to retire when she very much wanted to remain and needed to continue to work with her students.

61. Plaintiffs both have clearly satisfied the first element of a prima facie claim under the Rehabilitation Act, as they were engaged in protected activity. Comack as a person with a medical issue and Jean as a teacher of special needs students. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (in defining protected activity under the Title VII framework).

62. Plaintiffs have satisfied the second element of setting forth a prima facie claim for retaliation under Section 504 of the Rehabilitation Act, as they have demonstrated that Defendant was aware of their protected activities.

63. Plaintiffs have satisfied the causal connection for setting forth a prima facie claim for retaliation under Section 504 of the Rehabilitation Act as they have shown they were forced to resign/retire from their work solely because of her medical issues against her getting the vaccine.

64. By reason of the foregoing conduct, the Defendant has acted in bad faith and has violated 504 of the Rehabilitation Act.

### AS AND FOR A FIFTH CAUSE OF ACTION: VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE
(All Plaintiffs)

65.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs 1 through 64 as if the same were fully set forth at length herein.

66.     Defendant while acting under the color of law unlawfully deprived the Plaintiffs of their right to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of the United States Constitution, in that they engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiffs based upon the Plaintiffs' religion (Jean), Plaintiff's medical issues against getting the vaccine (Comack) and both Plaintiffs' constitutionally protected conduct. In so doing, Defendants intentionally and, with malicious intent and bad faith, intended to injure Plaintiffs, selectively treated Plaintiffs differently from other similarly situated employees, and acted with no rational basis for the difference in treatment. Defendants' conduct was intentional, conducted with bad faith, wholly irrational and was acted on in such a way as to harm the Plaintiffs.

67.     In Garvey c City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his decision:

"Petitioners – all but one – applied for exemptions from the mandate. They received generalized and vague denials. During that time their exemptions were being processed, they remained unvaccinated. This was no reason that they could not continue to submit to testing and continue to fulfill their duties as public employees. This was no reason why the City of New York could

19

not continue with a vaccine or test policy, like the Mayor's Executive Order that was issued in

August 2021......"

and,

"Though vaccination should be encouraged, public employees should not have been terminated

for their non-compliance....The Health Commissioner cannot create a new condition of

employment for City employees. The Mayor cannot exempt certain employees from these orders.

Executive Order 62 renders all of these vaccine mandates arbitrary and capricious....prohibit an

employee from reporting to work."

68.     As a direct result of Defendant's violation of the Plaintiffs' Fourteenth Amendment rights

of equal protection, Plaintiffs have suffered irreparable harm for which there is no adequate

remedy of law.

69.     As a direct result of Defendant's violation of Plaintiffs' Fourteenth Amendment rights of

equal protection under the law, as alleged herein above, Plaintiffs have suffered and are entitled

to recover compensatory and nominal damages including backpay.

**AS AND FOR A SIXTH CAUSE OF ACTION: FRAUD IN THE INDUCEMENT TO
DENY PLAINTIFFS THEIR PROPERTY AND LIBERTY RIGHTS TO A DUE
PROCESS HEARING AS TENURED TEACHERS MANDATED BY EDUCATION LAW
§3020 AND §3020-A**

70.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs

1 through 69 as if the same were fully set forth at length herein.

71.     Plaintiffswere punished with wrongfully being held as insubordinate for their

"insubordination" in not getting vaccinated with the COVID vaccine

72.     Education Law Section §3020 , Chapter 16, Title 4, Article 61 states as follows:

"Discipline of teachers.

1. No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article"

and,

2. No person enjoying the benefits of tenure shall be suspended for a fixed time without pay or dismissed due to a violation of article thirteen-E of the public health law….. (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision…"

73.    Plaintiffs did not, at any time, waive their rights to a §3020-a hearing on their religious exemption and medical accommodation requests. They wanted their due process to be honored. Instead, they were declared insubordinate by the Department, their personnel files were flagged and their fingerprints tagged with a with a "Problem Code" designating misconduct and put into the same database used by the FBI.

74.    The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301 U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937). In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

75.     Additionally, a waiver of a teacher's tenure rights must be knowingly and freely given (Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d 446; Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d 450).

76.     Tenured teachers have a property and liberty right to their jobs, and therefore when there is any penalty that reduces the benefits of these rights, there must be Just Cause. Judge Desmond Green in the Richmond County Supreme Court ruled in the case of Rosalie Cardinale that:

"New York State created the public school tenure system guaranteeing continued employment to tenured teachers by statute and therefore created a property right in a tenured teacher's continued employment. (See Education Law§§§ 3012, 3012- a, 3020, Holt v. Board of Educ. Of Webutuck Cent. School Dist., 52 NY2d 625 [1981], Matter of Abromovich v. Board of Educ. of Cent. School Dist. No. I of Towns of Brookhaven & Smithtown, 46 NY2d 450 [1979]). Where a property right in continued employment exists, such as New York's tenure system, the recipient of such a right may not be deprived without due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 [1985].

New York State guarantees a tenured teacher's due process rights to continued employment by statute requiring that "no [tenured teacher] ... shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement ... " Education Law § 3020."

76.     Based on the foregoing, the Defendant failed to provide either a reasonable accommodation for Comack's medical issues and Jean's religious beliefs and as a result, discriminated against the Plaintiffs on the basis of their religion and medical status, unlawfully discriminating against the Plaintiffs in the terms and conditions of their employment in violation

of Education Law §3020, §3020-a, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,

et seq., 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and

N.Y.C. Human Rights Law.

**AS AND FOR A SEVENTH CAUSE OF ACTION:**
**THE PROCESS USED TO IMPLEMENT THE COVID MANDATE**
**VIOLATED ARTICLE I §XI OF THE NEW YORK STATE CONSTITUTION**
**AND THE EQUAL PROTECTION CLAUSE**
**(All Plaintiffs)**

77.      Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs

1 through 76 as if the same were fully set forth at length herein.

78.      Few things are more violative of the equal protection clause than the CVM. The N.Y.

Constitution Article I §XI states: "No person shall be denied the equal protection of the laws of

this state or any subdivision thereof." New York State's equal protection clause is identical in

breadth to its federal counterpart. See Dorman v. Castro, 214 F.Supp.2d 299 (E.D.N.Y. 2002). It

is the law of the land that the purpose of the equal protection clause is to keep "governmental

decision-makers from treating differently persons who are in all relevant aspects alike." Nicholas

v. Tucker, 114 F.3d 17, 20 (2d Cir.1997). Under the equal protection clause, the government

must treat all similarly situated people alike. See Engquist v Oregon Dept. of Agr., 553 US 591

(2008) (acknowledging that equal protection clause is generally concerned with State conduct

that results in disparate treatment for arguably indistinguishable classes of individuals); Harlen

Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir.2001).

79.      Where government action draws a distinction between classes of people, the

"classification must be reasonable and must be based upon some ground of difference that

rationally explains the different treatment" People v. Liberta, 64 N.Y.2d 152, 163 (1984); see

also Gauthier v. Gabel, 44 Misc.2d 887, 891 (N.Y. Cty, 1964) (implicitly finding that equal

protection is violated where a classification is wholly arbitrary, or is not founded on reasonable distinctions or difference, or if any set of facts cannot reasonably be conceived that would sustain it); Great Atl. & Pac. Tea Co. v. Town of E. Hampton, 997 F. Supp. 340, 350–51 (E.D.N.Y. 1998). Otherwise, the government action violates the equal protection clause.

80.     Simply put, whether it is legislation, regulation, or mandate the equal protection clause "'requires that all persons . . .shall be treated alike, under like circumstances and conditions, both in the privileges conferred and, in the liabilities, imposed.'" Engquist 553 US 591, 602 (2008) (quoting Hayes v. Missouri, 120 U.S. 68, 71–72 (1887). "A classification must be reasonable, not arbitrary, and with reference to distinctions that do not affect any fundamental right or affect some suspect class of persons, must rest upon some ground of difference having a rational relation to the object of the legislation, so that all persons similarly situated are treated alike." Sutphin Pharm., Inc. v Perales, 770 F Supp 168, 172 (S.D.N.Y. 1991).

81.     Defendant's COVID Mandate implementation throws the equal protection clause into the wind, and with it, the Mandate itself.

82.     It cannot be disputed that employees were similarly situated to every other unvaccinated person in the City. Put differently, COVID-19 was not isolated to the workplace or specific to employees. In Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin., 595 U.S. 109 (2022) (per curium) the Federal government mandated that all employees working for employers with over 100 workers must be vaccinated. Unvaccinated employees who did not comply with the rule would be "removed from the workplace." Id. The Supreme Court stayed the rule mandating vaccination. Importantly, the Court reasoned that "[a]lthough COVID–19 is a risk that occurs in many workplaces, it is not an occupational hazard in most. COVID–19 can and does spread at home, in schools, during sporting events, and everywhere else that people

gather. That kind of universal risk is no different from the day-to-day dangers that all face from crime, air pollution, or any number of communicable diseases." (Id. at 118). The risk of contracting or spreading COVID-19 did not disappear when employees were off the clock. Consequently, employees were similarly situated with every other unvaccinated person. See Jacobson v. Massachusetts, 197 U.S. 11, (1905) (finding all people living in the city of Cambridge to be similarly situated during an outbreak of smallpox).

83.     Mandating only a certain population within the worker category get vaccinated was not reasonably related to protecting the public health. Contra C.F., 191 A.D.3d (ordering people who lived in one out of four zip codes where there was an outbreak of measles to get vaccinated); Jacobson v. Massachusetts, 197 U.S. 11, 13 (1905) (upholding a law that required "all inhabitants of Cambridge" to get vaccinated against smallpox where there was an outbreak of smallpox in the city of Cambridge) (emphasis added). Therefore, the manner the Mandate was implemented was  not rationally related to furthering a public health goal since forcing a subset of the population to get vaccinated does not prevent the "hundreds of thousands" of unvaccinated members of the public from spreading COVID-19.

84.     Additionally, there is no rational justification for classifying public employees differently than private sector employees and treating public and private sector employees differently than professional athletes and performers. These classifications are wholly arbitrary. Distinctions based on employment status are irrelevant to combat a disease present everywhere. Cf. McMinn v. Town of Oyster Bay, 66 N.Y.2d 544, 549 (1985) (holding that "restricting occupancy of single-family housing based generally on the biological or legal relationships between its inhabitants bears no reasonable relationship to the goal [] of reducing parking and traffic problems . . ."). Indeed, a basketball player on the Brooklyn Nets for example, is more likely to

spread COVID-19 than a DSNY employee. Basketball is a contact sport and is played inside a stadium with thousands of fans all in close proximity to each other.

85.     Manifestly, achieving the goal of stopping the transmission of COVID-19 within the City depends not on employment status, but on all the people living in the City because COVID-19 existed everywhere. Accordingly, the Mandate violated N.Y. Const art. I §XI.

Furthermore, the Defenant failed to demonstrate how their classification system was rationally related to stopping the transmission of COVID-19. The Defendant ignored that Mayor Adams did not enforce the private sector Mandate and that it treated unvaccinated public employees differently than every other unvaccinated person without a rational basis. Id. The Mandate implementation strategies cannot survive rational basis review.

**PLAINTIFFs DEMANDS A TRIAL BY JURY**

**WHEREFORE**, Plaintiffs demand judgment against the Defendant for all compensatory, emotional, and psychological damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiffs any other relief to which they are entitled, including but not limited to:

1.     Awarding Plaintiffs their tenured positions and salaries given to them before October 2021, in full, with benefits;

2.     Awarding Plaintiffs all the backpay that ensued after they were placed on a Leave Without Pay;

3.     Granting such other and further relief that the Court seems just and proper.

    Dated: March   2024


_Jean Jean_
Jean Jean                          _Kathleen Comack_
                                   Kathleen Comack

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

Jean Jean
53 Periwinkle Road
Levittown, New York, 11756
Kathleen Comack
17 Harbor Road
Oyster Bay, New York, 11771
*Plaintiff(s)*

v.

The Department of Education
of The City of New York
65 Court Street
Brooklyn, New York, 11201
*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____         _____

                                                         *Server's signature*

                                              _____

                                                         *Printed name and title*

                                              _____

                                                         *Server's address*

Additional information regarding attempted service, etc:

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jean Jean
53 Periwinkle Road
Levittown, New York, 11756

Kathleen Comack
17 Harbor Road
Oyster Bay, New York
11771

**DEFENDANTS**

The Department of Education of The City of New York    65 Court Street
Brooklyn, New York, 11201

**(b)** County of Residence of First Listed Plaintiff    Nassau County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

*Does this action include a motion for temporary restraining order or order to show cause? Yes☐ No☐"*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec 1983 and 1981, Title VII, 504 Rehabilitation Act

Brief description of cause:
Discrimination and Retaliation based upon religious belief and Medical

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND** $2,000,000.00

CHECK YES only if demanded in complaint: Condition

**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*:

JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, _____, counsel for _____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☐      monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐      the complaint seeks injunctive relief,

☐      the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more of its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

# NY-E DIVISION OF BUSINESS RULE 1(c)

1.)      Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?      ☐ Yes      ☐ No

2.)      If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?      ☐ Yes      ☐ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?      ☐ Yes      ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:      .

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?      ☐ Yes      ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☐      Yes                              ☐      No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐      Yes   (If yes, please explain      ☐      No

I certify the accuracy of all information provided above.

**Signature:** _____

Exhibit A

Order of Commissioner

4 pages

## ORDER OF THE COMMISSIONER
## OF HEALTH AND MENTAL HYGIENE
## TO REQUIRE COVID-19 VACCINATION FOR
## DEPARTMENT OF EDUCATION
## EMPLOYEES, CONTRACTORS, VISITORS, AND OTHERS

**WHEREAS,** on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS,** on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS,** pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS,** pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS,** the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS,** the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic;" and

**WHEREAS,** on September 9, 2021, President Joseph Biden announced that staff who work in Head Start programs and in schools run by the Bureau of Indian Affairs and Department of Defense will be required to be vaccinated in order to implement the CDC's recommendations; and

**WHEREAS,** on August 26, 2021, New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a vaccine by October 7, 2021; and

**WHEREAS,** Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt

vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science; and

**WHEREAS** the New York City Department of Education ("DOE") serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated; and

**WHEREAS,** a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**WHEREAS,** on August 24, 2021, I issued an order requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building, which was amended on September 12, 2021; and

**WHEREAS,** unvaccinated visitors to public school settings could spread COVID-19 to students and such individuals are often present in public school settings and DOE buildings;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, to

**RESCIND and RESTATE** my September 12, 2021 Order relating to COVID-19 vaccination for DOE employees, contractors, visitors, and others; and

I hereby order that:

1. No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below:
   a. DOE staff must provide proof of vaccination to the DOE.
   b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer.
   c. Staff of contractors of DOE or the City, as defined below, must provide proof of vaccination to their employer, or if self-employed, to the DOE.
   d. Staff of any charter school serving students up to grade 12, and staff of contractors hired by charter schools co-located in a DOE school setting to work in person in a DOE school setting or DOE building, must provide proof of vaccination to their employer, or if self-employed, to the contracting charter school.

2. An employer to whom staff must submit proof of vaccination status, must securely maintain a record of such submission, either electronically or on paper, and must demonstrate proof of compliance with this Order, including making such records immediately available to the Department upon request.

3. Beginning September 13, 2021, all visitors to a DOE school building must show prior to entering the building that they have:
   a. Been fully vaccinated; or
   b. Received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Received the first dose of a two-dose vaccine.

4. Public meetings and hearings held in a DOE school building must offer individuals the opportunity to participate remotely in accordance with Part E of Chapter 417 of the Laws of 2021.

5. For the purposes of this Order:

   "Charter school setting" means a building or portion of building where a charter school provides instruction to students in pre-kindergarten through grade 12 that is not collocated in a DOE building.

   "DOE school setting" includes any indoor location where instruction is provided to DOE students in public school pre-kindergarten through grade 12, including but not limited to locations in DOE buildings, and including residences of students receiving home instruction and places where care for children is provided through DOE's LYFE program. DOE school settings include buildings where DOE and charter schools are co-located.

   "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.

   "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.

   "Proof of vaccination" means proof that an individual:
   a. Has been fully vaccinated;
   b. Has received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Has received the first dose of a two-dose vaccine, in which case they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

   "Staff of contractors of DOE or the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school

setting, a DOE building, or a charter school, and includes individuals working as independent contractors.

"Visitor" means an individual, not otherwise covered by Paragraph 1 of this Order, who will be present in a DOE school building, except that "visitor" does not include:
   a. Students attending school or school-related activities in a DOE school setting;
   b. Parents or guardians of students who are conducting student registration or for other purposes identified by DOE as essential to student education and unable to be completed remotely;
   c. Individuals entering a DOE school building for the limited purpose to deliver or pick up items;
   d. Individuals present in a DOE school building to make repairs at times when students are not present in the building;
   e. Individuals responding to an emergency, including police, fire, emergency medical services personnel, and others who need to enter the building to respond to or pick up a student experiencing an emergency;
   f. Individuals entering for the purpose of COVID-19 vaccination;
   g. Individuals who are not eligible to receive a COVID-19 vaccine because of their age; or
   h. Individuals entering for the purposes of voting or, pursuant to law, assisting or accompanying a voter or observing the election.

"Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting, DOE building, or charter school setting. It does not include individuals who enter such locations for the limited purpose to deliver or pick up items unless the individual is otherwise subject to this Order. It also does not include individuals present such locations to make repairs at times when students are not present in the building unless the individual is otherwise subject to this Order.

6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.

7. This Order shall be effective immediately and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated: September 15, 2021

Dave A. Chokshi, M.D., MSc
Commissioner

Page 4 of 4

Exhibit B

Emergency Executive Order

4 pages

**94**

FILED: RICHMOND COUNTY CLERK 07/20/2022 03:32 PM
NYSCEF DOC. NO. 7

INDEX NO. 85163/2022
RECEIVED NYSCEF: 07/20/2022



EXHIBIT
3

THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

EMERGENCY EXECUTIVE ORDER NO. 62
March 24, 2022

WHEREAS, the COVID-19 pandemic has severely impacted New York City and its economy, and is addressed effectively only by joint action of the City, State, and Federal governments; and

WHEREAS, the state of emergency to address the threat and impacts of COVID-19 in the City of New York first declared in Emergency Executive Order No. 98, issued on March 12, 2020, and extended most recently by Emergency Executive Order No. 46, issued on February 28, 2022, remains in effect; and

WHEREAS, this Order is given because of the propensity of the virus to spread person-to-person, and also because the actions taken to prevent such spread have led to property loss and damage; and

WHEREAS, athletes and performing artists frequently conduct their work at venues both inside and outside of the City, without regard to their residence in the City, and their work benefits the City's economic recovery from the pandemic, often attracting large numbers of visitors to the City; and

WHEREAS, New York City athletic teams have been, and continue to be, at a competitive disadvantage because visiting teams can field unvaccinated players, and this competitive disadvantage has negatively impacted, and continues to negatively impact, New York City teams' success, which is important to the City's economic recovery and the morale of City residents and visitors; and

WHEREAS, additional reasons for requiring the measures continued in this Order are set forth in my prior Emergency Executive Order No. 50, issued on March 4, 2022;

NOW, THEREFORE, pursuant to the powers vested in me by the laws of the State of New York and the City of New York, including but not limited to the New York Executive Law, the New York City Charter and the Administrative Code of the City of New York, and the common law authority to protect the public in the event of an emergency:

Section 1. I hereby direct that section 1 of Emergency Executive Order No. 59, dated March 19, 2022, is extended for five (5) days.

FILED: RICHMOND COUNTY CLERK 07/20/2022 03:32 PM

NYSCEF DOC. NO. 7

INDEX NO. 85163/2022

RECEIVED NYSCEF: 07/20/2022

§ 2. I hereby order that section 3 of Emergency Executive Order No. 50, dated March 4, 2022, is amended to read as follows.

§ 3. I hereby direct that:

a. Covered entities that had been covered by the Key to NYC program shall continue to require that a covered worker provide proof of vaccination, unless such worker has received a reasonable accommodation. Covered entities shall continue to keep a written record of their protocol for checking covered workers' proof of vaccination and to maintain records of such workers' proof of vaccination, as described in subdivisions d and e of section 2 of Emergency Executive Order No. 317, dated December 15, 2021.

b. Records created or maintained pursuant to subdivision a of this section shall be treated as confidential.

c. A covered entity shall, upon request by a City agency, make available for inspection the records required to be maintained by this section, consistent with applicable law.

d. For the purposes of this Section:

(1) "Covered entity" means any entity that operates one or more "covered premises," except that "covered entity" does not include pre-kindergarten through grade twelve (12) public and non-public schools and programs, houses of worship, childcare programs, senior centers, community centers.

(2) "Covered premises" means any of the following locations, except as provided in subparagraph (iv) of this paragraph:

> **(i) Indoor Entertainment and Recreational Settings, and Certain Event and Meeting Spaces,** including indoor portions of the following locations, regardless of the activity at such locations: movie theaters, music or concert venues, adult entertainment, casinos, botanical gardens, commercial event and party venues, museums, aquariums, zoos, professional sports arenas and indoor stadiums, convention centers and exhibition halls, hotel meeting and event spaces, performing arts theaters, bowling alleys, arcades, indoor play areas, pool and billiard halls, and other recreational game centers;

> **(ii) Indoor Food Services,** including indoor portions of food service establishments offering food and drink, including all indoor dining areas of food service establishments that receive letter grades as described in section 81.51 of the Health Code; businesses operating indoor seating areas of food courts; catering food service establishments that provide food indoors on its premises; and any indoor portions of an establishment that is regulated by the New York State Department of Agriculture and Markets offering food for on-premises indoor consumption; and

FILED: RICHMOND COUNTY CLERK 07/20/2022 03:32 PM
NYSCEF DOC. NO. 7

INDEX NO. 85163/2022
RECEIVED NYSCEF: 07/20/2022

**(iii) Indoor Gyms and Fitness Settings**, including indoor portions of standalone and hotel gyms and fitness centers, gyms and fitness centers in higher education institutions, yoga/Pilates/barre/dance studios, boxing/kickboxing gyms, fitness boot camps, indoor pools, CrossFit or other plyometric boxes, and other facilities used for conducting group fitness classes.

(iv) "Covered premises" does not include houses of worship or locations in a residential or office building the use of which is limited to residents, owners, or tenants of that building.

(3) "Covered worker" means an individual who works in-person in the presence of another worker or a member of the public at a workplace in New York City. "Covered worker" includes a full- or part-time staff member, employer, employee, intern, volunteer, or contractor of a covered entity, as well as a self-employed individual or a sole practitioner.

"Covered worker" does not include:

(i) an individual who works from their own home and whose employment does not involve interacting in-person with co-workers or members of the public;

(ii) an individual who enters the workplace for a quick and limited purpose;

(iii) a performing artist, or an individual accompanying such performing artist, while the performing artist is in a covered premises for the purpose of such artist's performance; or

(iv) a professional athlete, or an individual accompanying such professional athlete or such athlete's sports team, who enters a covered premises as part of their regular employment.

(4) "Proof of vaccination" means proof of receipt of a full regimen of a COVID-19 vaccine authorized for emergency use or licensed for use by the U.S. Food and Drug Administration or authorized for emergency use by the World Health Organization, not including any additional recommended booster doses. Such proof may be established by:

(i) A CDC COVID-19 Vaccination Record Card or an official immunization record from the jurisdiction, state, or country where the vaccine was administered, or a digital or physical photo of such a card or record, reflecting the person's name, vaccine brand, and date administered; or

(ii) A New York City COVID Safe App (available to download on Apple and Android smartphone devices); or

(iii) A New York State Excelsior Pass; or

(iv) CLEAR's digital vaccine card; or

3

**97**

FILED: RICHMOND COUNTY CLERK 07/20/2022 03:32 PM
NYSCEF DOC. NO. 7

INDEX NO. 85163/2022
RECEIVED NYSCEF: 07/20/2022

(v) Any other method specified by the Commissioner of Health and Mental Hygiene as sufficient to demonstrate proof of vaccination.

(5) I hereby order that section 20-1271 of the Administrative Code of the City of New York is modified by adding the following provision to the definition of "just cause:" Notwithstanding any provision of this chapter, a fast food employer shall be deemed to have just cause when a fast food employee has failed to provide proof of vaccination required by an emergency executive order issued in response to the COVID-19 pandemic and shall not be required to follow progressive discipline procedures prior to terminating the employee, provided that the employee shall have 30 days from the date when the employer notified the employee of the requirement to submit such proof and the employee shall be placed on leave following such notification until such proof is provided.  This provision shall not excuse the employer from the responsibility to provide a reasonable accommodation where required by law.

e. An individual who meets the requirements of subparagraph (iii) or (iv) of section 3(d)(3) of this Order shall be exempt from the Order of the Commissioner of Health dated December 13, 2021, relating to requiring COVID-19 vaccination in the workplace.

§ 3. I hereby direct the Fire and Police Departments, the Department of Buildings, the Sheriff, and other agencies as needed, to enforce the directives set forth in this Order in accordance with their lawful authorities, including Administrative Code sections 15-227(a), 28-105.10.1, and 28-201.1, and section 107.6 of the Fire Code. Violations of the directives set forth in this Order may be issued as if they were violations under Health Code sections 3.07 and 3.11, and enforced by the Department of Health and Mental Hygiene or any other agency.

§ 4. This Emergency Executive Order shall take effect immediately and shall remain in effect for five (5) days unless it is terminated or modified at an earlier date.

Eric Adams
Mayor

4

Exhibit C

Impact bargaining

18 pages

```
-------------------------------- X
In the Matter of the Arbitration
                                  X
          between
                                  X
BOARD OF EDUCATION OF THE CITY              Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF    X
NEW YORK
                                  X
          "Department"
                                  X
          -and-
                                  X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO             X
                                  
          "Union"                 X
                                  
-------------------------------- X
```

**APPEARANCES**

> **For the Department**
>     Renee Campion, Commissioner of Labor Relations
>     Steven H. Banks, Esq., First Deputy Commissioner
>     and General Counsel of Labor Relations

> **For the Union**
> STROOCK & STROOCK & LAVAN, L.L.P.
>     Alan M. Klinger, Esq.

> Beth Norton, Esq., UFT General Counsel
> Michael Mulgrew, UFT President

**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

**BACKGROUND**

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021. The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic. During that time, we have seen substantial illness and loss of life. There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant. Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible. Yet, municipal employees have often borne great risk. The Department and the UFT are no exception. The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year. Educators at all levels strove to deliver the best experience possible under strained circumstances. For this

2

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning. They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters. In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits. This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate.  A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters.  The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters.  Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions.  Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved.  By agreement of the parties, the process moved to arbitration.  They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions.  They did so.  Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate.  I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

4

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements. As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings. All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters. The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated. Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected. The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims. I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved. They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral.  The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner.  For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone.  They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter.  This undertaking could not be accomplished by any single arbitrator.

## Opinion

After having carefully considered the record evidence, and after having the parties respond to countless inquiries.  I have requested to permit me to make a final determination, I make the rulings set forth below.  While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone.  I hereby issue the following Award:

I.   **Exemption and Accommodation Requests & Appeal Process**

As an alternative to any statutory reasonable accommodation

6

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

    A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)— with contraindications delineated in CDC clinical

7

considerations for COVID-19 vaccination.  Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for  conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

8

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

9

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

11

accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as

12

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II. __Leave__

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

13

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

   i. Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

   ii. No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

   iii. Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

14

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv. Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period. This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v. In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child. As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi. If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

15

vii.   All other eligibility and use rules regarding UFT Parental Leave as well as FMLA remain in place.

## III. <u>Separation</u>

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons.   An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

16

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

contained, herein, all parties retain all legal rights at all times relevant, herein.

September $\big/ 0$ , 2021.

_____

Martin F. Scheinman, Esq.
Arbitrator


STATE OF NEW YORK         )
                          )    ss.:
COUNTY OF NASSAU          )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September $\big/\!\big)$ , 2021.

_____

Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.Impact Bargaining.awd

18

Exhibit D

Appendix US Court of Appeals

2pages

# APPENDIX

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:    Pierre N. Leval,
           José A. Cabranes,
           Denny Chin,
                *Circuit Judges.*

---

Michael Kane, William Castro, Margaret Chu,
Heather Clark, Stephanie Di Capua, Robert Gladding,
Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad
Smith, Amaryllis Ruiz-Toro,

                    *Plaintiffs-Appellants,*                    **ORDER**

            v.                                                  21-2678-cv

Bill de Blasio, in his official capacity as Mayor of
the City of New York, David Chokshi, in his
official capacity of Health Commissioner of the
City of New York, New York City Department of
Education,

                    *Defendants-Appellees.*

---

Matthew Keil, John De Luca, Sasha Delgado,
Dennis Strk, Sarah Buzaglo,

                    *Plaintiffs-Appellants,*

            v.                                                  21-2711-cv

The City of New York, Board of Education of the
City School District of New York, David Chokshi, in
his Official Capacity of Health Commissioner of the
City of New York, Meisha Porter, in her Official

Capacity as Chancellor of the New York City
Department of Education,

               *Defendants-Appellees.*

---

    The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal having been heard at oral argument on November 10, 2021, and Defendants-Appellees ("Defendants") having represented to this Court that "the City is working toward making an opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

    **ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious accommodation by a central citywide panel consisting of representatives of the Department of Citywide Administrative Services, the City Commission on Human Rights, and the Office of the Corporation Counsel.
2. Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs.
3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be considered within two weeks of entry of this order. The citywide panel shall issue a determination on each request no later than two weeks after a plaintiff has submitted such information and materials. Within two business days of the entry of this order, Defendants shall inform plaintiffs' counsel how such information and materials should be transmitted to the citywide panel.
4. The deadline to opt-in to the extended leave program and execute any accompanying waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's employment for noncompliance with the vaccination requirement.
5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay running from the date they were placed on leave without pay.
6. This order is intended only to provide for temporary interim relief until the matter is considered by the merits panel of this court, which panel may entirely supersede these provisions for interim relief, and the parties are at liberty to advocate to the merits panel for alteration of these provisions. Unless the merits panel has previously entered a superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before the citywide panel, the parties shall inform the merits panel of the result of those proceedings and advise of any further relief being sought.

                                    FOR THE COURT:
                                    Catherine O'Hagan Wolfe, Clerk

Exhibit E

Letter - Soher Lawfirm

3 pages

# THE SCHER LAW FIRM, LLP

### ONE OLD COUNTRY ROAD  SUITE 385
### CARLE PLACE. NY 11514

—

MARTIN H SCHER*

JONATHAN L SCHER*˙

—

AUSTIN R GRAFF*

TEL  516-746-5040

—

FAX  516-746-5043

W  SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P  BRINT
COUNSEL

ADAM GANG
COUNSEL

—

ROBERT S  NAYBERG

* Also Admitted in District of Columbia

˙ Also Admitted in New Jersey

July 7, 2022

**BY FEDERAL EXPRESS AIRBILL NO.  777327941330**
**AND BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   Broecker, *et al.* v. New York City Department of Education, *et al.*
>          Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents the Plaintiffs in the above-referenced Action.  The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon new documentary evidence obtained yesterday contained in the filing with the New York State Supreme Court, County of New York in a newly filed litigation entitled *In the Matter of the Application of the Board of Education of the City School District of the City of New York, et al. v. United Federation of Teachers, Local 2, AFT, AFL-CIO, et al.* under Index Number 451995/2022 ("DOE Proceeding"), regarding a dispute over a new arbitration decision by the Defendant Martin Scheinman ("Scheinman") materially and relevant to the pending Motions to Dismiss.

The *New York Post* reported yesterday on the DOE Proceeding which challenges Scheinman's Opinion and Award relating to 82 NYCDOE employees placed on leave without pay by the New York City Department of Education ("NYCDOE") for filing allegedly false vaccine cards.  *See,* **Exhibit A**, a copy of the *New York Post* article.

Through due diligence, we were able to find the NYCDOE's filings in the DOE Proceeding, which included the new Opinion and Award issued by Scheinman that directly relates to the pending Motions to Dismiss in the above-referenced Action.

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 2 of 3

---

In Scheinman's newest Opinion and Award (**Exhibit B** ("Opinion and Award")), Scheinman states with respect to the UFT Arbitration Award ("Award"):

> ... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.
>
> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

**Exhibit B**, at page 10.

This language, written by Scheinman in the Opinion and Award supports three arguments previously made by the Plaintiffs in opposition to the Motions to Dismiss:

First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to place the Plaintiffs on leave without pay without due process, thereby violating the Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing." **Exhibit B,**

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 3 of 3

at page 10. Scheinman's own words establish that the Plaintiffs have stated a plausible claim for a violation of 42 U.S.C. § 1983 against the NYCDOE and Scheinman because as he admits, without his Award, the NYCDOE would have had to provide the Plaintiffs with due process before placing them on leave without pay, admitting that his actions caused the Plaintiffs to "suffer[ ] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Accordingly, the Scheinman Defendants' Motion to Dismiss must be denied.

Third, Scheinman confirms that it was him who "decided [leave without pay] was appropriate", which means that the NYCDOE and the UFT did not "continu[e] to negotiate until an 'agreement' [was] reached" but instead the resolution of the NYCDOE's and UFT's impasse was imposed by Scheinman in violation of N.Y. Civil Service Law § 209.3.(f). *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016). Scheinman's words confirm that the Award was a newly created and imposed remedy to the school district's impasse in negotiations with its union and therefore violated clear and unambiguous statutory language requiring a school district, like the NYCDOE, and its union, like the UFT, to overcome any impasse at the bargaining table and not through any other means. As a result, Scheinman's words support the Plaintiffs' argument that they have a plausible claim that the Award was promulgated and instituted without any statutory authority.

********************

The Plaintiffs thank the Court for its courtesies in accepting the Plaintiffs' supplemental filing, considering the Opinion and Award only came into the Plaintiffs' possession yesterday and the Plaintiffs believed, as shown above, that the Opinion and Award is material and relevant to the pending Motions to Dismiss.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

Exhibit F

Scheinman Letter

14 pages

Case 1:24-cv-02264-LDH-LB   Document 1   Filed 03/28/24   Page 68 of 96 PageID #: 68



June 27, 2022

**<u>Via E-Mail Only</u>**
Liz Vladeck, Esq.
New York City Department of Education
Office of the General Counsel
52 Chambers Street, Room 308
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Michael Mulgrew, President
Beth Norton, Esq.
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

**Re:**   **Board of Education of the City School District of the City of New York and**
**United Federation of Teachers, Local 2, AFT, AFL-CIO**
**(Proof of Vaccination)**

Dear Counsel:

Enclosed please find my Opinion and Award in the above referenced matter.

I have also enclosed my bill for services rendered.

Thank you.

Sincerely,

Martin F. Scheinman

MFS/sk
NYCDOE.UFT.proof of vaccination trans

322 Main Street   ◆   Port Washington, NY 11050   ◆   516.944.1700   ◆   fax: 516.944.1771   ◆   www.ScheinmanNeutrals.com

Case 1:24-cv-02264-LDH-LB   Document 1   Filed 03/28/24   Page 69 of 96 PageID #: 69

```
-------------------------------- X
In the Matter of the Arbitration
                                  X
          between
                                  X    Re: Proof of
BOARD OF EDUCATION OF THE CITY             Vaccination
SCHOOL DISTRICT OF THE CITY OF    X
NEW YORK
                                  X
          "Department"
                                  X
          -and-
                                  X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO             X
                                  
          "Union"                 X
                                  
-------------------------------- X
```

**APPEARANCES**

> **For the Department**
>   Liz Vladeck, General Counsel
>
>
> **For the Union**
> STROOCK & STROOCK & LAVAN, L.L.P.
>   Alan M. Klinger, Esq.
>
>   Beth Norton, Esq., UFT General Counsel
>   Michael Mulgrew, UFT President

**BEFORE:**  Martin F. Scheinman, Esq., Arbitrator

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM  INDEX NO. 155220/2022
NYSCEF DOC. NO. 31                                     RECEIVED NYSCEF: 07/01/2022

## BACKGROUND

The Union protests the Department's decision to summarily place approximately eighty two (82) Department employees on leave without pay, with benefits, effective April 25, 2022. This action was based upon information the Department received from a separate investigative agency these employees' proof of COVID-19 vaccination was allegedly fraudulent. The Union contends the issue of whether the Department's action is proper and falls within the scope of my September 10, 2021, Award ("Award").

Most of the basic facts are not in dispute.

In July 2021, former Mayor de Blasio announced a "Vaccine-or-Test" mandate which required the City workforce, including the educators, to either be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021. Thereafter, on August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in Department buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto Department premises, would not be paid for work and would be at risk of loss of job and benefits.

2

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM    INDEX NO. 155220/2022

NYSCEF DOC. NO. 31    RECEIVED NYSCEF: 07/01/2022

This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

The Union promptly sought to bargain the impact and implementation of the Vaccine Only mandate. The parties had a number of discussions, but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The Department did not challenge the statement of impasse and PERB appointed me to mediate the matters. Mediation sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.

Arbitration sessions were then held. On September 10, 2021, I issued an Award which set forth a detailed procedure to be followed in the cases of employees who sought an exemption to the Vaccination Mandate based on a medical condition or religious reasons.

3

Case 1:24-cv-02264-LDH-LB   Document 1   Filed 03/28/24   Page 72 of 96 PageID #: 72

In accordance with the procedure set forth in my Award, employee requests for an exemption were initially submitted to the Department along with any supporting documentation.  An employee wishing to appeal an adverse determination by the Department was given the opportunity to appear at a hearing before an impartial arbitrator who was authorized to render a final and binding decision.  Approximately five hundred (500) appeals were determined by the arbitration process.  Pending the arbitrator's decision, the employee could not be removed from the payroll.

On April 19, 2022, the Department informed approximately eight two (82) employees they were being placed on leave without pay, with benefits, effective April 25, 2022, based on allegations their proof of COVID-19 vaccination was fraudulent.  The employees were told they could contact the Department if they believed the allegation they submitted fraudulent proof of vaccination was wrong.  On April 21, 2022, the Union wrote the Department and demanded it rescind its decision to remove these employees from the payroll without the benefit of a due process hearing.

By letter dated April 22, 2022, the Department set forth its position placement of these employees on a leave without pay status did not constitute discipline, and, therefore, did not implicate the disciplinary procedures set forth in the Education Law or the parties' Collective Bargaining Agreement ("Agreement").

4

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM   INDEX NO. 155220/2022
NYSCEF DOC. NO. 31                                    RECEIVED NYSCEF: 07/01/2022

Thereafter, by letter dated May 3, 2022, the Union wrote to me requesting I take jurisdiction over this dispute. The Union cited to that portion of the Award which states "should either party have reason to believe the process set forth herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution".

By letter dated May 4, 2022, the Department wrote in opposition to the Union's May 3, 2022, letter. The Department stated it was in full compliance with my Award, as well as the Agreement and applicable law. The Department also insisted this matter was not properly before me.

On May 4, 2022, I conducted a conference call with the parties. At that time, each side was given the opportunity to argue their positions.

Thereafter, on May 6, 2022, the Union submitted further argument in support of its position. The Department responded in a letter dated May 10, 2022.

Upon my receipt of the parties' written submissions, I closed the record.

## DISCUSSION AND FINDINGS

### The Issues:

The basic issues to be decided are as follows:

5

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM INDEX NO. 155220/2022

NYSCEF DOC. NO. 31                                    RECEIVED NYSCEF: 07/01/2022

1. Is the Department's decision to place the approximately eighty two (82) employees on leave without pay, with benefits, subject to my jurisdiction pursuant to the September 10, 2021, Award?

2. If so, what shall be the remedy?

## Position of the Parties

The Department insists the facts of circumstances regarding its placement of the eighty two (82) employees on leave without pay, with benefits, is not within my jurisdiction pursuant to the Award. According to the Department, the Award sets forth an expedited process to review Department employees' requests for exemptions and accommodations from the August 21, 2021, mandate to submit proof of COVID-19 vaccination by September 29, 2021. The Department maintains the requests for an exemption or accommodation were limited to medical and religious grounds. It contends no other issue is covered by the Award.

The Department contends it placed the employees on a leave without pay status as a result of the Department's receipt of information from a law enforcement agency the employees in question submitted fraudulent proof of vaccination in order to comply with Commissioner Chokshi's order which required vaccination of all Department staff.

According to the Department, the Courts have held compliance with the Commissioner Chokshi's Order is a "condition of

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM INDEX NO. 155220/2022
NYSCEF DOC. NO. 31                                              RECEIVED NYSCEF: 07/01/2022

employment". The Department maintains this situation is no different to the Department's unilateral action against an employee who is not certified. As such, the Department maintains placing employees on leave without pay for failing to comply with the Commissioner Chokshi's Order comports with applicable due process procedures as long as notice is given, and the employee has an opportunity to respond. In support of its position the Department cites Broecker v. N.Y. Dep't of Educ., 21-CV-6387, 2022 WL 426113 at *7-8 (E.D.N.Y. Feb. 11, 2022); and N.Y. City Mun. Labor Comm. V. City of New York, 151169/2022 (Sup. Ct. N.Y. County Apr. 21, 2022).

The Department argues employees who are identified in connection with a law enforcement investigation into the submission of fraudulent vaccination cards are outside the scope of the Award. Furthermore, the Department insists the Award's reference to a party's failure to implement the process does not apply to the facts and circumstances presented, here. According to the Department, the language relied upon by the Union refers specifically to the "administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school". The Department asserts since that process is not at issue, here, the Union's claim is misplaced.

Case 1:24-cv-02264-LDH-LB    Document 1    Filed 03/28/24    Page 76 of 96 PageID #: 76

For the reasons set forth above, the Department contends the Union's request for relief pursuant to the Award must be denied.

The Union, on the other hand, argues the Department's decision to place these employees on leave without pay, with benefits, is predicated on the Award. It insists this matter is subject to my continued jurisdiction. The Union asserts the Agreement prohibits an employee from being removed from the payroll without establishing probable cause in a due process hearing. [1]

The Union maintains the Department's contention this situation is akin to the removal of an uncertified employee is misplaced. According to the Union, approval of certification is issued by the State. In addition, the Union insists an employee is either certified by the State or is not, there is no underlying question of fact to be determined. The Union asserts if an employee proves they have completed all of the necessary paperwork, but they are not yet certified, they will not be terminated.

The Union urges in this instance 'the Department made a unilateral decision to place the employees on leave, without pay, based solely on a communication from another agency the employees were not vaccinated. The Union contends the Department has no direct knowledge of whether that assertion is true or false.

---

[1] There are limited exceptions to this procedure which are inapposite.

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM   INDEX NO. 153220/2022
NYSCEF DOC. NO. 31                                    RECEIVED NYSCEF: 07/01/2022

According to the Union, the Department removed the employees from the payroll and subsequently allowed them to provide additional evidence they are vaccinated. The Union maintains as of May 6, 2022, employees who have contacted the Department asserting they have been placed on leave without pay in error have not received any response, yet they remain suspended without pay.

The Union asserts the only authority for the Department to place employees on leave without pay, with benefits, is the Award. It contends the Department is improperly invoking the Award, and the action cannot be taken until the dispute concerning their vaccination status is determined through the Award's stated process.

In short, the Union argues the Department's unilateral decision to place employees on leave without pay, with benefits, based on the communication from another agency the employees are not vaccinated falls within the jurisdiction of the Award.

## Opinion

Certain preliminary comments are appropriate. As an arbitrator my role is a limited one. In order for me to determine whether I can assert jurisdiction over the Department's actions as alleged by the Union, I am limited by the language of the Award. If the Award is clear, I must enforce it according to its plain meaning.

9

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM INDEX NO. 155220/2022

NYSCEF DOC. NO. 31                                      RECEIVED NYSCEF: 07/01/2022

With these principles in mind, I turn to the facts presented.

I find I have jurisdiction to consider this matter. While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

Implicit in such a designation of leave without pay is the individual failed to comply with the vaccine mandate. Here, there is a dispute whether the employees did or did not comply. Without that being assessed, or at least submitting evidence to show a high likelihood of non-compliance, the predicate for placing an employee on leave without pay does not exist.

The Department's decision to automatically place these employees on leave without pay is inconsistent with the language and underpinnings of my Award. Nothing in the Award grants the Department such use of leave without pay status.

Case 1:24-cv-02264-LDH-LB   Document 1   Filed 03/28/24   Page 79 of 96 PageID #: 79

Based upon the above, I find the Department failed to properly implement the due process protections of my Award.  The Union has the right to assert the Department's process "is not implemented in good faith."  To be clear, nothing in my Award was intended to abrogate any due process rights the parties otherwise maintained with regard to employment status.

I also disagree with the Department's position the court decisions it cites support the removal of these employees from pay status without a hearing.  Those court decisions confronted an entirely different factual scenario.  Unlike this matter, in those cited cases, there was no claim the employees at issue were vaccinated.

In denying the request for a preliminary injunction, Justice Kim, in NYC Municipal Labor Committee, supra., specifically found the absence of that factual issue in her determination.  Here, of course, the employees assert they are in fact vaccinated.  This raises a factual issue that is ripe for adjudication pursuant to my Award.

Based on the reasons set forth above, I take jurisdiction over the Department's placement of the approximately eighty two (82) employees placed on leave without pay, with benefits.  The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an

Case 1:24-cv-02264-LDH-LB Document 1 Filed 03/28/24 Page 80 of 96 PageID #: 80

employee's claim they have submitted proof of vaccination. If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM INDEX NO. 155220/2022

NYSCEF DOC. NO. 31

RECEIVED NYSCEF: 07/01/2022

**AWARD**

1.  Pursuant to Section 1L of my Award dated September 10, 2021, I shall assume jurisdiction over the Department's decision to place eighty two (82) employees on leave without pay, with benefits, effective April 25, 2022.

2.  The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an employee's claim they have submitted proof of vaccination. If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NASSAU    )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.CHIARA.NARASHIAN.AWD

13

Exhibit G

Jean Religious Exemption Denial

1 page

SCHEINMAN ARBITRATION AND MEDIATION SERVICES

------------------------------------------- X

In the Matter of the Arbitration

        between                     X

NEW YORK CITY DEPARTMENT OF EDUCATION         Re: UFT.542

           and

    JEAN JEAN

------------------------------------------- X

Issue: _____ Religious Exemption _____

Date of Hearing: _____

<u>Award</u>

APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [X]   OTHER [ ]

_____

_____

_____

_____

_____

_____

_____        9/24/2021
Arbitrator                     Date

*Martin F. Scheinman, Esq*

Exhibit H

NYC Doe LWOP

2pager

## Notice of Leave Without Pay - PLEASE READ

NYCDOE <noreply@schools.nyc.gov>
Sat 10/2/2021 3:10 PM

To:          @schools.nyc.gov>

 **Department of Education**

Dear

You are receiving this message because **you are being placed on a Leave Without Pay (LWOP) because you are not in compliance with the DOE's COVID-19 Vaccine Mandate.** If you are a substitute or in certain titles you have been placed in another inactive status, not a LWOP. **This means you must not report to your work or school site beginning Monday, October 4th.**

While you are on Leave Without Pay (LWOP), you:

- Cannot work and will not receive compensation, but you will continue your medical benefits
- Cannot use annual leave, CAR or sick time
- Cannot enter your work or school site
- Cannot reach out to students or families

In order to return from LWOP status, you must complete two steps using the **DOE Vaccination Portal**

1. Upload proof that you have received your first dose of a COVID-19 vaccine. **Proof of COVID-19 Vaccine can be an image of your vaccination card, NYS Excelsior Pass, or another government record**
2. E-sign the attestation stating that you are willing to return to your worksite within seven calendar days of submission.

Once you have completed these two steps, your HR Director and supervisor will also be notified and will work with you to plan your return date.

**If you have been vaccinated this weekend and upload this information by Monday morning, you may report to work as usual on Monday, October 4th, and you will be put back on active status.**

On Monday, October 4th, if you have an acceptable proof of vaccination (e.g., vaccination card, NY State Excelsior pass, or other government record) but have not been able to upload to the **DOE Vaccination Portal**, you may show your proof to the School Safety Agent and/or Principal (or designee) at the door. You will be allowed in the building, and you must immediately upload proof of vaccination to the Vaccination Portal and confirm that you would like to return to work in order to ensure there is no break in payroll.

If you encounter technical issues accessing the Vaccination Portal, please contact the DOE Help Desk by opening a ticket online or calling 718-935-5100. If you need support uploading your proof of vaccination, please contact your principal or HRD who can do so on your behalf.

Please be advised that if you do not intend to return to the DOE after October 1, 2021, you will need to return all DOE property, including computers, IDs, blackberries, and keys, immediately. Failure to return any DOE property that has been assigned to you will delay the processing of your final payment and any payout of leave time.

Employees represented by UFT or CSA who have been placed on LWOP due to vaccination status may select (in SOLAS) special separation or leave options per the arbitration award:

- **Separation with benefits** (available in SOLAS as of Monday, October 4): Employees choosing to separate under this option:
  - **Must share their intention to separate via SOLAS by October 29, 2021.**
  - Will be required to waive their rights to challenge the involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process
  - Will be eligible to be reimbursed for unused CAR/sick leave on a one-for-one basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid out following the employee's separation
  - Will be eligible to maintain health insurance through September 5, 2022, unless they have health insurance available from another source.
- **Extend the leave without pay due to vaccination status through September 5, 2022** (available in SOLAS as of Monday, November 1 through November 30, 2021):
  - Employees choosing this option will also be required to waive their rights to challenge their involuntary resignation, including, but not limited to, through a contractual or statutory discipline process
  - They will remain eligible for health insurance through September 5, 2022
  - Employees who have not returned by September 5, 2022 shall be deemed to have voluntarily resigned
- Beginning December 1, 2021, the DOE will seek to unilaterally separate employees who have not selected one of the options above or otherwise separated service.

For more information about where to get vaccinated, visit vaccinefinder.nyc.gov or call 877-VAX-4-NYC. For the latest COVID-19 staffing updates, please visit the Coronavirus Staff Update InfoHub page.

Sincerely,

NYCDOE Division of Human Capital

Exhibit I

Problem Code
Email

1 page

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ██████████████████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. Our central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.


Thanks,
Eric

Exhibit T

Comack Dr's Note
1 page



& Heart Center

Phone: 516.390.9640 ~ Fax: 516.390.9650

163-03 Horace Harding Expressway , Suite 100, Fresh Meadows, New York  11365
Phone:  718.454.1600  ~  Fax:  718.454.3954

September 14, 2021

SUB:  Kathleen Gomack
DOB:  6/4/1961

To whom it may concern:

This letter is in reference to Mrs. Kathleen Gomack who is currently under my cardiovascular care. Mrs. Gomack has a cardiac history of palpitations and dizziness with subsequent cardiac work-up revealing a supraventricular tachycardia (SVT), marked sinus bradycardia and nonsustained ventricular tachycardia. The patient underwent an electrophysiology study back in November 2020 at St. Francis Hospital which led to an radiofrequency ablation for the SVT as well as implantation of a loop recorder to monitor for any life-threatening arrhythmias.  Due to Mrs. Gomack's underlying cardiac condition it is advisable that Mrs. Gomack be excused from receiving the COVID-19 vaccine due to potential side effects that might exacerbate her underlying cardiac arrhythmias.  If there are any questions or concerns regarding the above matter please free to contact me at any time.

Sincerely,

Antonio P. Madrid, MD.
*Electronically signed by Antonio P. Madrid, MD on 9/14/2021*

Exhibit  JA

Comade

Medical Exemption Denial

1 page

## Your COVID-19 Vaccine Medical Exemption Application - Determination

solas_dontreply@schools.nyc.gov <solas_dontreply@schools.nyc.gov>
Wed 9/22/2021 7:52 PM
To:Comack Kathleen <KComack@schools.nyc.gov>

09/22/2021

Case#: A77168
File# 0642560
EMP ID: 711184

Dear KATHLEEN COMACK,

This is to advise you that your request for a Medical Exemption to the COVID-19 Vaccine Mandate has been denied for the following reason(s):

- Denial Reason: Medical condition not valid reason to defer or delay vaccination (e.g. not within 90 days after receiving antibody treatment, and not in treatment for conditions outlined in CDC considerations that would temporarily interfere with the ability to respond adequately to the vaccine)

- Additional Information: NA

Your application was reviewed in accordance with the ADA, the New York State and City Human Rights Laws, as well as the Arbitration Award in the matter of your union and the Board of Education regarding the vaccine mandate.

Under the terms of the Arbitration Award, you may appeal this denial to an independent arbitrator. If you wish to appeal, you must do so within one school day of this notice by logging into SOLAS https://dhrmycaps.nycenet.edu/SOLAS and selecting the option: "I would like to APPEAL". As part of the appeal, you may submit additional medical documentation and must provide a reason for the appeal.

Sincerely,

*HR Connect*
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Ref Number : GX5918928 N3416 COVID-19_VAX_MedExemption_Denial (All Unions)

Exhibit K

Comack Arbitration Denial

/page

SCHEINMAN ARBITRATION AND MEDIATION SERVICES

```
------------------------------------------------  X
In the Matter of the Arbitration
                                                  X
            between
                                                  X
NEW YORK CITY DEPARTMENT OF EDUCATION                  Re: UFT.1252
                                                  X
            and
                                                  X
Kathleen Comack
                                                  X

------------------------------------------------  X
```

Issue:    Medical Exemption

_____


Date of Hearing: October 5, 2021
        _____


## AWARD

APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [✓]   OTHER [ ]

_____


_____


_Carol M. Hoffman_                    10/5/21
-----------------------------         --------------------
Carol M. Hoffman, Esq.                Date: Oct.5,2021

Arbitrator

Exhibit L

Accomedations Availability

1 page

## Re: Your Pending Appeal for An Exemption to the COVID-19 Vaccine Mandate

**Comack Kathleen <KComack@schools.nyc.gov>**

Sun 10/3/2021 8:25 PM

To:Leddy Peter <PLeddy@schools.nyc.gov>

Thank you .

Get Outlook for iOS

---

**From:** Leddy Peter <PLeddy@schools.nyc.gov>
**Sent:** Sunday, October 3, 2021 10:42:20 AM
**To:** Comack Kathleen <KComack@schools.nyc.gov>
**Subject:** Re: Your Pending Appeal for An Exemption to the COVID-19 Vaccine Mandate

Ms. Comack,
I bring your attention to paragraph 4 of the email sent to you. This is a Central Administration NYC DOE determination, not a school-based decision.

If your appeal is granted (approved) and you remain unvaccinated, you will not be put on a Leave Without Pay status.  **If your usual place of work is in a school, you will receive a new assignment outside of a school building (e.g. administrative offices) to perform academic or administrative work determined by the DOE.**  A notification of this assignment may take a few days and in the interim you should temporarily work offsite to transition your work and support related activities.  During this time, you should be available during regular work hours and check-in with your school's payroll secretary for timekeeping purposes. If your usual place of work is not in a school building, you should continue to report to your regular location and assignment unless notified otherwise.

Peter Leddy
Principal
The Susan B. Anthony Academy, I.S. 238
www.twitter.com/IS238SBA
www.facebook.com/IS238SBA
https://www.instagram.com/is238sba/
88-15 182nd Street
Hollis, NY 11423
(718) 297-9821
*"True heroism is remarkably sober, very undramatic. It is not the urge to surpass all others at whatever cost, but the urge to serve others at whatever cost." - Arthur Ashe*

---

**From:** Comack Kathleen <KComack@schools.nyc.gov>
**Sent:** Sunday, October 3, 2021 8:35 AM
**To:** Leddy Peter <PLeddy@schools.nyc.gov>
**Subject:** Fwd: Your Pending Appeal for An Exemption to the COVID-19 Vaccine Mandate

Dear Mr Leddy,