**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

—————————————————————x

**JEAN JEAN, and KATHLEEN COMACK,**

                       Plaintiff

                           **Docket No: 24-cv -02264 (LDH)(LB)**

-against-

**THE DEPARTMENT OF EDUCATION**
**OF THE CITY OF NEW YORK,**

                       Defendant

—————————————————————x

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'

## MOTION TO DISMISS

**Jean Jean**
**53 Periwinkle Road**
**Levittown, NY 11756**
**516-343-4109**
**jeancommack@gmail.com**
          **PRO SE**

**Kathleen Comack**
**17 Harbor Road**
**Oyster Bay, NY 11771**
**516-640-7235**
**jeancommack@gmail.com**

1

**PRO SE**

**<u>PRELIMINARY STATEMENT</u>**

Plaintiffs JEAN JEAN and KATHLEEN COMACK ("Plaintiffs") proceeding pro se submit below their Opposition to the Defendant's Motion To Dismiss and argue that none of the arguments used by the Defendants substantially refute Plaintiffs' facts or claims. Defendant's Motion To Dismiss must be denied in its' entirety.

Defendant, acting under color of law at all times, seems to support the argument that Plaintiffs failed to plead engagement in protected activities, received all the due process they were entitled to, never had a problem code, were not ridiculed for not getting vaccinated, and were forced to separate from the NYC Department of Education ("DOE") despite stellar performance records. All of these actions were taken, the DOE stated, only because Plaintiffs were not complying with the COVID Vaccine Mandate ("CVM") which made an alleged "nondisciplinary" constructive termination procedure created by Arbitrator Martin Scheinman in September 2021 (**EXHIBIT C**, Complaint) lawfully correct.

Yet the Appeals procedure was discarded as "constitutionally infirm" in November 2021 by this Court. **EXHIBIT D**. Plaintiffs, both tenured, long-term public employees, have protected rights under the 1st and 14th Amendments that were never honored by the Defendant, namely, rights to equal protection under the law as well as a being given due process hearings that complied with the high standard of Education Law §§3020 and 3020-a.

Instead, Defendant wants this court to believe that the DOE could legally force all employees to get vaccinated with a temporary, experimental, Emergency Usage COVID vaccine which denied Federal rights to obtain accommodations for their religious beliefs and medical disabilities because the terms of their employment were changed to allow that action. This is false. There

2

was no change to Plaintiffs' terms of employment at any time. The Defendant's arguments against these claims made in Plaintiffs' Complaint do not stand up against rational review. Plaintiffs request that each and every argument, cause of action, background facts and Exhibits in their Complaint be incorporated in full into the arguments made here by reference. The Exhibits already submitted to this Court in support of their causes of action are: **EXHIBITS A-L** Attached to this Opposition are **EXHIBITS M-Z.**

None of Plaintiffs' claims are conclusory and all are fact-based. In sum, Plaintiffs were fired for holding onto their sincere religious beliefs and valid medical issues without being given any accommodation or due process and were punished with termination. Defendant's Motion To Dismiss is a thinly-veiled attempt to reframe this case into something that it is not and redirect this Court's attention from the egregious and unscrupulous actions and behaviors of the Defendant. Defendant's papers ignore the four corners of  the Complaint and disregard the facts in the detailed factual allegations which are to be accepted as true. Defendant's Motion To Dismiss must be dismissed in its' entirety.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must. contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss brought pursuant to Rule 12(b)(6), the pleadings must contain enough facts to state a claim to relief that is plausible on its face." Dellatte v. Great Neck Union Free Sch. Dist., No. 10-cv-4348, 2012 WL 164078, at *1 (2d Cir. Jan. 20, 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). The court must accept all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008). Where the

court finds well-pleaded factual allegations, it should assume their veracity and determine whether they plausibly give rise to an entitlement to relief. Iqbal, 129 S. Ct. at 1950. In ruling on a motion to dismiss, a court may consider the facts asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits and any documents incorporated in the complaint by reference. Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010). Nonetheless, when the Court reviews a pro se complaint it must hold it "to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after Twombly, courts "remain obligated to construe a pro se complaint liberally").

## NOTICE OF CLAIM REQUIREMENTS ARE NOT APPLICABLE TO §1983 SUITS BROUGHT IN FEDERAL COURT

New York's Notice of Claim requirements were applicable to §1983 suits in state court but not federal court prior to Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302. See, e.g., Brandon v. Board of Education, 635 F.2d 971, 973 n. 2 (2d Cir. 1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981); Courtemanche v. Enlarged City School District, 686 F.Supp. 1025, 1032 (S.D.N.Y. 1988); Burroughs v. Holiday Inn, 621 F.Supp. 351, 353-55 (W.D.N.Y. 1985); Williams v. Allen, 616 F.Supp. 653, 656-59 (E.D.N.Y. 1985); Paschall v. Mayone, 454 F.Supp. 1289, 1298 (S.D.N.Y. 1978). Felder v. Casey noted that although the Supreme Court itself "ha[d] never passed on the question, the lower federal courts have all, with but one exception, concluded that notice-of-claim provisions are inapplicable to § 1983 actions brought in federal court." 487 U.S. at 140, 108 S.Ct. at 2307. In Brandon v. Board of Education, 635 F.2d at 973 n. 2, a ruling was upheld that compliance with the state's notice-of-claim provision was not a precondition to the district court action. Since the filing of a notice of claim was not a prerequisite to the federal-court suit, a municipality perforce

could not require a delay of the commencement of a federal-court suit pending an examination based on such a notice. See Day v Moscow 955 F.2d 807 (2nd Cir 1992). Thus, Plaintiffs' CHRL and SHRL claims are not time barred, and Human Rights Law has, in any case, a 3-year statute of limitations. Both Plaintiffs filed Notices of Claim in 2023 against the DOE for placing them on the Problem Code database without reason or Notice, and also left them no way to remove this Code.

## PLAINTIFFS HAVE PLED SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS OF DISCRIMINATION PURSUANT TO THE FIRST AMENDMENT, FREE EXERCISE CLAUSE, NYCHRL AND NYSHRL

The criteria for discrimination under a *prima facie* Human Rights Law claim includes: Plaintiffs (1) are members of a protected class; (2) were qualified for their positions and satisfactorily performed their duties; (3) suffered  adverse employment actions; and (4) the circumstances surrounding that action gave rise to an inference of discrimination. In this matter, a review of Plaintiffs' exhibits attached to their Complaint and here, in their Opposition, shows conclusively that Plaintiffs have a sincere religious belief as well as medical issues that could bring harm to them if they got vaccinated with the COVID vaccine. **EXHIBIT M**.  Jean Jean Religious Accommodation Appeal, and **EX. J**, Doctor's note for Plaintiff Comack. Their facts did not have to be proven, under the laws that control human rights law and accommodations. The burden, after giving the DOE their Appeals, fell onto the Defendant to prove that they had an undue burden in giving either Plaintiff an accommodation. This standard, key to this case, was never attempted in any form. The Defendant rests on no reason whatsoever for the general standard "undue burden" , even in the face of the latest ruling, namely Groff v DeJoy (see U.S. Supreme Court No. 22-174 (Jan. 13, 2023), Complaint p. 14 and **EXHIBIT N.** Groff v Dejoy, attached. In that Decision the Supreme Court held that showing a de minimis cost is no longer sufficient to qualify as undue hardship under Title VII. Instead, the Court clarified that Title VII requires an

5

employer that denies a religious accommodation to show that the burden of granting the religious accommodation would result in "substantial increased costs in relation to the conduct of its particular business."

The threshold inquiry in any First Amendment retaliation case is whether the employee was speaking as a citizen on a matter of public concern. Woodlock v. Orange Ulster B.O.C.E.S., 281 F. App 'x 66, 68 (2d. Cir. 2008) (quoting Garcetti v Ceballos, 547 U.S. 410, 418 (2006)). Plaintiffs' speech is constitutionally protected if they were speaking (1) as citizens rather than pursuant to their employment duties, and (2) on a matter of public concern. Dorcely v. Wyandanch Union Free Sch. Dist., 665 F. Supp. 2d 178, 205 (E.D.N.Y. 2009) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). They did just that and should have been protected from the adverse actions taken by the DOE..

Plaintiffs request that the Court make note of a Decision recently issued by Judge Komitee in this Court, that tenured teacher Amoura Bryan could proceed in her case after pleading she was placed on leave without pay for exercising her religious practice to decline being vaccinated. (Women of Color For Equal Justice, 22-cv-02234 (EK)(LB)):

> Ms. Bryan pleads that "for exercising her religious practice" — that is, for declining to be vaccinated — she was placed on leave without pay. Id. ¶ 142. These allegations, while highly general, are sufficient at this stage. And the assessment of whether the City could have reasonably accommodated Ms. Bryan without undue hardship is a fact-intensive assessment that cannot be determined from within the four corners of the complaint. See Groff, 600 U.S. at 468.

WOMEN OF COLOR FOR EQUAL JUSTICE,  22-CV-02234(EK)(LB). Komitee added,

> Like Title VII, the City's Human Rights Law requires a plaintiff to allege a bona fide religious belief to make out a prima facie case of discrimination. Specifically, under the NYCHRL, a plaintiff must demonstrate that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the  conflicting employment requirement." Weber

6

v. City of New York, 973 F.Supp.2d 227, 263 (E.D.N.Y. 2013) (collecting cases).

…At the next step of NYCHRL analysis, the burden shifts to the employer "to rebut the presumption of discrimination by clearly setting forth, through the introduction of admissible evidence, legitimate, independent, and nondiscriminatory reasons to support its employment decision." Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 (N.Y. 2004). Here, defendants cannot carry that burden. At the motion to dismiss stage, the Court may only consider the facts in the FAC, which pleads that plaintiff's religion was not accommodated. See FAC ¶¶ 138-42; Davis v. Boeheim, 24 N.Y.3d 262, 268 (N.Y. 2014). Thus, Ms. Bryan's NYCHRL claim may proceed….

Under the NYCHRL, an employer like New York City is liable for the conduct of its employee or agent "only where": (1) "the employee or agent exercised managerial or supervisory responsibility;" (2) "the employer knew of [an] employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action . . ."; or (3) the employer "should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent [it]." N.Y.C. Admin. Code § 8-107(13)(b).
Here, the third factor is easily satisfied at this stage: the City cannot (and does not) contend that it lacked knowledge of the vaccine mandate, the absence of a religious exemption therefrom, or the consequences of non-compliance. Thus, Ms. Bryan's NYCHRL claim is proper against the City of New York and the Department of Education."

Komitee also wrote on p. 19 in a footnote:

"12 Ms. Bryan did not attach a right-to-sue letter to the complaint. *See* Pl.'s Ex. 2, ECF No. 88-2. However, exhaustion of administrative remedies is not a pleading requirement, as "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Public Works Dep't,* 879 F.3d 486, 491(2018).

Plaintiffs in this case request that they be given the same consideration.

The First Amendment to the Constitution protects Plaintiffs' free exercise of religion and mandates state accommodation for members of religious groups who object to the vaccinations on religious grounds. The Free Exercise Clause recognizes and guarantees Americans the "right to believe and profess whatever religious doctrine [they] desire."

Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872,

7

877 (1990). The Free Exercise Clause also ascertains that the government may not attempt to regulate, compel, or punish religious beliefs. Sherbert v. Verner, 374 U.S. 398, 402 (1963); Torcaso v. Watkins, 367 U.S. 488, 492–93, 495 (1961); and United States v. Ballard, 322 U.S. 78, 86 (1944). The Government may not discriminate against or impose special burdens upon individuals because of their religious beliefs or status. Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 877; McDaniel v. Paty, 435 U.S. 618, 627 (1978). The Constitution's protection against government regulation of religious belief is absolute; it is not subject to limitation or balancing against the interests of the government. Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 877; Sherbert v. Verner, 374 U.S. 402 (1963).

Plaintiffs  received no alternative accommodation or option; they were simply put on leave without pay. During the 2020-2021 school year, all DOE employees worked remotely a lot or most of the time during the pandemic. In Burlington Northern & Santa Fe Railway Co. v White, 548 U.S. 53 (2006) the U.S. Supreme Court held that suspension without pay was disciplinary, and retaliatory discrimination:

> Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." Pub. L. 88–352, §704, 78 Stat. 257, as amended, 42 U. S. C. §2000e–2(a). A separate section of the Act—its anti-retaliation provision—forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. §2000e–3(a).
> …An indefinite suspension without pay could well act as a deterrent to the filing of a discrimination complaint, even if the suspended employee eventually receives backpay. Thus, the jury's conclusion that the suspension was materially adverse was reasonable." Pp. 15–18.

8

In this preliminary stage, Plaintiffs have satisfied their burden as she has pleaded how she has been subjected to discrimination due to her religion and religious beliefs without any accommodation or due process of Ed Law 3020 and 3020-a, which have caused her termination and, ultimately, her inability to work.

To set forth a prima facie case for First Amendment retaliation under Section 1983, Plaintiffs must, and did, allege that (1) their rights to their religious beliefs and/or medical accommodation were denied to them; (2) they suffered adverse employment action; and (3) a causal relationship between the two existed in that their religion/religious beliefs and medical needs were a substantial or motivating factor for the adverse employment action. Gronowski v. Spencer, 424 F.3d 285 (2d Cir. 2005). Plaintiffs properly made those allegations in their Complaint.

In order to prevail on a Free Exercise Clause claim, a plaintiff must plead that 'the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation' or that its 'purpose . . . is the suppression of religion or religious conduct.'" Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993). In analyzing whether the mandate is violative of the First Amendment, Courts consider whether the mandate will be de minimus. People v. Clifford, 2024 N.Y. Misc. LEXIS 425. Further, it is well settled that the Government is not free to disregard the First Amendment in times of crisis. The Supreme Court explained that employers must take into account "all relevant factors in the case at hand, including the particular accommodation at issue and their practical impact in light of the nature, size, and operating cost of an employer. See Groff V. Dejoy, Postmaster General, 600 US 447 (2023). It is clear that since the Groff case and the interpretation by the Supreme Court, Kane v. De Blasio, 19 F.4th 152, 166 (2d Cir. 2021) should not apply here. Even if Kane does apply, the Appeals procedure in Scheinman's Award and subsequently in the Citywide Panel Process were ruled unconstitutional because these panels' procedures were not religiously neutral on its face. (**Ex. D,E**, Complaint, and **EXHIBIT**

9

**O** here. Attorney Austin Graff mentions in **Ex. O** that the DOE gave religious exemptions to more than 100 applicants. Why not to the Plaintiffs in this case? No reason has been given by the Defendant that makes sense under the Law and under Groff.

 The Supreme Court has explained that "the government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs [or medical condition] of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." Citing Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n, U.S., 138 S. Ct. 1719, 1731, 201 L.Ed.2d 35 (2018). See also Garvey v. The City of New York, 77 Misc. 3d 585, 180 N.Y.S.3d 476 (Richmond, County 2022). In *Does 1-11 v. Board of Regents of University of Colorado*, 100 F.4th 1251 (10th Cir. 2024), the Tenth Circuit held that state university employees were likely to succeed on Free Exercise and Establishment Clause claims and entitled to preliminary injunction against denials of religious accommodation to a vaccine mandate. In *Does*, the Court affirmed that a vaccine mandate is "in no way generally applicable" when government evaluates employee religious beliefs case-by-case, allowing "individualized exemptions" to applicants whose beliefs, in the government's discretion, merit accommodation. Additionally in that case the Defendant adopted a facially discriminatory policy and then after litigation, offered a so-called "remedial" policy. Plaintiffs argue here that the hostility by the Defendant toward the Plaintiffs in this matter defeats neutrality at every level of review, which suggests pre-textual discrimination. See **EXHIBIT D, E**, the November 28, 2021 ORDER throwing out the Scheinman Appeals procedure cited in his Sept. 10 2021 Award (**EXHIBIT C,** Kane v de Blasio; Keil v City of New York, 21-2678-cv; 21-2711-cv) as "Constitutionally infirm". The Judge cites Arbitrator Scheinman as writing, "The

10

Arbitration Award states that its procedures are to operate "[a]s an alternative to any statutory reasonable accommodation process", and then in a footnote on p. 11 states:

"We observe that this additional language is superfluous as a legal matter, at least as to religious accommodation under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e, *et seq.* The Commissioner, a City official, could not override Title VII, a federal law requiring employers to offer reasonable accommodations that do not result in undue hardship on the employer. *See* U.S. CONST. art. VI, cl. 2 (Supremacy Clause). Thus, even under the original Vaccine Mandate, DOE employees were legally entitled to request accommodations."

The Judge in Kane/Keil wrote, " Plaintiffs have established their entitlement to preliminary relief on the narrow ground that the procedures employed to assess their religious accommodation claims were likely constitutionally infirm as applied to them" p. 4; and, after a motions panel heard oral argument on November 10 2021concerning an emergency injunction by the Plaintiffs, the City conceded that the Accommodation Standards are "constitutionally suspect".

The Court of Appeals sent the case (Kane-Keil) to the District Court with an order that the City give all unvaccinated employees at the NYC Department of Education another chance to get an accommodation. The Citywide Panel was set up, and this secret group was as constitutionally unsound as Scheinman's arbitrators. See **EXHIBIT P.** Citywide Panel General Denial. See also **EXHIBIT Q,** EICHENHOLTZ AFFIDAVIT where he based the decisions of the Panel to deny appellants on a "de minimis" standard, and not the standard cited in Groff v Dejoy. Additionally, the Panel worked in secrecy, and no one knew who, if anyone, heard the appeals. While an employer is not required to offer accommodations if it constitutes an undue hardship, an employer should, at the very least, engage in the interactive process, which, in this case, Defendant did not. Ansonia Bd. of Ed. v. Philbrook, 479 US 60; Greenbaum v. N.Y. City Transit Auth., 2022 U.S. App. LEXIS 22589, at *8 (2d Cir. 2022).

Title VII of the Civil Rights Act of 1964 and Human Rights Law address religious freedom.

11

The Supreme Court case the EEOC v. Abercrombie & Fitch Stores, Inc. 575 U.S. 768 (2015) concluded that "An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions. Title VII contains no knowledge requirement. Furthermore, Title VII's definition of religion clearly indicates that failure-to-accommodate challenges can be brought as disparate-treatment claims. Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief." Moreover, as the EEOC has made clear, Title VII's protections also extend nonreligious beliefs if related to morality, ultimate ideas about life, purpose, and death. See EEOC, Questions and Answers: Religious Discrimination in the Workplace (June 7, 2008), Questions and Answers: Religious Discrimination in the Workplace | U.S. Equal Employment Opportunity Commission (eeoc.gov) ("Title VII's protections also extend to those who are discriminated against or need accommodation because they profess no religious beliefs . . . . Religious beliefs include theistic beliefs, for example, those that include a belief in God as well as non-theistic 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.' Although courts generally resolve doubts about particular beliefs in favor of finding that they are religious, beliefs are not protected merely because they are strongly held. Rather, religion typically concerns 'ultimate ideas' about 'life, purpose, and death'").

The First Amendment to the Constitution protects Plaintiff's free exercise of religion and mandates state accommodation for members of religious groups who object to the vaccinations on religious grounds. The Free Exercise Clause recognizes and guarantees Americans the "right to believe and profess whatever religious doctrine [they] desire." Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872, 877 (1990). See **EXHIBIT O.** Graff letter on Free Exercise.

Government may not discriminate against or impose special burdens upon individuals because of their religious beliefs, medical condition, or status. The Constitution's protection against government regulation of religious belief is absolute; it is not subject to limitation or balancing against the interests of the government. Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 877; Sherbert v. Verner, 374 U.S. 402 (1963).

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith herein.''. West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943).

The Free Exercise Clause protects beliefs rooted in religion, even if such beliefs are not mandated by a particular religious organization or shared among adherents of a particular religious tradition. Frazee v. Illinois Dept. of Employment Security, 489 U.S. 829, 833–34 (1989). As the Supreme Court has repeatedly counseled, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Church of the Lukumi Babalu Aye v. Hialeah, 508 U.S. 520, 531 (1993) They must merely be "sincerely held." Frazee v. Illinois Dept. of Employment Security, 489 U.S. 834 (1989). Importantly, the protections guaranteed by the Free Exercise Clause also extend to acts undertaken in accordance with such sincerely held beliefs. That conclusion flows from the plain text of the First Amendment, which guarantees the freedom to "exercise" religion, not just the freedom to "believe" in religion. Employment Div. v. Smith, 494 U.S. 877 (1990); Thomas v. Review Board of the Indiana Employment Security Division, 450 U.S. 716 (1990); McDaniel v. Paty, 435 U.S. 627 (1978; Sherbert v. Verner, 374 U.S. 403–04 (1963); and Wisconsin v. Yoder, 406 U.S. 205, 219–20 (1972).

The Free Exercise Clause protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." Lyng vs Northwest Indian Cemetery Protection Association , 485 U. S., 450 (1988). "It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." (Sherbert v. Verner, 374 U.S. 404 (1963). Because a law cannot have as its official "object or purpose . . . the suppression of religion or religious conduct," a law must ensure that it is actually neutral and of general applicability. Church, 533-534.

The Court in DOES (10th Cir.) stated that:

> "a government policy that requires an intrusive inquiry into the validity of religious beliefs violates the Establishment Clause regardless of any purported government interest." 100 F.4th at 1268."

A law is not neutral if it singles out particular religious conduct for adverse treatment, treats the same conduct as lawful when undertaken for secular reasons but unlawful when undertaken for religious reasons, applies uncalled for restrictions on religious conduct"; or "accomplishes . . . a 'religious gerrymander,' an impermissible attempt to target [certain individuals] and their religious practices." Id. 538. A law is not generally applicable if "in a selective manner [it] impose[s] burdens only on conduct motivated by religious belief," Id 543., including by "fail[ing] to prohibit nonreligious conduct that endangers [its] interests in a similar or greater degree than . . . does" the prohibited conduct, id., or enables, expressly or de facto, "a system of individualized exemptions," as discussed in Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 884 (1990); see Church, 537. "Neutrality and general applicability are interrelated, . . .[and] failure to satisfy one requirement is a likely indication that the other has not been satisfied." Id, 531.

A law that disqualifies a religious person or organization from a right to compete for a public

benefit—including a grant or contract—because of the person's religious character is neither

neutral nor generally applicable. See Trinity Lutheran Church of Columbia, Inc. v. Comer,

Director, Missouri Department of Natural Resources, 582 U.S. (slip opinion pages 9–11) (2017).

Also, **EXHIBIT R.,** Gibson on the Mandate and Employment**.** Nonetheless, the requirements of

neutral and general applicability are separate, and any law burdening religious practice that fails

one or both must be subjected to strict scrutiny, Church, 546. [O]nly in rare cases'' will a law

survive this level of scrutiny. Id 546.

Even when a law is neutral and generally applicable, government may run afoul of the Free

Exercise Clause if it interprets or applies the law in a manner that discriminates against religious

observance and practice. The Free Exercise Clause, much like the Free Speech Clause, requires

equal treatment of religious adherents. Trinity Lutheran Church of Columbia, Inc. v. Comer 582

U.S. (slip opinion. Page 6) (2017); see also Good News Club v. Milford Central Sch., 533 U.S.

98, 114 (2001), and Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 837, 841

(1995)). The Defendant's Motion To Dismiss must be denied.


## <u>DEFENDANT HID THE ACCOMMODATIONS AVAILABLE TO PLAINTIFFS and IGNORED THE 3020-A DUE PROCESS HEARING</u>

Defendant has blatantly ignored all Federal laws demanding a reasonable

accommodation for Plaintiffs. Furthermore, the City of New York must reasonably

accommodate an employee who's sincerely held religious belief, practice, or observance

conflicts with a work requirement, unless the accommodation would create an undue hardship or

present a direct threat. *See NYC Admin. Code* 8-107(3). The Defendant never offered any

reasonable accommodation. Agency personnel who do not interact in a cooperative dialogue and then make decisions that do not accommodate the employee fail to comply with statutory authority. The Defendant in their Motion To Dismiss never offered a single document or factual evidence that showed any effort towards accommodating Plaintiffs ever took place.

The remedy for the destruction of Federal rights seen here could have been to place anyone who had a sincere religious belief or medical condition that prohibited him/her from being vaccinated against COVID into an alternate site which the Defendants called "Reassignment", or  the "Rubber Room". See **The "Gotcha Squad" and the New York City Rubber Rooms:** **https://nycrubberroomreporter.blogspot.com/2009/03/gotcha-squad-and-new-york-city-rubber.html**

Indeed,  the Defendant deceived this Court in their Motion To Dismiss by failing to acknowledge their well-known accommodations called the "Rubber Rooms" or Reassignment rooms set aside for tenured employees who are removed from their jobs for any or no reason, while an investigation into their possible suspension or termination is pending. No one is taken off salary unless a pre-termination hearing called "Probable Cause Hearing" takes place to decide the severity of the misconduct which had been alleged. This person either is cleared and goes back to work, or in charged with 3020-a and brought to an arbitration where they can defend their actions under oath as well as face their accusers. See **EXHIBIT S**, Reassignment Guidelines. This procedure has been used for more than 20 years in New York City. Since 2020, the Reassignment or "Rubber" Rooms have been the accused person's home. People have been staying home on full salary without knowing why and have been held in this confinement for years, sometimes 10

16

or more. Currently, hundreds of Department of Education employees are reassigned on salary to their homes.

Additionally, the DOE has designed and is currently pursung remote schools and have vacancies for part-time and full-time workers. See Teacher Vacancy **EXHIBIT T,** citing remote work. See also blog "NYC Rubber Room Reporter and ATR Connect" and website "ADVOCATZ.com." for more information on the rubber rooms. These reassignments have been open to employees placed there for the past 22 years, and they remain open today.

The sob story given by the Defendant about "undue burden" is simply, and outrageously, false and never suggests an accommodation. The reason this was not offered is because Defendant and the City of New York wanted to get rid of tenure and the hefty salaries senior teachers have which burdens the DOE budget, according to Defendant. When the pandemic scared everyone, the DOE declared it was time for a mass layoff. The pandemic offered a chance for mass expulsion of senior tenured employees, all at once, by terminating anyone who could not , would not, or did not get the COVID vaccination on or before  October 4, 2021. Hundreds of people were removed off of salary illegally and then terminated without a hearing, Arbitrator Martin Scheinman deliberately and intentionally reduced the budget of the Defendant, and profited off of the procedure by placing his own Company in the position of hearing all Appeals. Until November 28,2021.. He wrote in his Award (**EX.C**)  that the mass terminations were not disciplinary, yet this was never supported by any evidence. No explanation about how this was not disciplinary has ever been given to the public. The Defendant made use of COVID panic to trample and discard religious and medical rights without due process, causing the terminated and unvaccinated to file lawsuits.

Arbitrator Martin Scheinman also did not want the DOE burdened by giving individual unvaccinated tenured employees Section §3020-a hearings, which are mandated by Statute and public policy in New York State. **EXHIBIT V**. So, he labelled his lawless "Leave Without Pay" or LWOP as *non-disciplinary*. (emphasis added.) See **EX. C,** Complaint. No one believed that. See **EXHIBIT W**. Letter from the Municipal Labor Committee, MLC.  Scheinman is one of the authors of Education Law §3020 and the Chairman of the UFT-DOE Collective Bargaining Unit which created the UFT Contract ("CBA"). He helped to write all about the hearings in Article 21G of the Contract. He has been an arbitrator for the DOE doing the 3020-a hearings for more than 22 years. A right to a §3020-a hearing cannot be waived. See pp. 20-22 in the Complaint. See also the Order of Judge Gina Abadi in the case Kambouris v NYC Department of Education, Index. No. 518863/2022.( "the DOE is permanently enjoined from placing tenured petitioners on leave without pay or reassigning them to reassignment centers without the DOE first commencing disciplinary procedures pursuant to EL§§ 3020 and 3020~a"). This order was never Appealed by the Department.

Shockingly, Scheinman apologized for his error in creating the LWOP out of thin air. **EX. F,** Complaint. He also agreed that before any tenured teacher was suspended he/she must have a due process 3020-a, just like Judge Abadi ruled in Kambouris.

On a motion to dismiss, a reasonable inference of a causal connection is all that is required. See Posr v. Court Officer Shield # 207, 180 F.3d 409, 418 (2d Cir.1999) ("[T]he plaintiffs pleading need not clearly establish that the Defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect."); Rivera v. Cmty. Sch. Dist. Nine, 145 F.Supp.2d 302,309 (S.D.N.Y.2001). This "can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was

followed by adverse treatment in employment, or directly by evidence of retaliatory animus."
Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999). A court must "exercise its judgment about the
permissible inferences that can be drawn from temporal proximity in the context of [each]
particular case [ ]," Espinal v. Goard. 558 F.3d 119, 129 (2d Cir.2009). Where a Plaintiff asserts
enough direct evidence of retaliatory animus to create a triable question of fact on the issue of a
causal connection as here, a longer lapse between the protected speech and the adverse
employment action Defendants not necessarily "conclusively establish lack of causation." See
Mandel v. County of Suffolk, 316 F.3d 368, 384 (2nd Cir. 2003).

Reading the complaint broadly and drawing all reasonable inferences in Plaintiffs' favor, the
complaint alleges sufficient facts to state a plausible claim for retaliation and discriminatory
animus by Defendant. The Motion To Dismiss must be denied in full.

### PLAINTIFFS HAVE ADEQUATELY PLED A STIGMA PLUS CLAIM AND FRAUD IN THE INDUCEMENT

The fraud of Arbitrator Scheinman cannot be ignored. He deliberately threw away Constitutional
procedures of due process for NYC DOE employees in order to make sure every employee was
terminated who dared to challenge the COVID Mandate. Also, he ruled that everyone had to ask
for an "exception", when under Title VII and Human Rights Law there is no mention of any
allowable 'exception', only an "accommodation". So, Mr. Scheinman made up an alternate route
for the Appeals that he knew would not work, then denied everyone on false pretenses. He and
the Defendant wanted to stay in control and did not want any challenges that could lead to an
unvaccinated employee remaining at work. When Arbitrator Martin Scheinman issued his Award
on September 10 2021, ordering every NYC Department of Education employee to get
vaccinated with the COVID vaccine and hand in a valid card by October 4, 2021, or he/she

would be put on Leave Without Pay (LWOP) and subsequently terminated and have their health insurance taken away, he created this lawless employment ruling in bad faith and to terminate as many tenured employees as possible. Mr. Scheinman then hired his company, Scheinman Arbitration and Mediation Services, to arbitrate all the lawless exemption appeals.

On June 27, 2022 Scheinman issued a new Award in which he apologized to all that he had created the LWOP for no reason other than he thought it was right at the time. He deliberately discarded the unconstitutional process he had designed, without proper determination of religious rights. See the Scher letter **Ex. E** and Scheinman June 27, 2022 Award, **EX.F,** Complaint**.**

The Kane-Keil Panel also sounded the alarm on the fraudulent use of "religious exemption" in Scheinman's Award:

> "At times, the parties appear to use the terms "exemption" and "accommodation"
> interchangeably. As we use those terms, however, exemptions are different from
> accommodations. The Vaccine Mandate includes *exemptions* for certain objectively defined categories of people, like delivery workers. Those who are exempted from the Mandate are not subject to its terms. By contrast, employees who *are* subject to the Mandate can request accommodations under Title VII and analogous state and city law.

*See also We The Patriots USA, Inc. v. Hochul*, 2021 WL 5276624, at *1 (2d Cir. Nov. 12, 2021)."

In fact, when researching Religious Exemption Laws, New York State has no religious exemption law related to the provision of services. What states don't allow religious exemptions?

**Currently, only six states in the country do not allow religious exemptions:**

- California.

- Maine.

- Mississippi.

- New York.

- West Virginia.

- Connecticut.

There is a footnote to this, namely that "Targeted state religious exemption laws permit people, churches, non-profit organizations, and sometimes corporations to seek exemptions from providing services that burden their religious beliefs." Presumably, these categories do not include the City Agencies such as the NYC Education Department, police, fire, etc.

But the Court of Appeals saw this ruse of Mr. Scheinman and threw out the September 10, 2021 Award. **EX. D**. Unfortunately, the Citywide Panel decisions were equally constitutionally suspect. See **EXHIBIT I,** Eichenholtz Affidavit**.**, where no effort to accommodate was made, only the general "undue burden" argument. Another useless statement that came from the Panel was "Did not meet the criteria" for an accommodation. The Citywide Panel had no testimony by any Applicant, and kept the people who made decisions secret as well. This constitutes a violation of due process 14th Amendment rights and denies all appellants their right to a corroborative dialogue with their employer. Plaintiffs were denied their due process. Additionally, the U.S. Supreme Court has ruled that suspension without pay is retaliatory discrimination. In Burlington Northern and Santa Fe Railway Company, 548 US 53 (2006), the Supreme Court unanimously agreed that White suffered retaliatory discrimination when she was reassigned to less desirable duties and suspended without pay.

21

The Problem Code exposed the lies given by Martin Scheinman in his September 10, 2021 Impact Bargaining Award, namely that the LWOP and termination of employees of the NYC DOE *were* disciplinary, because the consequences for anyone not handing in a valid COVID Vaccination card on October 4, 2021 were allegedly "so grave". Plaintiffs were punished for misconduct for holding religious beliefs or having a medical condition  that did not comply with the COVID Mandate. The stigmatizing effect of the problem code can be seen in the denial of Unemployment Benefits by the Department of Labor, **EXHIBIT U**. Employees of the NYCDOE were denied unemployment due to "misconduct". Who represented the terminated tenured employees at the Appeal hearing? None other than the insurance Company "Experian", who appeared at the UI Appeals and had the claimant's problem code, so they could obtain a denial as "misconduct".

Plaintiffs, stellar employees, were not offered  remote work, or telehealth, codified in Article 29-G SECTION 2999-CC, 2999-DD and 2999-EE of the Public Health Law (PBH) Chapter 45, and Article 136 after working remotely in 2020-2021. When Plaintiffs were placed on the problem Code their fingerprints were flagged which meant they were blocked from ever getting a job with the Defendant due to the stigma now attached to their files, solely because of their  religious beliefs and medical condition. See **EXHIBIT X**, and **EXHIBIT X(1).** Plaintiff Jean's problem code. This Problem Code is not secret, and a principal and others who inquire about a DOE employee are given the paperwork. See **EXHIBIT Y.** Black Declaration and **EXHIBIT Z.** Betsy Combier's Declaration.

The Municipal Labor Committee (MLC) is a Group in which all the unions are represented in New York City. In a letter dated August 12, 2021, Chairman Harry Nespoli wrote about the disciplinary process of the COVID mandate. See **EX. W.**  The claim that LWOP was not

disciplinary was and is untrue. Plaintiffs argue that they have pled facts sufficient to prove *more* than an inference of discrimination against their employer, the Defendant, and they do not rely on simple conclusions. It's a fact that Scheinman's September 10 Award discriminated against all tenured teachers who applied for religious exemptions, but held out on discriminating against a select few, and then was thrown out as being constitutionally infirm. This action shows invidious discriminatory animus within a disciplinary policy put forth by the Defendant as valid under the law.

Defendant committed fraud on the employees who applied for religious or medical exemptions, that is clear. Denials were pre-set and pre-textual.

Additionally, Scheinman's September 10 2021 Award was a fraud because he wrote that LWOP, the wholesale, unilateral suspension on October 4, 2021 of tenured and untenured educators who could not/did not/would not get the COVID vaccine, was "not" disciplinary, but it most certainly was disciplinary because of the very secret placement of all unvaccinated employees onto the problem code. See **Exhibits I, X, X(1), Y, Z,** and UI denials due to "misconduct".  Furthermore, Defendant is deliberately misleading when they insisted that the Problem Code is not available to anyone outside the DOE. It most certainly is. See:

**The New York City Department of Education's "Problem Code" is an Unlawful Flag on an Employee's Fingerprints**, Parentadvocates.org,
https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8884
**In NYC the Absent Teacher Reserve and The Rubber Room Are Both Strategies For Unlawful Denial of Tenure Job Protections**
https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8958
**The Problem Code, Fingerprints, The FBI, and the COVID Mandate**
**NYC Rubber Room Reporter, February 12, 2023**
https://nycrubberroomreporter.blogspot.com/2023/02/the-problem-code-and-covid-mandate.html
**The Hidden Rubber Rooms of New York City Create a Fiscal Nightmare**
https://nycrubberroomreporter.blogspot.com/2020/08/the-hidden-rubber-rooms-of-new-york.html

## **CONCLUSION**

Plaintiffs have successfully pled in their Complaint that the DOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiffs on the basis of their religion, and medical condition. The Plaintiffs' terms of employment were never changed, and they never waived their right to a 3020-a due process hearing. Defendant unlawfully discriminated against the Plaintiffs in the terms and conditions of their employment which were never changed. Only new hires to the Department of Education had to get the vaccine as a condition of employment. The claims contained within the four corners of Plaintiff's Complaint go straight to the heart of a substantive due process claim. The very idea that a person's livelihood which is supposed to be determined through a fair evaluation of an educator's job performance, is denied in blatant retaliation for requesting an accommodation is outrageous and unconstitutional in the widest sense. There is no reasonable interpretation of the actions by Defendant alleged within the Complaint that could or should be excused as negligence or mistake.

Plaintiffs terminations were pre-planned and part of a strategy to deny state and Federal laws and rights to certain tenured employees of the Department.. Even if such a definition is up for debate, it is inapplicable in a motion to dismiss stage and a simple reading of the Complaint amply demonstrates that conscience shocking behavior has been sufficiently alleged to permit this cause of action to continue through to discovery as a matter of law. Defendant's Motion To Dismiss must be denied.

**WHEREFORE**, the Plaintiffs demand judgment against the Defendant for all compensatory, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court dismiss the Defendant's Motion To Dismiss in its entirety, and grant Plaintiff any other relief to which she is entitled, including but not limited to:

1. Awarding Plaintiff her former salary amount and salary raises;

2. Awarding Plaintiff all the backpay that is due to her after she was placed on a lawless and unconstitutional Leave Without Pay;

3. If the Court dismisses Plaintiff's Complaint she respectfully requests leave to file an Amended Complaint;

4. Granting such other and further relief that the Court seems just and proper.

Dated: October  29,  2024

*/s/Jean Jean*
Jean Jean
53 Periwinkle Road
Levittown, NY 11756
516-343-4109
jeancommack@gmail.com
                                   PRO SE


*/s/Kathleen Comack*
Kathleen Comack
17 Harbor Road
Oyster Bay, NY 11771
516-640-7235
jeancommack@gmail.com
PRO SE

June 07, 2024

# U.S. Supreme Court Ruling in Groff v. DeJoy Clarifies Heightened Standard for Evaluating Religious Accommodations

Natalie Pattison

https://www.americanbar.org/groups/labor_law/publications/labor_employment_law_news/winter-issue-2024/supreme-court-ruling-groff-v-dejoy/

Share:

The U.S. Supreme Court's June 2023 ruling in *Groff v. DeJoy* constitutes a major change in the legal landscape involving religious accommodation in the workplace. The Court's decision clarified a heightened standard for determining whether a religious accommodation causes "undue hardship on the conduct of the employer's business" under Title VII of the Civil Rights Act of 1964.

Under Title VII, employers must reasonably accommodate an employee's "religious observance and practice" unless the employer shows that such accommodation would cause "undue hardship on the conduct of the employer's business." Under the long-recognized and familiar standard for showing undue hardship, employers were not obligated to provide a religious accommodation if the accommodation posed more than a "de minimis cost" on the employer. The "de minimis cost" standard was a relatively low bar for employers to meet—especially in comparison to the much higher standard under the Americans with Disabilities Act (ADA), which requires a showing that the accommodation imposes "significant difficulty or expense" for undue hardship.

The *Groff* case involved a postal worker, Gerald Groff, who sued the United States Postal Service (USPS) for failing to provide him a religious accommodation. Groff, an evangelical Christian, requested an accommodation that would exempt him from working on Sundays because he believed that Sunday should be devoted to worship and rest, not work, for religious reasons. Although USPS arranged schedules so that Groff wouldn't have to work on Sundays, including having other carriers cover his Sunday shifts, there were times when these efforts failed due to a shortage of available carriers. Groff eventually resigned after receiving discipline for his refusal to work on Sundays.

Groff sued his employer for failure to reasonably accommodate his religious belief and practices, arguing USPS could have accommodated his request for exemption from work on Sundays without imposing undue hardship on the conduct of USPS's business.

**The Court held that showing more than a de minimis cost is no longer sufficient to qualify as undue hardship under Title VII.** Instead, and without deciding whether Groff should have

been accommodated in this case, the Court clarified that Title VII requires an employer that denies a religious accommodation to show that the burden of granting the religious accommodation would result in "substantial increased costs in relation to the conduct of its particular business."

The Court's decision included review of, among other things, ordinary meaning. In considering ordinary meaning, the Court reasoned that undue hardship "means something very different from a burden that is merely more than de minimis, i.e., something that is 'very small or trifling.'" The Court also reviewed the 1977 decision in Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977), which has been interpreted as holding undue hardship means de minimis cost. The Court stopped short of overturning Hardison but explained that that the de minimis interpretation of Hardison is erroneous and showing "more than a de minimis cost as that phrase is used in common parlance, does not suffice to establish undue hardship under Title VII."

With respect to the new "substantial increased costs" standard, the Court explained that employers must take into account "all relevant factors in the case at hand, including the particular accommodation at issue and their practical impact in light of the nature, size, and operating cost of an employer."

The Court gave a few indications of what may or may not constitute undue hardship under the substantial increased cost standard. For example, the Court stated that a coworker's dislike of a certain religious expression is not enough for undue hardship, nor are impacts on coworkers unless there are corresponding effects on the "conduct of the business." The Court also stated that if an employer faces a situation similar to the one presented in *Groff*, it is not enough for the employer to deny the accommodation because it would require other workers to work overtime. Rather, the employer would have to evaluate other options, such as voluntary shift swapping. In other words, the employer cannot simply analyze whether one accommodation is reasonable; the employer must try to find a way to accommodate the employee.

Notably, the Court suggested that "a good deal of the EEOC's guidance in this area is sensible and will, in all likelihood, be unaffected by our clarifying decision today." The Court also declined to align the undue hardship standard under Title VII with that under the ADA. Thus, the ADA standard of "significant difficulty or expense" is still a higher bar for employers to reach than the substantial increased cost standard announced by the Court in *Groff*.

The *Groff* decision changes the way religious accommodation requests should be evaluated when determining whether the accommodation would cause undue hardship on the conduct of the employer's business. Looking ahead, employee requests for religious accommodations will need to be more carefully considered and documented, regardless of whether those requests are for exemption from a vaccine mandate or for break, shift, or job duty modifications.

Jean Jean
53 Periwinkle Road
Levittown, NY, 11756
August 31, 2021

516 343-4109

New York City Department of Education

To whom it may concern:

I am asserting my rights to apply for a religious exemption from the DOE mandate of the Covid 19 vaccination. Title VII of the Civil Rights Act of 1964 that prohibits employment discrimination based on race, color, sex religion and national origin. I am asserting my rights under this law to request religious exemption from the Covid -19 vaccination mandate directive from the Department of Education. I am adhering to my rights under the law which are protected by the EEOC - Title VII of the Civil Rights Act of 1964. I am within my rights to do so, and I am requesting this exemption as of August 31, 2021.

I hold sincere and genuine religious beliefs that forbid us from immunization. My connection to my God is scared and holy. It is my personal conviction to uphold what my God has taught me. I worship in pray daily. I have a personal connection with my God and his message to me. My connection with God is my most personal and cherished above all things in my life. I lead my life by teachings and interpretations from my God, that connect to me personally. Along my journey through life, I came across many obstacles, it was my God that saw me through and stood by me unconditionally. Reminding me my conviction and dedication to my faith would always guide me and see me through. I have examined my relationship with God throughout my life and have kept my faith strong. I deem this relationship my most private, scared, and holy more than any other in my life. I am devoted to my God using my personal translation of the word of God to guide me down the path of life, to make decisions and to follow his teaching to be the best version of myself that I can be.

Throughout several years of formal studies attending a religious institution, I have learned to interpret the Bible and to apply these interpretations to my daily life. This is one of those times were my religious values, morals and convictions guide me to decide that the Covid -19 vaccine, is against my beliefs. I believe that innocent life is sacred to God. I believe that life is scared from the moment of conception to birth, to natural death. That all human beings are image bearers of God and the concept that affirms the unique value of all human life.

(Jeremiah1:5)

"Before I formed you in the womb I knew you, and before you were born I set you apart and appointed you as a prophet to the nations." "Before I formed you in the womb I knew you, before you were born I set you apart; I appointed you as a prophet to the nations." "I knew you before I formed you in your mother's womb.

Accordingly, I believe, pursuant to my Christian faith, that my body is a temple of the Holy Spirit. It is a God-given responsibility and requirement for me to protect the physical integrity of my Body against unclean food and injections.

"1 Corinthians 3:16-17, 6:19 (KJV).

Know ye not that ye are the temple of God, and that the Spirit of God dwelleth in you? If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are…What? Know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own?" 1 Corinthians 3:16-17, 6:19 (KJV).

The broad prohibition against consuming anything that might "defile" the body, and hence the conscience, is stated again in 1 Corinthians 8:7:

"Howbeit there is not in every man that knowledge: for some with conscience of the idol unto this hour eat it as a thing offered unto an idol; and their conscience being weak is defiled."

Again in 2 Corinthians 7:1, there is this admonition against defiling the flesh and the spirit:

"Having therefore these promises, dearly beloved, let us cleanse ourselves from all filthiness of the flesh and spirit, perfecting holiness in the fear of God."

More broadly, the New Testament requires of Christians that we, "Render to Caesar the things that are Caesar's, and to God the things that are God's." (Mark 12:17). When it comes to consuming things into our own bodies, as opposed to make payments to government, compliance with God's law is required.

The mandated vaccine, with its numerous additives and it's mechanism for altering my body, is the equivalent of a prohibited "unclean food" that causes harm to my conscience. Vaccines to me are unclean. I believe in and follow God and the principles laid out in His Word and I have a deeply held belief that vaccines violate them.

It is my belief to keep my body whole and scared.  Many substances in vaccines have contained human and animal tissue. The Bible warns of sinners who mix human and sacrificed animal blood. In Luke 13: 1-5, it says, "There were present at that season some that told him of the Galileans, whose blood Pilate had mingled with their sacrifices. And Jesus answering said unto them, Suppose ye that these Galileans were sinners above all the Galileans, because they suffered such things?"

It is against my religious convictions to commit sin. Sin is anything that violates the will of God as set forth in the Bible. In order for me to keep my heart pure and cleansed, committing a sin would taint my devote personal relationship with God. To receive direction from God in my life I choose not to sin. I pray for wisdom and guidance daily. I have prayed to my God for direction regarding the Covid 19 shot and my God has moved on my heart and conscience that I must not accept the Covid 19 shot. It would go against all I believe in; I would be betraying my faith in my Savior and the ultimate healing and power in the belief that my God heals all diseases. If I go against this deep connection I have with my God, I would be sinning and jeopardizing my relationship with God and violating my conscience.

Therefore, I submit this request for a religious exemption from the Covid-19 vaccine mandate so that my conscience is clean, and I can remain before my God with a pure soul.

I would like to request that this request remain100% confidential and to be used for the purpose intended. The content of this letter is of extremely personal nature. I am requesting that it is not shared with other entities outside of those who would be responsible for using this information in the decision making relevant to this request.

Sincerely,

Jean Jean

# THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H. SCHER*

JONATHAN L. SCHER*ˣ

———

AUSTIN R. GRAFF*

———

TEL: 516-746-5040

———

FAX: 516-746-5043

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

* Also Admitted in District of Columbia
ˣ Also Admitted in New Jersey

ROBERT S. NAYBERG
(1959-2012)

March 29, 2023

**BY ECF**
Hon. Carol Bagley Amon, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     Masciarelli v. New York City Department of Education
        E.D.N.Y. Docket No. 22-cv-07553 (CBA)(SJB)

Dear Judge Amon:

This law firm represents the Plaintiff in the above-referenced Action. This letter shall serve as the Plaintiff's opposition to the Defendant's request for a pre-motion conference to discuss a Motion to Dismiss.

The Plaintiff was a former teacher employed by the Defendant. The Plaintiff was terminated from her employment when she refused to take the COVID vaccine because she has a long-held religious objection to the vaccine.

The Plaintiff sought a religious exemption/accommodation, which was rejected, just like most of her former colleagues, without any offer from the Defendant of a reasonable accommodation. Instead, the Defendant denied the Plaintiff any religious accommodation based upon an "undue hardship", which the Defendant said was "the need for a safe environment for in-person learning." Docket Entry No. 1-8.

The Defendant never offered any reasonable accommodation to the Plaintiff that would both satisfy the Plaintiff's sincere religious beliefs and the Defendant's concern for "a safe environment for in-person learning."

In *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986), the Court held:

> We find no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation. By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation. The employer violates the statute unless it "demonstrates that [it] is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's

THE SCHER LAW FIRM, LLP

business." 42 U. S. C. § 2000e(j). Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship. As *Hardison* illustrates, the extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship. Once the Court of Appeals assumed that the school board had offered to Philbrook a reasonable alternative, it erred by requiring the Board to nonetheless demonstrate the hardship of Philbrook's alternatives.

In this case, the Defendant did not offer any accommodation to the Plaintiff for her long-held religious beliefs. The failure to offer any accommodation places the Defendant's alleged undue hardship at issue. Since the Defendant's explanation that the undue hardship was "the need for a safe environment for in-person learning" the alternative of testing (which system existed before the COVID vaccine mandate was implemented) could have been a reasonable accommodation and could have allowed the Plaintiff to have a reasonable accommodation and would have maintained a safe environment for in-person learning. Docket Entry No. 1-8. But the Defendant did not offer that option to the Plaintiff. Accordingly, any Motion to Dismiss will likely be denied.

The Defendant also does not address the fact that in testimony in the *New Yorkers for Religious Liberty, Inc., et al. v. The City of New York, et al.*, Eastern District of New York, Docket Number 2022-cv-00752, the City's witness testified that out of roughly 3,200 accommodation requests that were processed by the Citywide Panel that reviewed accommodation requests to the City, roughly 100 were granted, with 80 to 85 percent of the appeals being religious reasonable accommodation requests. Deposition of Eric Eichenholtz, dated May 24, 2022, at page 32, line 8 through page 33, line 5.

This evidence reveals that despite having a mechanism for reasonable accommodation requests, the Defendant failed to accommodate religious beliefs and the excuse of an undue hardship was merely pretext for discrimination.

As a result, any Motion to Dismiss by the Defendant will fail because the Plaintiff has stated a claim for religious discrimination based upon the Defendant's failure to provide any reasonable accommodation and its undue hardship explanation is merely a pretext for discrimination against the Plaintiff's long-held religious beliefs.

Finally, the Defendant's citation to several cases, including *Kane v. DeBlasio*, 19 F.4th 152 (2d Cir. 2021) pre-date the Supreme Court's decision in *Kennedy v. Bremerton Sch. Dist.*, __ U.S. __, 142 S Ct 2407, 2421 (2022), in which the Court held

Under this Court's precedents, a plaintiff bears certain burdens to demonstrate an infringement of his rights under the Free Exercise

THE SCHER LAW FIRM, LLP

Hon. Carol Bagley Amon, U.S.D.J.
United States District Court, Eastern District of New York
March 29, 2023
Page 3 of 3

and Free Speech Clauses. If the plaintiff carries these burdens, the focus then shifts to the defendant to show that its actions were nonetheless justified and tailored consistent with the demands of our case law.

...The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. Amdt. 1. This Court has held the Clause applicable to the States under the terms of the Fourteenth Amendment. *Cantwell* v. *Connecticut*, 310 U. S. 296, 303, 60 S. Ct. 900, 84 L. Ed. 1213 (1940). The Clause protects not only the right to harbor religious beliefs inwardly and secretly. It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through "the performance of (or abstention from) physical acts." *Employment Div., Dept. of Human Resources of Ore.* v. *Smith*, 494 U. S. 872, 877, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990).

The Defendant violated the Plaintiff's constitutional rights under the Free Exercise clause when it required the Plaintiff to take the COVID-19 vaccine or lose her job, when the Plaintiff's religious beliefs conflicted with the vaccine. The Free Exercise clause protects the Plaintiff from abstaining from taking the COVID-19 vaccine (a physical act) based upon her religious beliefs.

However, the *Kennedy* decision establishes that the Plaintiff's constitutional right under the Free Exercise clause was violated when the Defendant made the Plaintiff choose her religion or her job. When the Plaintiff chose her religion, which was her constitutional right, the Plaintiff was terminated because of it.

The Court should deny the Defendant's request to make a Motion to Dismiss.

********

The Plaintiff requests that if the Court grants permission for the Defendant to make a Motion to Dismiss, the Court permit discovery to proceed and the Initial Conference schedule, including the settlement conference to proceed while the Motion to Dismiss is pending.

Thank you for your courtesies.

Respectfully submitted,
THE SCHER LAW FIRM, LLP

Austin Graff

ARG:ms
cc:   Lauren A. Zaprzalka, Esq. (by ECF)

**From:** noreply@salesforce.com <noreply@salesforce.com> on behalf of NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
**Sent:** Monday, March 7, 2022 10:40 AM
**To:**
**Subject:** Reasonable Accommodation Appeal Determination


The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

The decision classification for your appeal is as follows: The employee has failed to establish a sincerely held religious belief that precludes vaccination. DOE has demonstrated that it would be an undue hardship to grant accommodation to the employee given the need for a safe environment for in-person learning

**For all employees other than DOE employees:** Pursuant to the City of New York's policy concerning the vaccine mandate, you now have **three business days** from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).

**For Department of Education (DOE) employees:** Pursuant to New York City Department of Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination. For further information and instructions, please see DOE Denial of Appeal Information.

Case 1:24-cv-02264-LDH-CHK Document 31 Filed 12/06/24 Page 36 of 72 PageID #: 226

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------ x

In the Matter of the Application of

ANDREW SCHIEFER,

                                Petitioner,

FOR A JUDGMENT PURSUANT TO ARTICLE 78

               -against-

THE BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK AND
COMMUNITY SCHOOL DISTRICT 79 OF THE BOARD OF
EDUCATION OF THE CITY OF NEW YORK, UNITED
FEDERATION OF TEACHERS,

                                Respondents.

------------------------------------------------------------------------ X

**AFFIRMATION OF
ERIC J. EICHENHOLTZ**

Index No. 155983/2022

         **ERIC J. EICHENHOLTZ**, an attorney admitted to practice before the Courts of

the State of New York, affirms, pursuant to the Civil Practice Law and Rules ("CPLR") and under

penalty of perjury, that the following is true and correct:

                1.      I am the Chief Assistant Corporation Counsel for Employment Policy and

Litigation within the New York City Office of the Corporation Counsel. I have held this position

since October, 4, 2021. In this capacity, I oversee the Law Department's Labor and Employment

Law, Affirmative Litigation, Worker's Compensation and E-Discovery Divisions. I also provide

legal advice and counsel to City agencies and officials in employment matters. Prior to October 4,

2021, I served as the Chief of the Labor and Employment Law Division within the Office of the

Corporation Counsel. As Chief of the Labor and Employment Law Division I oversaw all litigation

brought against the City arising out of the City's role as an employer.

Case 1:24-cv-02264-LDH-CHK    Document 31    Filed 12/06/24    Page 37 of 72 PageID #: 227

This Affirmation is based on my own personal knowledge, as well as the books and records of the City of New York, and statements made to me by other employees of the City of New York. I submit respectfully this Affirmation in order to provide the Court with information regarding the review of Andrew Schiefer's application for appeal of the denial of his requested religious accommodation.

**Background Information on the Citywide Panel**

2.      On October 20, 2021, Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH") Dave A. Chokshi, M.D., issued an order requiring all City employees to show proof of at least one dose of a vaccination against COVID-19 by 5:00 p.m. on October 29, 2021 (the "City Order").

3.      In response to the City Order, the City established additional procedures specific to requests for vaccination-related accommodations in an effort to address the anticipated increase in accommodation requests that would be made by City employees. These procedures specified that a reasonable accommodation was to be submitted by an employee to their agency's EEO Officer on or before October 27, 2021. Any employee who is or was denied a reasonable accommodation by their agency has the right to appeal that denial to the City of New York Reasonable Accommodation Appeals Panel ("Citywide Panel").

4.      The Citywide Panel was created specifically in response to the City Order to consider appeals filed by employees whose accommodation requests had been denied by their respective agency.

5.      The purpose of the Citywide Panel is to ensure that employees who are denied a reasonable accommodation can have their appeals heard and considered consistent with the standards established by the Americans with Disabilities Act ("ADA"), Title VII of the Civil

- 2 -

Case 1:24-cv-02264-LDH-CHK Document 31 Filed 12/06/24 Page 38 of 72 PageID #: 228

Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, and the New York City

Human Rights Law. The Citywide Panel evaluates appeals under the standards set by those laws

and consistent with the guidance issued by the U.S. Equal Employment Opportunity Commission

("EEOC") to assist employers in implementing COVID-19 related strategies compliant with Title

VII and the ADA. This EEOC guidance specifically addresses accommodation requests made in

response to an employer-issued vaccine mandate.

6. The Citywide Panel is comprised of representatives from the Office of the

Corporation Counsel ("Law Department"), the New York City Department of Citywide

Administrative Services ("DCAS"), the New York City Department of Health and Mental Hygiene

("DOHMH") and the City Commission on Human Rights ("CCHR"). The composition of the

Citywide Panel was specifically designed to utilize the extensive subject matter expertise and

knowledge-base of individuals employed at these City agencies with respect to medical and

religious accommodation requests.

7. Furthermore, in order to tailor the Citywide Panel to best evaluate

accommodation requests, the composition of the Citywide Panel that considers a particular request

changes depending on the nature of the request. When the appeal concerns a request for a medical

accommodation, the Law Department, DCAS and DOHMH panel members consider the appeal.

If the appeal concerns a request for an accommodation based on a religious need, the Law

Department, DCAS and CCHR consider the appeal.

8. Each case is reviewed by three Panel members (one Panel member from

each applicable agency). As detailed below, following a thorough review of the appeal, each Panel

member exercises their agency's vote on the Citywide Appeal for that particular appeal. Each

agency may vote to affirm the denial of the accommodation or to reverse the agency decision and

Case 1:24-cv-02264-LDH-CHK   Document 31   Filed 12/06/24   Page 39 of 72 PageID #: 229

grant the accommodation. When there is disagreement amongst the three agencies concerning the outcome, the majority rules.

9.      Each agency separately reviews each request, although the Panel members can confer if they deem it necessary. Once all three agencies have voted, either myself or the General Counsel of DCAS, Sanford Cohen, will perform a final review of the case for quality assurance purposes and finalize the case. Once the case is finalized, the agency and employee are notified of the appeals panel's decision.

10.     Prior to reaching the appellate level, with respect to agency-level denials, all City employees who are denied a vaccine mandate accommodation by their agency are provided with written information on the appeals process, including a link to the City's online appeals request portal: www.nyc.gov/vaxappeal. An employee may submit an appeal via the online review request portal, which will automatically notify their agency EEO Officer of the appeal. Upon notification of the appeal, the agency's EEO Office will upload all records concerning the agency's denial of the reasonable accommodation request within one business day.

11.     Once the Citywide Panel is in receipt of an appeal, it is reviewed to determine whether supplemental information is necessary from either the agency or the employee in order to make a determination on the appeal. If such information is necessary, the Panel makes that request to the agency, the employee or both.

12.     The applicable panel members then review all the materials provided by the agency and the employee. In so reviewing, the Panel utilizes the below-described standards which comport with city, state and federal law.

13.     The Citywide Panel considers whether the requested religious accommodation presents an undue hardship on City operations. EEOC guidance provides that

- 4 -

Case 1:24-cv-02264-LDH-CHK    Document 31    Filed 12/06/24    Page 40 of 72 PageID #: 230

requiring an employer to bear more than a "de minimis," or a minimal, cost to accommodate an employee's religious belief is an undue hardship.

14.     It is with these guiding principles in mind that the Citywide Panel considers each and every appeal put before it.  Once the panel members have had sufficient time to review all materials provided, each agency votes as to whether to affirm the denial or grant the requested accommodation.

15.     Prior to voting on an appeal, any Citywide Panel member may request that the request be remanded back to the agency. This request is not subject to a vote. Any request by a Panel member for a remand results in a request being sent to the agency for further review or continued cooperative dialogue at the agency level. A Panel member may remand back to the agency in advance of a vote for a multitude of reasons, including because: (1) information is missing from the record on appeal; (2) the agency appeared to have overlooked information that had been previously submitted; (3) the employee raised a new matter for the first time on appeal that merits agency review; or (4) the Panel member believes additional cooperative dialogue between the agency and employee is needed to better understand the employee's request. Again, these remands are designed to ensure that the employee's request for an accommodation is accorded all reasoned consideration and attention under the circumstances.

16.     The above-described process is uniform for all City agencies and employees.

17.     With respect to DOE employees, any DOE employee who submitted a request for a religious accommodation to DOE and had that request denied, was afforded the opportunity to appeal that denial before a neutral arbitrator.  In the event the arbitrator affirmed the denial, the DOE employee was subsequently given the opportunity to submit an additional

Case 1:24-cv-02264-LDH-CHK    Document 31    Filed 12/06/24    Page 41 of 72 PageID #: 231

appeal to the Citywide Panel. Once an appeal is filed with the Citywide Panel, the process applies described in Paragraphs 5 through 16 above. The Citywide Panel does not accept appeals of denials of medical accommodations from DOE employees.

### Petitioner's Appeal to the Citywide Panel

18.     By letter dated August 1, 2021, Petitioner requested a religious exemption which was denied by the DOE. The request was denied by the DOE because the accommodation would impose an undue hardship on the DOE and its operations.

19.     On or about September 19, 2021, Petitioner appealed via the collective bargaining agreement process involving the DOE and Petitioner's Union, the United Federation of Teachers. This appeal was denied by an arbitrator on September 24, 2021.

20.     Petitioner next appealed the denial of his accommodation request to the Citywide Panel. The Citywide Panel received a letter dated November 22, 2021 from Coyle Law Group LLP regarding Petitioner's appeal.

21.     The Citywide Panel requested additional information regarding Petitioner's appeal. The request for additional information included the following:

1. Whether you have previously taken any vaccinations.

2. If you have stated that you have a personal religious aversion to foreign or other impermissible substances entering your body, please describe this with more clarity, including describing any other commonly used medicines, food/drink and other substances you consider foreign/impermissible or that violate your religious belief.

3. If you have stated that you cannot take the vaccine because of an objection to using derivative fetal cells in the development of a vaccine, please provide more information about your stated objection and whether there are other medications or vaccinations that you do not take because of this objection.

4.  Any additional occasions you have acted in accordance with the cited belief outside the context of a COVID-19 vaccination, to the extent not previously described in the documentation already submitted.

22.  Petitioner provided the additional information which focused on Petitioner's religious beliefs regarding vaccines. Petitioner wrote that he has not previously taken any vaccinations, does not consume alcohol and does not take over-the-counter medications. Additionally, Petitioner's answer to the fourth question was "not applicable."

23.  DOE sent a position statement in support of its denial of Petitioner's accommodation request. This position statement included reasoning as to why granting the accommodation request would be an undue hardship. The reasons provided by the DOE as to why granting the request would be an undue hardship include that Petitioner would not be able to perform the essential functions of the position, mainly serving students attending school in-person. Additionally, over 3,300 DOE staff requested religious exemptions and DOE lacks flexibility to transfer existing DOE staff to fill gaps created by DOE employees granted exemptions due to state law and applicable collective bargaining agreements. Granting an exemption would require the DOE to bear significant costs and operational difficulties including having to pay additional employees to perform the essential functions of the exempted employee's position. DOE stated the undue hardship will only grow with each exemption granted.

24.  After a review of all the documentation provided by both Petitioner and the DOE, including Petitioner's appeal and supplemental response to the Panel's question as well as DOE's position statement, all three members of the Citywide Panel voted to affirm the denial of the reasonable accommodation.

25.     The Panel voted unanimously to affirm the denial of the reasonable accommodation for substantially the same reasons as indicated in the DOE's position statement.

26.     Thus, on July 27, 2022, the Citywide Panel denied Petitioner's appeal and affirmed the DOE's denial of Petitioner's reasonable accommodation request because granting the accommodation would be an undue hardship given the need for a safe environment for in-person learning.

Dated:      New York, New York
            September 22, 2022

                                        _____
                                        ERIC J. EICHENHOLTZ

# GIBSON LAW FIRM, PLLC

SUJATA S. GIBSON, ESQ.
120 E Buffalo St., Suite 2
Ithaca, New York 14850

March 25, 2024

**BY CM-ECF**
Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for Second Circuit
40 Foley Square
New York, NY 20007

      RE:  *New Yorkers for Religious Liberty v. The City of New York*
            Case No. 22-1801

Dear Ms. O'Hagan Wolfe:

Appellants write pursuant to Rule 28(j) to submit a decision and order in Appellant Margaret Chu's ("Ms. Chu's") unemployment case which impacts this appeal. *See attached, Matter of Margaret Chu v. City School District of New York,* Appeal Bd. 630133A. In *Matter of Chu*, the Board held that Ms. Chu "has established that her genuine and sincere religious beliefs conflicted with [the vaccine mandate]." Finding that strict scrutiny applies, the Board rescinded its prior denial and awarded Ms. Chu benefits. *Id.* at 2-3.

The decision impacts this appeal in three ways.

First, the decision supports Appellants' contention that their free exercise challenges are subject to strict scrutiny. Because state and local law provide a mechanism for discretionary, individualized exemption in cases of religious infringement, the mandate is not generally applicable. In *Matter of Chu*, the Board agreed that Ms. Chu's denial of benefits resulting from the same mandate should also be strictly scrutinized.

Second, in *Matter of Chu*, the Board heard testimony and affirmed that Ms. Chu's opposition to vaccination is clearly religious in nature and

TELEPHONE: (607) 327-4125            EMAIL: SUJATA@GIBSONFIRM.LAW

sincere, which further highlights the error in the district court's dismissal of her claims on the pleadings. This factual finding also supports Appellants' well-plead contention that the Citywide Panel applied unconstitutional criteria, denying applicants, like Ms. Chu, despite finding them sincere, because the Panel took the position that beliefs derived from religious conscience and prayer are somehow not "religious in nature" since they are gleaned from God rather than church instruction. [ECF Doc. 114 at 62]. As set forth more fully in Appellants' brief, entanglement with such inherently religious questions violates the most basic protections of both the Free Exercise and Establishment Clauses and independently triggers strict scrutiny. [*Id.*]

Last, Ms. Chu's two and a half year struggle to get unemployment benefits exemplifies why this case is not moot. Respondents continue to retaliate against the Appellants by blocking their efforts to get rehired or find employment elsewhere, and improperly contesting unemployment benefits. The consequences of the unlawful denials of accommodation continue to haunt Appellants and they require injunctive relief to stop the ongoing harm.

Respectfully Submitted,

/s/ *Sujata S. Gibson*
Co-counsel for the Plaintiffs

Cc:    All counsel via ECF



**GERALDINE A. REILLY**
CHAIRMAN
**MICHAEL T. GREASON**
**RANDALL T. DOUGLAS**
**JUNE F. O'NEILL**
**MARILYN P. O'MARA**
MEMBERS

STATE OF NEW YORK
**UNEMPLOYMENT INSURANCE APPEAL BOARD**
PO Box 15126
Albany NY 12212-5126
(518) 402-0210
FAX:(518) 402-6208

**DECISION OF THE BOARD**
**DECISIÓN DE LA JUNTA**

**LEIGHANN BROWN**
EXECUTIVE DIRECTOR
**TRACIE L. COVEY**
CHIEF ADMINISTRATIVE LAW JUDGE
**CHRISTOPHER M. TATE**
**JUSTIN DENTON**
**MARK SOKOLOWSKI**
PRINCIPAL ADMINISTRATIVE LAW JUDGE

**Mailed and Filed: February 8, 2024**

IN THE MATTER OF:

**Appeal Board No. 630133 A**

**MARGARET CHU**

**SUJATA S GIBSON**
**GIBSON LAW FIRM PLLC**
**120 E BUFFALO ST**
**SUITE 2**
**ITHACA NY 14850**

**THE CITY SCHOOL DISTRICT**
**OF THE CITY OF NEW YORK**
**65 COURT ST  RM 505**
**BROOKLYN NY 11201-0000**

**DAWN FOSHEE-ASST ATTY GENERAL**
**NYS ATTORNEY GENERAL'S OFFICE**
**28 LIBERTY ST 15TH FL**
**NEW YORK NY 10271**

**EQUIFAX**
**3455 MILL RUN DRIVE**
**HILLIARD OH 43026-0000**

**A.S.O. - Appeals Section**
**Department of Labor Office:  801**

**A.L.J. Case No. 022-02205**

---

**PLEASE TAKE NOTICE** that the commissioner, or any other party affected by this decision who appeared before the Appeal Board, may appeal questions of law involved in such decision to the Appellate Division of the Supreme Court, Third Department, by written notice mailed to the Unemployment Insurance Appeal Board, PO Box 15126, Albany, New York 12212-5126 within **THIRTY DAYS** from the date this decision was mailed.

**POR FAVOR TOME NOTA** que el comisionado o cualquier otra parte afectada por esta decision que haya comparecido ante la Junta de Apelaciones puede apelar aspectos legales de dicha decision a Appellate Division of the Supreme Court, Third Department, enviando un aviso escrito a Unemployment Insurance Appeal Board, PO Box 15126, Albany, New York 12212-5126 dentro de los **TREINTA DIAS** a partir de la fecha en que esta decision fue enviada por correo.

---

**DOCUMENTO IMPORTANTE. PUEDE OBTENER UNA TRADUCCIÓN DEL MISMO LLAMANDO**
**AL 1-888-209-8124 (FUERA DEL ESTADO DE NUEVA YORK 1-877-358-5306)**

PRESENT: RANDALL T. DOUGLAS, MEMBER

The Department of Labor issued the initial determinations disqualifying the claimant from receiving benefits, effective October 2, 2021, on the basis that the claimant voluntarily separated from employment without good cause; and in the alternative disqualifying the claimant from receiving benefits, effective October 2, 2021, on the basis that the claimant lost employment through misconduct in connection with that employment. The claimant requested a hearing.

The Administrative Law Judge held a telephone conference hearing at which all parties were accorded a full opportunity to be heard and at which testimony was taken. There were appearances by the claimant and on behalf of the employer. By decision filed March 2, 2022 (A.L.J. Case No. 022-02205), the Administrative Law Judge sustained the initial determination disqualifying the claimant on the basis that she voluntarily

separated from employment without good cause, and overruled the initial determination of misconduct.

The claimant appealed the Judge's decision to the Appeal Board, insofar as it sustained the initial determination disqualifying the claimant from receiving benefits, effective October 2, 2021, on the basis that the claimant voluntarily separated from employment without good cause. By decision filed July 11, 2022 (Appeal Board No. 622025), the Appeal Board affirmed the March 2, 2022 decision, insofar as it was appealed.

The Appeal Board, on its motion pursuant to Labor Law § 534, has reopened and reconsidered Appeal Board No. 622025, filed July 11, 2022.

By order filed August 28, 2023, the Board remanded the case to the Hearing Section for a hearing. The Administrative Law Judge held a telephone conference hearing at which all parties were accorded a full opportunity to be heard and at which testimony was taken. There were appearances on behalf of the claimant and the Commissioner of Labor.

Based on the record and testimony in this case, the Board makes the following

FINDINGS OF FACT: The claimant was employed by a municipal school district as a remote teacher for approximately one year until October 1, 2021. On September 2, 2021, the employer notified the claimant that she was required to receive the COVID-19 vaccination by September 2 or complete a medical or religious exemption request. The employer also informed her that she would be placed on leave without pay if she did not receive the vaccine.

The claimant is a practicing Roman Catholic and regular attends Mass. One of the Church's tenants is to not act contrary to one conscience, especially in religious matters. As an adult, the claimant has not taken any medications or vaccines and has not had any surgeries. She would not take the COVID-19 vaccine if it were a matter of life or death.

The claimant completed and submitted a religious exemption request. Her request stated that abortion was morally wrong and violates the Sixth Commandment prohibiting killing, the COVID-19 vaccines contained fetal cells derived from abortions, and as such, "[i]t violated [her] Christian faith to be injected with substances that were the product of such unethical and morally repugnant process that included the use of innocent human life."

The employer denied the claimant's religious exemption request. The claimant appealed the denial. The employer again denied the request. The claimant did not become vaccinated because it violated her religious beliefs. On October 15, 2021, the employer suspended the claimant because she did not comply with the vaccine mandate.

OPINION: The record establishes that the claimant's employment ended when she chose to be separated from employment rather than comply with the employer's mandate that she receive the COVID-19 vaccination.

The Supreme Court has held that infringement upon the free exercise of religion is subject to strict scrutiny and can only be justified when there is proof of a compelling state interest (See Sherbert v. Verner, 374 U.S. 398 [1963]; Thomas v. Rev. Bd. of Ind. Emp. Sec. Div., 450 U.S. 707 [1981]; and Hobbie v. Unemployment Appeals Comm., 480 U.S. 136 [1987]). In each of those cases, the Court found that denying unemployment benefits because a claimant engaged in conduct rooted in a sincerely held religious belief violates the Free Exercise Clause of the First Amendment.

In the case at hand, the claimant has established that her genuine and sincere religious beliefs conflicted with the conduct mandated by the employer. The mandate forced the claimant to choose between her genuine belief that receiving the vaccination was a violation of her religious convictions and continuing her employment. The claimant's decision to follow her religious convictions resulted in her separation from employment. Under these circumstances, she has established a compelling reason for her failure to comply

AB 2 (10/06)

with the mandate. Accordingly, we find that she has established good cause for her voluntary separation from employment. Therefore, we find that the claimant was separated from employment under non-disqualifying circumstances.

We note that the claimant's decision to refrain from taking medication, vaccines and surgeries is not inconsistent with her reason for not receiving the COVID-19 vaccine. Further, the employer did not appear at the remand hearing to rebut the claimant's testimony and evidence.

We distinguish *Matter of Parks*, 219 AD3d 1099 [3rd Dept 2023], because in that case, the claimant refused to comply with the mandate for personal reasons. Here, the claimant has demonstrated that she has a genuine and sincerely held religious belief that compelled her noncompliance with the mandate.

DECISION: The decision of the Appeal Board is rescinded.

The decision of the Administrative Law Judge, insofar as appealed from, is reversed.

The initial determination, disqualifying the claimant from receiving benefits, effective October 2, 2021, on the basis that the claimant voluntarily separated from employment without good cause, is overruled.

The claimant is allowed benefits with respect to the issues decided herein.

RANDALL T. DOUGLAS, MEMBER

MJK:33

AB 2 (10/06)



**Department of Education**

October 17, 2022

POSITION:  Teacher
SCHOOL:  19K504
EID #:
NETWORK:  Brooklyn North

Dear Mr.          :

Due to NYC Department of Education administrative office space changes, beginning Tuesday, October 18, 2022, you are hereby temporarily directed to report remotely while administratively reassigned.

Please note that this temporary assignment is subject to change at any time. As you must be able report in-person when directed by this office, it is required that you remain in the NYC area on scheduled days of work.  Any specific work assigned to you will be provided to you via your DOE email.

To document your attendance, you are required each work day to email both your payroll secretary **and** OPIReassignedStaff@schools.nyc.gov from your DOE email account that you are beginning your work day and ending your work day. You must submit each start/end day email within 15-minutes of the start and end of your typical work shift, unless instructed otherwise by the Reassigned Staffing Team. Emails submitted outside the +/- 15-minute window will not be accepted, and you will be marked absent.

Any questions should be directed to OPIReassignedStaff@schools.nyc.gov.

Thank you for your prompt attention to this matter.

Sincerely,

Katherine G. Rodi
Executive Director, Office of Employee Relations

KGR/lv

c:
      Principal
      Reassigned Staffing Team
      Superintendent

Signature                                    Date   10/17/22

OFFICE OF PERSONNEL INVESTIGATION
Reassigned Staffing Team, 100 Gold Street, 4th Floor, NY, NY 10038
Phone (212) 374-0308       Fax (212) 374-1252

# TEACHER VACANCY CIRCULAR NO 4 CENTRAL REMOTE TEACHERS iZONE 2022 2023

<u>NYC Department of Education</u>
3.9out of 5
Remote
Full-time

 

## Location

Remote

 

## Full job description

## TEACHER VACANCY CIRCULAR NO 4 CENTRAL REMOTE TEACHERS iZONE 2022 2023

Posted Date: May 6, 2022 Deadline: Jun 3, 2022
New York United States
VIRTUAL

## Job Details

**(SUBJECT TO BUDGET AVAILABILITY)**

**POSITION:**

## Teacher - Central

Remote Instruction Teachers

**License/Eligibility Requirements:**

New York City licensed Social Studies, Science, English, Foreign Language, Math and Health tenured teachers in High School Grade Levels.

**Office:**

iZone

**Location:**

82-01 Rockaway Blvd, Ozone Park, NY 11416

Or other DOE offices

**Remote Teachers**

**Position Summary:**

Virtual Learning Classrooms aim to partner teachers from around the city with students to provide them with increased access to courses not available in their home schools, including, but not limited to Electives, AP Courses, and Foreign Language courses. This posting is for teachers interested in teaching in this full time program from September 2022 - June 2023. Remote instruction teachers will deliver instruction to and communicate with high school students in other locations using internet and required technological platforms. Please note that while students will not be in the same location as the teacher, this is an in person teaching position.

Remote Teachers are licensed teachers of high school grade levels who teach students virtually. Remote teachers will teach students in the following subject areas: Advanced Placement Subjects (Including but not limited to, AP Psychology, AP Spanish, AP US History, AP World History, AP Government, AP Calculus AB/BC, AP Macroeconomics, AP Statistics, AP Computer Science Principles and A, AP Environmental Science, AP English Language and Literature, and AP Seminar), electives (Including but not limited to, Forensics, Health, Media Literacy, Financial Literacy, science electives, Computer Science and Business) and Foreign Languages (Including but not limited to, Spanish, Chinese and French). Other subjects may be added. Students may be enrolled from multiple schools simultaneously, but total class size will not exceed contractual limits. Remote Teachers will be expected to participate in 10 sessions of professional learning workshops including an online course leading to a Learning Management System certification to occur during July and/or August prior to commencement of position with remaining

on-going professional learning during the year and will be paid at the per session rate for work beyond the contractual workday/work year. Remote teachers will perform required duties (including corresponding with home school staff, planning for remote instruction and assessment, communication and conferencing with students and/or parents). Duties and responsibilities are intended to emulate traditional teaching paradigms and create an equitable learning experience.

**Reports to:**

DIIT iZone Supervisor

**QUALIFICATIONS:**

- Minimum of four (4) years of teaching experience as a regularly appointed teacher. Knowledge of the common core standards as it relates to course.

- Extensive knowledge of the New York State and City Standards, meets Advanced Placement requirements (as appropriate) and is licensed in subject matter.

- Demonstrated expertise in an online learning environment designing and implementing standards-based instruction that specifies clear learning objectives, includes engaging activities and authentic assessments to measure mastery.

- Willingness to promote online dialogue to deepen the learning experience.

- Demonstrated ability with written and oral communications emphasis placed on the delivery of digital presentations.

- Demonstrated ability to use online learning, communication and other edtech tools as appropriate.

- Can differentiate instruction for individuals or groups of students based on instructional data and analysis as well as student characteristics.

- Can sustain and document flexible teaching schedules, which account for asynchronous and synchronous activities that are student-centered and maintain high standards for student engagement and success.

- Selected candidates will be asked to facilitate a demonstration lesson or planning activity to demonstrate aforementioned qualifications.

**PREFERRED SKILLS:**

- Demonstrated skill in team building, group dynamics, and facilitating collaborative learning.
- Proven history of being a self-starter who works well without constant supervision.

**DUTIES AND RESPONSIBILITIES:**

- Demonstrate competency in using data from assessments and other data sources to modify content and guide student learning.

- Modify engaging content and appropriate assessments in an online environment.

- Provide quality instruction to students using asynchronous and synchronous teaching methods (I.e. asynchronous = discussion forums, group work, written and digital assignments, posted content. Synchronous = online classrooms, webinars, chat rooms).

- Employ student-centered instructional strategies that are connected to real-world applications to engage students in learning.

- Facilitate and monitor online instruction groups/discussions to promote learning through higher-order thinking and group interaction.

- Provide a variety of ongoing and frequent teacher-student, teacher-teacher, and teacher-administrator interaction with participating schools.

- Provide prompt feedback, communicate high expectations, and teach to diverse talents and learning styles.

- Online communication between students and teachers is a significant component of this program to mimic in person communication. Therefore, teachers are expected to respond to student emails and grade assignments within 2 workdays, as well as monitor and respond to discussion postings daily during the school week.

- Regularly share with home school(s) student data including but not limited to grades and attendance. This includes the use of school selected platforms and systems.

- Incorporate and comply with FERPA, AUP and communicate privacy guidelines to students.

- Select and use a variety of online tools for communication, productivity, collaboration, data and performance analysis, presentation, research, and online content delivery as appropriate to the content area and student needs.

- Use communication technologies in a variety of mediums and contexts for teaching and learning.

- Apply technical troubleshooting skills (downloading plug-ins, uploading assignments, etc.)

- Participate in all professional development and peer mentoring exercises throughout the duration of service.

- Develop key relationships in order to work closely with home school staff, students and parents of participating schools, guidance counselors and central iZone staff.

- Participate in activities to identify best practices, address challenges and assess efficacy.

**WORKING CONDITIONS & LOCATION:**

- The maximum class size of a full virtual course not exceed UFT contractual limits.

- Teachers shall not be assigned more than twenty five (25) teaching periods per week and may teach up to five (5) remote classes; however, the maximum number of distinct courses shall not exceed three (3).

- Teachers must confer with students synchronously during programmed periods each week, as well as be available for asynchronous teaching approaches including but not limited to office hours, individual and small group conferencing and providing direction for independent student

work. Facilitate learning through supplied curriculum that teachers may supplement.

- Teachers are expected to teach in person from 82-01 Rockaway Blvd, Ozone Park, NY 11416 or other DOE office.

**Hours:**

As per Article Six of the Collective Bargaining Agreement

**Salary:**

As per UFT Contract

**Work Year:**

As per Article Six of the Collective Bargaining Agreement

**APPLICATION INSTRUCTIONS:**

Please be sure application includes cover letter, resume and your 6-digit file number.

Please send application via email to the following email address: iLearnNYC@schools.nyc.gov with the Subject line: "Fulltime Remote Teacher application."

Applications will be accepted through:

# JUNE 3, 2022

# An Equal Opportunity Employer M/F/D

It is the policy of the Department of Education of the City of New York to provide equal employment opportunities without regard to actual or perceived race, color, religion, creed, ethnicity, national origin, alienage, citizenship status, age, marital status, partnership status, disability, sexual orientation, gender(sex), military status, unemployment status, caregiver status, consumer credit history, prior record of arrest or conviction(except as permitted by law), predisposing genetic characteristics, or status as a victim of domestic violence, sexual offenses and stalking, and to maintain an environment free of harassment on any of the above - noted grounds, including sexual

harassment or retaliation. For more information, please refer to the DOE Non -
Discrimination Policy.

Report job

 

Teacher jobs in Remote
Jobs at NYC Department of Education in Remote
Teacher salaries in Remote

NYS DEPARTMENT OF LABOR
PO BOX 15131
ALBANY NY 12212-5131

**NEW YORK STATE DEPARTMENT OF LABOR**
**NOTICE OF DETERMINATION TO CLAIMANT**

DATE MAILED: 2/24/2022

EMP: THE CITY SCHOOL DIST


CHRISTINE A OREILLY

PLEASE REFER TO THOSE ITEMS WHICH ARE SELECTED [X] BELOW AND READ THE BACK OF THIS FORM

1. [XX] NOTICE OF DETERMINATION

NO UNEMPLOYMENT INSURANCE WILL BE PAID TO YOU FOR THE PERIOD BEGIN-
NING 10/02/2021 UNTIL YOU HAVE SUBSEQUENTLY WORKED FOR AN EMPLOYER AND EARNED
AT LEAST 10 TIMES YOUR WEEKLY BENEFIT RATE. EMPLOYMENT AND EARNINGS FROM NON
COVERED, EXCLUDED OR SELF-EMPLOYMENT WILL NOT COUNT. YOUR WEEKLY BENEFIT RATE
IS $504.

**DETERMINATION**

YOU WERE DISCHARGED FOR MISCONDUCT IN CONNECTION WITH YOUR EMPLOYMENT WITH
THE ABOVE EMPLOYER. BECAUSE OF THIS DETERMINATION, YOU WILL NOT BE ABLE TO
USE YOUR WAGES FROM THIS EMPLOYER BEFORE 10/02/2021 TO COLLECT UNEMPLOYMENT
INSURANCE BENEFITS IN THE FUTURE.

**REASON**

YOU WERE DISCHARGED ON 10/18/21 BECAUSE YOU REFUSED TO GET THE COVID
19 VACCINATION AS REQUIRED BY YOUR EMPLOYER PER THE DECEMBER 2021 NYC VACCINE
MANDATE. YOUR EMPLOYER INFORMED YOU ON 9/23/21 THAT RECEIVING THIS
VACCINATION WAS REQUIRED TO CONTINUE YOUR EMPLOYMENT, AND MANDATORY
VACCINATIONS ARE PERMISSIBLE UNDER NYS LAW. YOU KNEW OR SHOULD HAVE KNOWN
THAT YOUR ACTIONS WOULD JEOPARDIZE YOUR JOB.

2. [ ] NOTICE OF DETERMINATION OF WILFUL MISREPRESENTATION

**REASON**

[ ] This notice supersedes the one sent you dated _____ which has been
cancelled.

**TO PROTECT YOUR RIGHTS, READ THE BACK OF THIS FORM**

By: LABOR SERVICES REPRESENTATIVE
FOR THE COMMISSIONER OF LABOR

LO 412 (4-99)

CS Scanned with CamScanner
Scanned with CamScanner

NYS DEPARTMENT OF LABOR
PO BOX 15131
ALBANY NY 12212-5131

**NEW YORK STATE DEPARTMENT OF LABOR**
**NOTICE OF DETERMINATION TO CLAIMANT**

DATE MAILED: 4/29/2022

EMP: THE CITY SCHOOL DIST

HERENDYRA PEREYRA

PLEASE REFER TO THOSE ITEMS WHICH ARE SELECTED [X] BELOW AND READ THE BACK OF THIS FORM

1. [XX] NOTICE OF DETERMINATION

NO UNEMPLOYMENT INSURANCE BENEFITS WILL BE PAID TO YOU FOR THE PERIOD BEGIN-
NING 10/02/2021 UNTIL YOU HAVE SUBSEQUENTLY WORKED FOR AN EMPLOYER AND EARNED
AT LEAST 10 TIMES YOUR WEEKLY BENEFIT RATE. EMPLOYMENT AND EARNINGS FROM NON
COVERED, EXCLUDED OR SELF-EMPLOYMENT WILL NOT COUNT. YOUR WEEKLY BENEFIT RATE
IS $504.

DETERMINATION

YOU WERE DISCHARGED FOR MISCONDUCT IN CONNECTION WITH YOUR EMPLOYMENT WITH
THE ABOVE EMPLOYER. BECAUSE OF THIS DETERMINATION, YOU WILL NOT BE ABLE TO
USE YOUR WAGES FROM THIS EMPLOYER BEFORE 10/02/2021 TO COLLECT UNEMPLOYMENT
REASON   INSURANCE BENEFITS IN THE FUTURE.

YOU WERE DISCHARGED ON 10/1/21 BECAUSE YOU REFUSED TO GET THE COVID
19 VACCINATION AS REQUIRED BY YOUR EMPLOYER. YOUR EMPLOYER INFORMED YOU
BEFORE YOUR DISCHARGE THAT RECEIVING THE COVID 19 VACCINATION HAS REQUIRED TO
CONTINUE YOUR EMPLOYMENT, AND MANDATORY COVID 19 VACCINATIONS ARE PERMISSIBLE
UNDER NYS LAW. YOU KNEW OR SHOULD HAVE KNOWN THAT YOUR ACTIONS WOULD
JEOPARDIZE YOUR JOB.

2. [ ] NOTICE OF DETERMINATION OF WILFUL M SREPRESENTATION

REASON

[ ] This notice supersedes the one sent you dated _____ which has been
cancelled.

TO PROTECT YOUR RIGHTS READ **THE BACK OF THIS FORM**      By: LABOR SERVICES REPRESENTATIVE
FOR THE COMMISSIONER OF LABOR

NYS DEPARTMENT OF LABOR
PO BOX 15131
ALBANY NY 12212-5131

NEW YORK STATE DEPARTMENT OF LABOR
NOTICE OF DETERMINATION TO CLAIMANT
ALTERNATE DETERMINATION

DATE MAILED: 4/21/2022

EMP: THE CITY SCHOOL DIST

TONIANN MIRAGLIA

PLEASE REFER TO THOSE ITEMS WHICH ARE SELECTED [X] BELOW AND READ THE BACK OF THIS FORM

1. [XX] NOTICE OF DETERMINATION

NO UNEMPLOYMENT INSURANCE BENEFITS WILL BE PAID TO YOU FOR THE PERIOD BEGIN-
NING 10/02/2021 UNTIL YOU HAVE SUBSEQUENTLY WORKED FOR AN EMPLOYER AND EARNED
AT LEAST 10 TIMES YOUR WEEKLY BENEFIT RATE. EMPLOYMENT AND EARNINGS FROM NON
COVERED, EXCLUDED OR SELF-EMPLOYMENT WILL NOT COUNT. YOUR WEEKLY BENEFIT RATE
IS $415.

DETERMINATION

YOU WERE DISCHARGED FOR MISCONDUCT IN CONNECTION WITH YOUR EMPLOYMENT WITH
THE ABOVE EMPLOYER. BECAUSE OF THIS DETERMINATION, YOU WILL NOT BE ABLE TO
USE YOUR WAGES FROM THIS EMPLOYER BEFORE 10/02/2021 TO COLLECT UNEMPLOYMENT
INSURANCE BENEFITS IN THE FUTURE.

REASON

YOU WERE DISCHARGED BECAUSE ON 10/01/21 YOU REFUSED TO GET THE COVID
19 VACCINATION AS REQUIRED BY YOUR EMPLOYER. YOUR EMPLOYER INFORMED YOU IN
SEPTEMBER 2021 THAT RECEIVING THE COVID 19 VACCINATION WAS REQUIRED TO
CONTINUE YOUR EMPLOYMENT, AND MANDATORY COVID 19 VACCINATIONS ARE PERMISSIBLE
UNDER NYS LAW. YOU KNEW OR SHOULD HAVE KNOWN THAT YOUR ACTIONS WOULD
JEOPARDIZE YOUR JOB.

2. [ ] NOTICE OF DETERMINATION OF WILFUL MISREPRESENTATION

REASON

[ ] This notice supersedes the one sent you dated _____ which has been
cancelled.

TO PROTECT YOUR RIGHTS, READ THE BACK OF THIS FORM

By: LABOR SERVICES REPRESENTATIVE
FOR THE COMMISSIONER OF LABOR

LO 412 (4-99)

Jean Jean
53 Periwnikle Road
Levittown, NY, 11756
August 31, 2021

516 343-4109

New York City Department of Education

To whom it may concern:

I am asserting my rights to apply for a religious exemption from the recent DOE mandate of the Covid 19 vaccination. Title VII of the Civil Rights Act of 1964 clearly prohibits employment discrimination based on race, color, sex, religion, and national origin. Again, I am asserting my rights under the law which are protected by the EEOC - Title VII of the Civil Rights Act of 1964. I am completely within my rights to do so, and I am requesting a religious exemption to become effective as of August 31, 2021 going forward to infinity.

I hold sincere and genuine religious beliefs that forbid us from immunization. My connection to my God is scared and holy. It is my personal conviction to uphold what my God has taught me. I worship in pray daily. I have a personal connection with my God and his message to me. My connection with God is my most personal and cherished above all things in my life. I lead my life by teachings and interpretations from my God, that connect to me personally. Along my journey through life, I came across many obstacles, it was my God that saw me through and stood by me unconditionally. Reminding me my conviction and dedication to my faith would always guide me and see me through. I have examined my relationship with God throughout my life and have kept my faith strong. I deem this relationship my most private, scared, and holy more than any other in my life. I am devoted to my God using my personal translation of the word of God to guide me down the path of life, to make decisions and to follow his teaching to be the best version of myself that I can be.

Throughout several years of formal studies attending a religious institution, I have learned to interpret the Bible and to apply these interpretations to my daily life. This is one of those times were my religious values, morals and convictions guide me to decide that the Covid -19 vaccine, is against my beliefs. I believe that innocent life is sacred to God. I believe that life is scared from the moment of conception to birth, to natural death. That all human beings are image bearers of God and the concept that affirms the unique value of all human life.

(Jeremiah1:5)

"Before I formed you in the womb I knew you, and before you were born I set you apart and appointed you as a prophet to the nations." "Before I formed you in the womb I knew you, before you were born I set you apart; I appointed you as a prophet to the nations." "I knew you before I formed you in your mother's womb.

Accordingly, I believe, pursuant to my Christian faith, that my body is a temple of the Holy Spirit. It is a God-given responsibility and requirement for me to protect the physical integrity of my Body against unclean food and injections.

"1 Corinthians 3:16-17, 6:19 (KJV).

Know ye not that ye are the temple of God, and that the Spirit of God dwelleth in you? If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are…What? Know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own?" 1 Corinthians 3:16-17, 6:19 (KJV).

The broad prohibition against consuming anything that might "defile" the body, and hence the conscience, is stated again in 1 Corinthians 8:7:

"Howbeit there is not in every man that knowledge: for some with conscience of the idol unto this hour eat it as a thing offered unto an idol; and their conscience being weak is defiled."

Again in 2 Corinthians 7:1, there is this admonition against defiling the flesh and the spirit:

"Having therefore these promises, dearly beloved, let us cleanse ourselves from all filthiness of the flesh and spirit, perfecting holiness in the fear of God."

More broadly, the New Testament requires of Christians that we, "Render to Caesar the things that are Caesar's, and to God the things that are God's." (Mark 12:17). When it comes to consuming things into our own bodies, as opposed to make payments to government, compliance with God's law is required.

The mandated vaccine, with its numerous additives and it's mechanism for altering my body, is the equivalent of a prohibited "unclean food" that causes harm to my conscience. Vaccines to me are unclean. I believe in and follow God and the principles laid out in His Word and I have a deeply held belief that vaccines violate them.

It is my belief to keep my body whole and scared. Many substances in vaccines have contained human and animal tissue. The Bible warns of sinners who mix human and sacrificed animal blood. In Luke 13: 1-5, it says, "There were present at that season some that told him of the Galileans, whose blood Pilate had mingled with their sacrifices. And Jesus answering said unto them, Suppose ye that these Galileans were sinners above all the Galileans, because they suffered such things?"

It is against my religious convictions to commit sin. Sin is anything that violates the will of God as set forth in the Bible. In order for me to keep my heart pure and cleansed, committing a sin would taint my devote personal relationship with God. To receive direction from God in my life I choose not to sin. I pray for wisdom and guidance daily. I have prayed to my God for direction regarding the Covid 19 shot and my God has moved on my heart and conscience that I must not accept the Covid 19 shot. It would go against all I believe in; I would be betraying my faith in my Savior and the ultimate healing and power in the belief that my God heals all diseases. If I go against this deep connection I have with my God, I would be sinning and jeopardizing my relationship with God and violating my conscience.

Therefore, I submit this request for a religious exemption from the Covid-19 vaccine mandate so that my conscience is clean, and I can remain before my God with a pure soul.

# Municipal Labor Committee

55 Water Street, 23rd Floor / New York, NY 10041 / (212) 815-1474

**CHAIRPERSON**
HARRY NESPOLI
Local 831, I.B.T. Uniformed
Sanitationmen's Association, AFL-CIO

**CO-CHAIRPERSON**
HENRY A. GARRIDO
District Council 37, AFSCME, AFL-CIO

**EXECUTIVE VICE-CHAIR**
MICHAEL MULGREW
United Federation of Teachers, AFL-CIO

**SECRETARY**
GREGORY FLOYD
Local 237
City Employees Union, I.B.T., AFL-CIO

**TREASURER**
MARK CANNIZZARO
Council of School Supervisors &
Administrators

**VICE CHAIRPERSONS**

ANDREW ANSBRO
Uniformed Firefighters Association

BENNY BOSCIO, JR.
Correction Officers' Benevolent Association

BARBARA BOWEN
Professional Staff Congress
City University of New York

JOSEPH COLANGELO
S.E.I.U. New York City Local 246

ROBERT CROGHAN
Organization of Staff Analysts

JUDITH A. CUTCHIN
New York State Nurses Association

PAUL DIGIACOMO
Detectives' Endowment Association

JAMES LEMONDA
Local 854, Uniformed Fire Officers
Association, AFL-CIO

MARTIN A. LYDON
District Council of Carpenters, AFL-CIO

WILLIAM M. LYNN
International Union of Operating Engineers
Local 30, AFL-CIO

JOSEPH MANNION
Sanitation Officers Association

GLORIA MIDDLETON
Local 1180, NYC Administrative
Employees, CWA, AFL-CIO

FRANK PROSCIA, M.D.
Doctors Council

PETER STEIN
Local 508, NYC Lifeguard Supervisors
AFSCME, AFL-CIO

LOUIS TURCO
Lieutenants Benevolent Association

MAF MISBAH UDDIN
Local 1407, NYC Accountants, Statisticians
& Actuaries, AFSCME, AFL-CIO

ANTHONY WELLS
Local 371, Social Service Employees,
AFSCME, AFL-CIO

**Executive Secretary**
ELLEN MEDWID

August 12, 2021

Hon. Dean Fulcihan
First Deputy Mayor
City of New York
City Hall
New York, New York 10007

Hon. Emma Wolfe
Chief of Staff and
  Deputy Mayor for Administration
City of New York
City Hall
New York, New York 10007

Hon. Renee Campion
Commissioner
New York City Office of Labor Relations
22 Cortlandt St.
New York, NY 10007

Dear All:

I write to express the severe concern—and great disappointment—of the MLC Union leaders on the lack of progress in arriving at a negotiated program to implement the City's vaccine/testing policy.

Several weeks ago, the City announced, without prior consultation or bargaining with the Unions, a policy that would require public employees either to be vaccinated or be tested weekly to avoid suspension without pay. Despite this unilateral action, with an eye towards the unfortunate advance of the Delta variant, the MLC's officers agreed to meet and discuss the proposed policy with you and numerous other key City officials on July 28th. The tenor of the discussion, we thought, was the City's desire to work collaboratively with the Unions to navigate a path towards achieving the objectives of the policy.

City leadership collectively asked the Union leaders to provide proposals and raise concerns, which we did. Primary among those concerns was the major logistical hurdle of providing timely and accessible testing to the likely 100,000 City workers who, despite the encouragement of many (including Union leaders), would opt out of vaccination for medical, religious and other reasons. This major dilemma, the Unions warned, would exist even if the policy was successful in encouraging a significant portion of the currently unvaccinated employees to vaccinate.

Page 2...Vaccine/Testing Policy

The MLC officers cautioned that logistics take time to work out, would necessarily be agency specific in places and that, without proper planning, the City would be in a position of having to order so many employees home without pay that there would be insufficient staffing to carry out the duties required to appropriately provide services to the residents of the City. We also raised fundamental questions, including, with regard to testing, whether it would be performed at the work site and on work time, and if not, where testing would be available and how workers would be compensated for complying with the mandated policy.

The discussion concluded on a hopeful note with the City agreeing to take back many of the comments, concerns and suggestions for consideration and to continue the discussions with the Unions. *That was two weeks ago.* While there have been sporadic discussions with some, MLC inquiries regarding these essential matters have essentially gone unanswered. This is unacceptable.

The MLC and its leaders have been firm and consistent that while the Unions support encouraging vaccination (and have made considerable efforts on their own to encourage their members to vaccinate), they will not abdicate their legal right and responsibility to protect the rights of workers to opt for either vaccination or testing, to be held harmless for both the time and cost of testing and vaccination, and to have a fair process for any form of discipline. Make no mistake, despite calling this a vaccination policy, the City's proposal creates a new criterion and process for discipline that would allow agencies to suspend workers without pay and without the typical forms of due process provided for under collective bargaining agreements and law.

Accordingly, we seek a prompt meeting to continue this vital discussion. In the meantime, no policy should be implemented before it is negotiated.

Sincerely,

*Harry Nespoli*

Harry Nespoli
Chair

cc:    Henry Garrido
       Co-Chair
       District Council 37

       Michael Mulgrew
       Executive Vice Chair
       United Federation of Teachers

       Gregory Floyd
       Secretary
       Local 237, City Employees Union

       Mark Cannizzaro
       Treasurer
       Council of School Supervisors & Administrators



Jean Jean <jeanejean71@gmail.com>

---

# Release of name
4 messages

---

**Jean Jean** <jeanejean71@gmail.com>                                    Tue, Jan 31, 2023 at 11:38 AM
To: Venekas Rita <rveneka@schools.nyc.gov>

I have been trying for two weeks to get the problem code lifted so I can work with the agency. Please let me know what else I can do ?

---

**Venekas Rita** <RVeneka@schools.nyc.gov>                               Thu, Feb 2, 2023 at 8:26 AM
To: Jean Jean <jeanejean71@gmail.com>

Good morning

I don't have access to the problem code/it is confidential information and is handled only by OPI. Due to a very high volume of inquiries, it will take longer than usual for OPI to respond to your email. Please do not send multiple emails. Your email will be addressed by OPI.

 Thank you for your cooperation

**Rita Venekas, PAA**
**Office of Related Services**
**Email: rveneka@schools.nyc.gov**

"It is during our darkest moments that we must focus to see the light"
Aristotle

---

**From:** Jean Jean <jeanejean71@gmail.com>
**Sent:** Tuesday, January 31, 2023 11:38 AM
**To:** Venekas Rita <RVeneka@schools.nyc.gov>
**Subject:** Release of name

[Quoted text hidden]

---

**Jean Jean** <jeanejean71@gmail.com>                                    Thu, Feb 2, 2023 at 8:31 AM
To: Venekas Rita <RVeneka@schools.nyc.gov>

Ok, thank you. It's just frustrating do they have a mailing address what does OPL a stand for or is it OPI
[Quoted text hidden]

---

**Venekas Rita** <RVeneka@schools.nyc.gov>                               Thu, Feb 2, 2023 at 9:56 AM
To: Jean Jean <jeanejean71@gmail.com>

OPI
Office of Personnel Investigations


**Rita Venekas, PAA**
**Office of Related Services**
**Email: rveneka@schools.nyc.gov**

"It is during our darkest moments that we must focus to see the light"

Aristotle

**From:** Jean Jean <jeanejean71@gmail.com>
**Sent:** Thursday, February 2, 2023 8:31 AM
**To:** Venekas Rita <RVeneka@schools.nyc.gov>
**Subject:** Re: Release of name

[Quoted text hidden]

 Gmail

Jean Jean <jeanejean71@gmail.com>

## Re: Hi I did not receive the form yet could you indicate what the email would be to search the spam folder thanks also can you mail it as well?
3 messages

---

**Venekas Rita** <RVeneka@schools.nyc.gov>                          Mon, Jan 16, 2023 at 7:51 AM
To: Jean Jean <jeanejean71@gmail.com>

Good morning

Your working status remains ineligible in PETS. I don't have access to the problem code to assist you with the clearance.

Please reach out to OPI to request assistance for clearance.

OPIinfo@schools.nyc.gov

**Rita Venekas, PAA**
**Office of Related Services**
**Email: rveneka@schools.nyc.gov**

"It is during our darkest moments that we must focus to see the light"

Aristotle

---

**From:** Jean Jean <jeanejean71@gmail.com>
**Sent:** Thursday, January 12, 2023 7:50 AM
**To:** Venekas Rita <RVeneka@schools.nyc.gov>
**Subject:** Re: Hi I did not receive the form yet could you indicate what the email would be to search the spam folder thanks also can you mail it as well?

Hi I did receive it later after that email and I filled it all out thanks so much sorry for the trouble.

On Thu, Jan 12, 2023 at 7:49 AM Venekas Rita <RVeneka@schools.nyc.gov> wrote:

Good morning

The nomination was sent on January 1th. You should receive it within 24 hours

Please search for the DOE email and open the link to complete it/answer all questions.

**Rita Venekas, PAA**
**Office of Related Services**
**Email: rveneka@schools.nyc.gov**
"It is during our darkest moments that we must focus to see the light"
Aristotle

---

**From:** Jean Jean <jeanejean71@gmail.com>
**Sent:** Tuesday, January 10, 2023 9:39 AM
**To:** Venekas Rita <RVeneka@schools.nyc.gov>
**Subject:** Hi I did not receive the form yet could you indicate what the email would be to search the spam folder thanks also can you mail it as well?

---

**Jean Jean** <jeanejean71@gmail.com>                          Mon, Jan 16, 2023 at 5:58 PM
To: Venekas Rita <RVeneka@schools.nyc.gov>

I have a feeling it's because I resigned last year so I will follow up with them.

[Quoted text hidden]

---

**Jean Jean** <jeanejean71@gmail.com>                    Mon, Jan 16, 2023 at 5:59 PM
To: Venekas Rita <RVeneka@schools.nyc.gov>

Also what does PETS stand for when I email them

[Quoted text hidden]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                  :

MICHAEL KANE, et al.,                      :
                                                  :
                   Plaintiffs,      :
                                                  :
           - against -           :   Case No.  21-cv-7863 (VEC) (Lead)
                                                  :
BILL DE BLASIO, et al.,                  :
                                                  :
                   Defendants.    :
-------------------------------------------------------------X
                                                  :

MATTHEW KEIL, et al.                   :
                                                  :
                   Plaintiffs,      :
                                                  :
           - against -           :   Case No.  21-cv-8773 (VEC)
                                                  :
THE CITY OF NEW YORK, et al.,       :
                                                  :
                   Defendants.    :
-------------------------------------------------------------X

**DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1.  I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2.  I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3.  Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4.  Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5.  Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

## First False Assertion in Sullivan Declaration

6.  The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code, the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7.  Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8.  Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a "**Problem** PR" notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

## Second False Assertion in Sullivan Declaration

9. The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel Investigations has access to the problem code. To the contrary, any non-DOE school or official that wants to learn whether a former DOE employee has a problem code in his or her personnel file can easily do so in a variety of ways. For example, non-DOE schools which offer DOE-funded positions have access to the DOE's payment portal, Galaxy, which allows them to see problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who were not hired at non-DOE schools because the non-DOE schools discovered their problem codes. Ex. 1, ¶¶ 14-18. Simple phone calls work as well: a former UFT Special Representative explained that she used to "receive[] countless calls every week asking . . . if there was a problem code on an employee's personnel file" and that her UFT colleague next door would then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8. In some instances, DOE representatives disclosed the problem codes to prospective employers from non-DOE schools calling to verify employment. Ex. 1, ¶ 19. In one instance, a third-party HR representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant to NYS Department of Health Bureau of Early Intervention directives—informed a former DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because of the problem code in her personnel file).

### Further Evidence of Irreparable Harm

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs face ongoing coercion to violate their religious beliefs and become vaccinated, in order to become employable – and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her getting vaccinated. ECF No. 162 ¶ 18.

Dated: New York, New York

June 3, 2022

Respectfully submitted,

Barry Black
Nelson Madden Black LLP
*Attorney for Plaintiffs*
475 Park Avenue South, Suite 2800
New York, NY 10016
(212) 382-4303

3