UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JEAN JEAN and KATHLEEN COMACK,

                Plaintiffs,

v.

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK,

                Defendant.

**MEMORANDUM AND ORDER**

24-CV-02264

---

LASHANN DEARCY HALL, United States District Judge:

    Jean Jean ("Plaintiff Jean") and Kathleen Comack ("Plaintiff Comack") (together, "Plaintiffs"), proceeding pro se, bring claims against the Department of Education of the City of New York ("DOE" or "Defendant"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 (the "ADA"), the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 42 U.S.C. §§ 1981 and 1983, 42 U.S.C. § 2000, New York Education Law §§ 3020 and 3020(a), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York State Constitution. Specifically, Plaintiff Jean asserts claims for religious discrimination and infringements on her freedom of speech and freedom of religion. In addition, Plaintiffs each assert claims for failure to accommodate, equal protection violations, retaliation, and infringement of their right to due process. Defendant moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint in its entirety.

# BACKGROUND[1]

In March 2020, New York City, along with hundreds of cities across the nation, implemented various mandatory citywide precautions in response to the deadly, highly contagious COVID-19 virus.[2] In August 2021, the Food and Drug Administration (the "FDA") approved the first vaccine designed to combat COVID-19.[3] Shortly thereafter, the then Commissioner of Health of the City of New York, Dr. Dave A. Chokshi, issued a COVID-19 vaccine mandate requiring all DOE employees to show that they had received at least one COVID-19 vaccination shot by September 2021. (Compl. ¶ 23, ECF No.1; Compl., Ex. A, ECF No. 1; *see* Compl., Ex. C at 3, ECF No. 1.)[4]

Plaintiff Jean began working as a special education teacher for Defendant in 1999. (Compl. ¶¶ 10, 21-22.) In September 2021, following the issuance of the COVID-19 vaccine mandate and DOE's direction that schools return to in-person classroom instruction, Plaintiff Jean submitted a request for a religious exemption through Defendant's Self-Service Online Leave Application System ("SOLAS"). (*Id.* ¶¶ 10, 29; Compl., Ex. A at 2-3.) Defendant subsequently denied Plaintiff Jean's request. (*See* Compl. ¶ 29.) Thereafter, Plaintiff Jean filed

---

[1] The following facts are taken from the complaint, documents attached to and incorporated by reference into the complaint, and public documents of which the Court takes judicial notice. *See Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (holding that when ruling on a Rule 12(b)(6) motion to dismiss, the Court "confine[s] its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991))); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))). These facts are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

[2] The Court takes judicial notice of facts regarding the spread and lethality of COVID-19 as reported by public health authorities. *See Joffe v. King & Spalding LLP*, No. 17-CV-3392, 2020 WL 3453452, at *7 n.9 (S.D.N.Y. June 24, 2020) (collecting cases).

[3] *See* FDA Approves First COVID-19 Vaccine, U.S. Food & Drug Admin. (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.

[4] The exhibits attached to and referenced within the complaint are contained in the same document as the complaint, rather than as attachments thereto. Accordingly, all exhibits can be found at ECF No. 1.

an appeal with Scheinman Arbitration and Mediation Service, Inc. ("SAMS"). (*See id.*; Compl., Ex. G.) On September 24, 2021, Plaintiff Jean received a decision from SAMS, denying her appeal. (Compl. ¶ 29; Compl., Ex. G.) Plaintiff Jean's further appeal was likewise denied. (Compl. ¶ 29.) On October 4, 2021, Plaintiff Jean was placed on leave without pay ("LWOP"). (*Id.*; Compl., Ex. H.) A "problem code" designation was placed on Plaintiff Jean's personnel file, which was then entered into Defendant's budgetary database, Galaxy. (Compl. ¶ 30.) On October 18, 2021, Plaintiff Jean resigned from her position at the DOE. (*Id.* ¶ 31.)

Plaintiff Comack began working for Defendant as a teacher in 1987. (*Id.* ¶ 32.) On September 17, 2021, following the COVID-19 vaccine mandate, Plaintiff Comack submitted a request for a medical exemption through Defendant's SOLAS. (*Id.*) Plaintiff Comack included in her request a letter written by her doctor, setting forth her cardiac history. (*Id.*; Compl. Ex. J.) Plaintiff Comack's request for a medical exemption was subsequently denied by Defendant, because her "[m]edical condition [was] not [a] valid reason to defer or delay vaccination." (Compl. ¶ 33; Compl., Ex. J-a.) Plaintiff Comack filed an appeal with SAMS. (Compl. ¶ 33.) On October 4, 2021, a "problem code" designation was placed on Plaintiff Comack's personnel file, and shortly thereafter, she placed on LWOP. (*Id.* ¶ 35.) On October 5, 2021, SAMS issued a decision denying Plaintiff Comack's appeal. (*Id.* ¶ 33; Compl., Ex. K.) Plaintiff Comack submitted her retirement papers on October 8, 2021, in anticipation of retiring. (*Id.* ¶ 35)

## STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court deciding whether to grant a motion to dismiss must "draw all

3

reasonable inferences in [the plaintiff's] favor, assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (internal citation omitted). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Further, a court is not obligated to accept a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).

Moreover, where, as here, plaintiffs are proceeding pro se, their pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94, 127 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

4

## DISCUSSION

I.  Plaintiff Jean's First Amendment Claim

The Free Exercise Clause of the First Amendment "protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of religion.'" *Kane v. DeBlasio*, 19 F.4th 152, 163–64 (2d Cir. 2021) (quoting *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014)). The protection, however, "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Slattery v. Hochul*, 61 F.4th 278, 292 (2d Cir. 2023) (internal quotation marks omitted) (quoting *Agudath Israel v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020)). Of course, "[a] law may be not neutral if it explicitly singles out a religious practice," or if it "targets religious conduct for distinctive treatment." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 533-34 (1993)), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021). Likewise, a law may not be "generally applicable" if it either "invite[s] the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions," or "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533-34 (2021) (alteration in original) (internal quotation marks omitted) (quoting *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 884 (1990)) (citing Lukumi, 508 U.S. at 542-46).

Importantly, the Second Circuit has already found the DOE's COVID-19 vaccine mandate to be facially neutral and generally applicable. *Kane*, 19 F.4th at 164. Therefore, as a matter of law, the vaccine mandate "does not single out employees who decline vaccination on

5

religious grounds," and it "applies to an entire class of people"—"DOE employees and other comparable employees." *Id.* at 166, 164 (emphasis omitted). Against this backdrop, Defendant argues that the mandate survives constitutional scrutiny, because the vaccine mandate was rationally related to the government's interest in stopping the spread of COVID-19. (Def.'s Mem. L. Supp. Mot. to Dismiss ("Def.'s Mem.") at 15-16, ECF No. 30.) The Court agrees.

Because DOE's vaccine mandate is neutral and generally applicable, there need only be a "rational basis" for its enforcement. *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002). In other words, there must be "a rational relationship between the disparity of treatment and some legitimate government purpose." *Roman Cath. Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, 128 F. Supp. 3d 566, 584 (E.D.N.Y. 2015) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993); *see also Miller v. McDonald*, 130 F.4th 258, 265 (2d Cir. 2025) (finding that rational basis review requires determining "that the state has chosen a means for addressing a legitimate government interest rationally related to achieving that goal"). Here, Defendant contends that the mandate requiring all DOE employees be vaccinated against COVID-19 was necessary to "mitigate the health risks to its employees" and "protect the public health." (*See* Def.'s Mem. at 16 (citation omitted).) This is a rational, and indeed, compelling basis. *See Bonilla v. City of New York*, No. 22-CV-7113, 2023 WL 8372859, at *4 (S.D.N.Y. Dec. 4, 2023) (finding a rational basis existed where the "DOE clearly explained that 'a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety'" (citation omitted)). Dismissal is therefore warranted.

II.     Plaintiffs' Title VII Claims

6

Under Title VII, it is "unlawful for employers to discharge or otherwise to discriminate against any individual in his or her employment because of such individual's religion." *We The Patriots*, 17 F.4th at 291 (alterations and internal quotation marks omitted) (quoting 42 U.S.C. § 2000e-2(a)(1)). An employer may also be held liable under Title VII for failing "to accommodate the religious practice of [its] employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)). That said, "[b]efore bringing suit in federal court under Title VII, . . . a private plaintiff must file timely administrative charges with the Equal Employment Opportunity Commission ([the] 'EEOC')." *Hogans v. Dell Mags./Penny Press*, 372 F. App'x 148, 149 (2d Cir. 2010) (citing 42 U.S.C. §§ 2000e-5(e)(1), (f)(1)); *see Shah v. New York State Department of Civil Serv.*, 168 F.3d 610, 613 (2d Cir.1999) ("A Title VII claimant may bring suit in federal court only if he has filed a timely complaint with EEOC . . . ." (citations omitted)). Specifically, in New York, a plaintiff must exhaust their administrative remedies by filing a complaint with the EEOC within 300 days of the alleged discrimination. *Hogans*, 372 F. App'x at 149 (first citing 42 U.S.C. § 2000e-5(e); then 29 U.S.C. § 626(d); and then V*an Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)).

Although the argument that a plaintiff failed to exhaust her administrative remedies is typically treated as an "affirmative defense[],"[5] a motion to dismiss on this ground should be granted "if it is clear from the face of the complaint that a plaintiff has not exhausted their remedies." *Arnold v. Rsch. Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 287 (E.D.N.Y.

---

[5] *E.g.*, *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (holding "that the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense"); *Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 246 (E.D.N.Y. 2009) ("Since exhaustion is an affirmative defense, the defendant bears the burden of establishing the plaintiff's failure to timely exhaust [her] administrative remedies" (internal citations omitted)).

7

2016) (first citing *Jordan v. Forfeiture Support Associates*, 928 F.Supp.2d 588, 594 (E.D.N.Y. 2013); then *McCoy v. Goord*, 255 F.Supp.2d 233, 251 (S.D.N.Y. 2003); and then *Francis v. City of New York*, 235 F.3d 763, 768–69 (2d Cir. 2000) (stating that administrative exhaustion is not a jurisdictional prerequisite for Title VII and ADA claims, but it is a precondition to bringing suit)). When a plaintiff fails to allege that a charge was timely filed with the EEOC, it is facially clear that they have not exhausted their administrative remedies, thus warranting dismissal. *See Bey v. Welsbach Elec. Corp.*, 38 F. App'x 690, 692-93 (2d Cir. 2002) (dismissing a Title VII claim for failure to exhaust administrative remedies where a plaintiff failed to, *inter alia*, allege in his complaint that he filed a charge with the EEOC)*; Oparaji v. Teachers' Ret. Sys. of City of New York,* No. 23-CV-5212 (KMW), 2024 WL 3046120, at *6 (S.D.N.Y. June 18, 2024) (dismissing Title VII claims where the plaintiff did not allege that he "filed timely charges with the EEOC . . . before initiating [the] lawsuit").

In this case, Defendant argues that Plaintiff Jean's religious discrimination and failure to accommodate claims and Plaintiff Comack's failure to accommodate claim are ripe for dismissal because Plaintiffs failed to timely file a charge of discrimination with the EEOC. (Def.'s Mem. at 7–9.) The Court agrees.

According to the complaint, Plaintiff Jean was subject to religious discrimination and failed to receive a religious accommodation when her request for religious exemption was denied in September 2021, (*see* Compl. ¶¶ 29, 38), and when her personnel file was designated with a "problem code" in October 2021, (*see id.* ¶¶ 29–32, 38). Similarly, Plaintiff Comack alleges that she failed to receive a disability accommodation when her request for a medical exemption was denied in September 2021, (*see id.* ¶ 33), and her personnel file was designated as a "problem code" in October 2021, (*see id.* ¶ 35). As such, even relying on the acts that occurred in October

8

2021, Plaintiffs were required to file a charge with the EEOC in August 2022, i.e., 300 days from when Defendant's alleged discriminatory conduct began. Plaintiffs fail to allege that they did so. Nor do Plaintiffs contend that any waiver, estoppel, or equitable tolling applies to the 300-day rule. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that for Title VII claims, the "filing [of] a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). Plaintiffs Title VII claims are untimely. Dismissal is therefore warranted.[6]

III.   Plaintiffs' Selective Enforcement Claims

Defendant argues that Plaintiffs' selective enforcement claim must be dismissed because Plaintiffs fail to allege any similarly situated comparators with whom Defendants treated differently. (Def's Mem. at 12–14.) The Court agrees.

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution requires the government to treat all similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an Equal Protection claim based on a theory of selective enforcement, a plaintiff must plausibly allege that she was treated differently from others similarly situated based on impermissible considerations, such as race, religion, or the exercise of a constitutional right. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (citation omitted). The exact standard for determining whether

---

[6] With respect to Plaintiff Comack's failure to accommodate claim, the Court recognizes that, as an initial matter, Title VII does not cover disability discrimination, nor disability accommodations. *See* 42 U.S.C. § 2000e-2(a)(1). And, although the Court is mindful that Plaintiff Comack is proceeding pro se in this case and that it must liberally construe pro se claims, *see Sykes*, 723 F.3d at 403, it is not the Court's job to construct a cause of action on a pro se plaintiff's behalf, *see Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (finding that the Court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded" (citation omitted)). As such, Plaintiff Comack's Title VII claim for failure to accommodate are also dismissed on this ground.

9

comparators are similarly situated, for purposes of a selective enforcement claim, remains unsettled in this circuit, however. *See Mosdos Chofetz Chaim, Inc. v. Vill of Wesley Hills,* 815 F.Supp.2d 679, 694-95 (S.D.N.Y. 2011) (collecting cases illustrating the disagreement among district courts). Some district courts within this circuit have found that the standard to be applied in selective enforcement cases is the same standard applied in "class of one" cases. *Joglo Realties, Inc. v. Seggos*, 229 F. Supp. 3d 146, 153 (E.D.N.Y. 2017) (quoting *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)) (citing, *e.g.*, *Kamholtz v. Yates Cty.,* No. 08-CV-6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) (analyzing whether plaintiffs were similarly situated to comparators under the "class of one" standard)). Under this standard, a plaintiff is required to show "an extremely high degree of similarity between themselves and [their comparators]." *Id.* Other courts within this circuit have applied a less stringent standard, inquiring whether plaintiffs are similarly situated to comparators "in all material respects," *id.* (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011)), i.e., whether there is "'a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' to the extent that an '"objectively identifiable basis for comparability"' exists," *Walker v. City of New York*, No. 05-CV-1283 RER, 2010 WL 5186779, at *7 (E.D.N.Y. Dec. 15, 2010) (internal citations omitted). *See also Graham v. Long Island R.R.*, 230 F.3d 34, 39-40 (2d Cir. 2000) (applying the "in all material respects" standard to determine whether the plaintiff was similarly situated to comparators). Under either standard, conclusory allegations, like those alleged here, may not survive a motion to dismiss. *D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005) (citing *Albert v. Carovano*, 851 F.2d 561, 572, 573–74 (2d Cir. 1988)), *aff'd sub nom. D.F. v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 180 F. App'x 232 (2d Cir. 2006).

10

Plaintiffs allege that, by failing to provide them with an exemption from the mandated COVID-19 vaccine, Defendant "engaged in selective enforcement" and "treated [them] differently from other similarly situated employees." (Compl. ¶ 66.) However, the complaint does not include any allegation that Plaintiffs were treated differently than others with whom they were similarly situated. Instead, Plaintiffs make only a passing reference to the exemptions to the COVID-19 vaccine mandate, carved out by Mayor Adams's Executive Order No. 62, "for professional athletes, performers, and their entourages, election workers, school bus drivers and delivery personnel, as well as most in the private sector." (Compl. ¶ 23.) Plainly, Plaintiffs are not similarly situated to these individuals. Indeed, according to the complaint, no DOE employees, including teachers, were afforded an exemption. (*See id.*; Compl., Ex. A at 2-3.) As such, Plaintiffs fail to sufficiently plead a selective enforcement claim under any standard. Plaintiffs' selective enforcement claims are dismissed, accordingly.

IV. Plaintiffs' Stigma Plus Claims

The Due Process Clause of the United States Constitution protects against a person's loss of reputation when that loss is associated with the deprivation of a federally protected liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972); *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994). The Second Circuit has determined that a stigma—that is, the loss of one's good reputation—may amount to a constitutionally recognized deprivation of liberty without due process if a plaintiff "allege[s] (1) the utterance of a statement . . . that is injurious to [her] reputation, that is capable of being proved false . . . and (2) some tangible and material state-imposed burden . . . in addition to the stigmatizing statement." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (internal quotations omitted) (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd sub nom. Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1

11

(2003)). Moreover, to state a so-called "stigma plus" claim, "[t]he defamatory statement must be sufficiently public to create or threaten a stigma." *Id.* (internal quotation marks and citations omitted). Defendant argues that Plaintiffs fail to state a stigma plus claim because they were provided due process, and Plaintiffs do not allege that any false or stigmatizing statement about them was publicly disclosed. (Def.'s Mem. at 21–22.) The Court agrees.

Plaintiffs allege that a problem code designation was placed in their personnel files without a hearing, amounting to a stigma plus violation under the Due Process Clause. (Compl. ¶¶ 5-7, 30, 35.) According to the complaint, Plaintiffs' problem code designation resulted in their placement on the "no hire" list, which resultingly "stigmatized" them as employees charged with misconduct.[7] (*Id.* ¶ 7.) Therefore, according to Plaintiffs, Defendant owed them a hearing before imposing the designation. (*Id.* ¶ 5.) Not so, at least under the facts alleged here.

Courts in this circuit have consistently held that a plaintiff's designation under the DOE's problem code, even without a hearing, is insufficient to state a stigma plus claim where no statement about the plaintiff was published outside of the agency. *Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 454 (S.D.N.Y. 2010), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012) (dismissing plaintiffs' argument that the DOE deprived them of a constitutionally protected property or liberty right by placing them on the "'Ineligibility/Inquiry' List").[8] Here, the complaint is devoid of any allegation that the DOE shared information

---

[7] Plaintiffs also allege that the FBI refers to Defendant's budgetary database, Galaxy, which houses problem code designations, and that anyone with the code cannot be paid by Defendant or any vendors working in New York City. (*Id.* ¶ 30.)

[8] *See also Arroyo v. Dep't of Educ. of City of New York*, No. 19-cv-7416, 2020 WL 4570380, at *14 (S.D.N.Y. Aug. 6, 2020) (dismissing plaintiff's stigma plus due process claim where plaintiff was placed on the "Problem Code" or "Ineligible Inquiry List"); *Green v. Dep't of Educ. of City of New York*, No. 18CIV10817ATGWG, 2019 WL 3432306, at *10–*11 (S.D.N.Y. July 31, 2019), *report and recommendation adopted*, No. 18CIV10817ATGWG, 2019 WL 4622077 (S.D.N.Y. Sept. 23, 2019) (dismissing plaintiff's procedural due process claim where plaintiff was flagged with a "no hire code" and placed on the "Problem Code" or "Ineligible Inquiry List").

regarding Plaintiffs' designation under the problem code outside of the agency. That Plaintiffs alleges the FBI and Department of Labor referred to Defendant's budgetary system does operate to save Plaintiffs' claim. Absent from the complaint is an allegation that either agency referred to Plaintiffs' problem code designations under the DOE. Plaintiffs only allege that the designation was reflected as a flag on their personnel file within the department, on Defendant's budgetary system. (Compl. ¶ 30.) Accordingly, Plaintiffs' stigma plus claim must also be dismissed.

\* \* \*

Although not addressed in Defendant's motion to dismiss, Plaintiffs also bring claims of retaliation pursuant to the ADA and Rehabilitation Act.[9] However, a plaintiff bringing a retaliation claim, must sufficiently allege that "(i) [she] was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citations omitted); *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). Here, a review of the complaint reveals that Plaintiffs failed to adequately plead that that they engaged in a protected activity. As such, Plaintiffs are directed to show cause, on or before October 14, 2025, why Plaintiffs' retaliation claims should not be dismissed for failure to state a claim. *See Weixel*, 287 F.3d at 148-49; *Lore*, 670 F.3d at 157; *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 149-51 (E.D.N.Y. 2018).

---

[9] It appears that Defendant misapprehends Plaintiffs ADA and Rehabilitation Act claims as for discrimination and failure to accommodate. Even liberally construed, the Court does not see how Plaintiffs state a claim outside that of retaliation. Review of the complaint therefore reveals that Plaintiffs do not bring claims for discrimination or a failure to accommodate under the ADA and Rehabilitation Act but rather claims for retaliation.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint is GRANTED as to Plaintiff Jean's First Amendment claim and Plaintiffs' Title VII, selective enforcement, and stigma plus claims. Moreover, Plaintiffs are directed to show cause, on or before October 14, 2025, why Plaintiffs' retaliation claims should not be dismissed for failure to state a claim. *See Weixel*, 287 F.3d at 148-49; *Lore*, 670 F.3d at 157; *Laface*, 349 F. Supp. 3d at 149-51. The Court reserves determination as to Plaintiffs' state law claims, brought pursuant to NYSHRL and NYCHRL.

                                                  SO ORDERED.

Dated: Brooklyn, New York             /s/ LDH
      September 30, 2025             L<small>A</small>SHANN D<small>E</small>ARCY HALL
                                            United States District Judge